

2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
T (310) 274-7100 F (310) 275-5697

Marc S Nurik
Direct Dial: (424) 202-5540
mnurik@bgrfirm.com

File No. 7542-001

January 11, 2018

**VIA ECF**
The Honorable Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, New York  10007

Re:     **UNITED STATES v. DARCY WEDD, et al**
        **15-cr-00616-KBF**

Your Honor:

        This letter is in response to your order of January 9, 2018 (ECF Doc. No. 642) requesting certain information from Mr. Thompson in connection with the sentencing.  I provide the requested information below in the same order as the Court's questions:

        1.      Attached as Exhibit A is the Trust Instrument, which was signed on November 1, 2013. As attested to by the attached letter of the Trustee, Walter Mandell C.P.A. (Exh. B), the idea of creating the trust began in early 2013 for estate planning purposes and to avoid estate tax and a possible immigration exit tax.

        2.      Attached as Exhibit C is the signed deed by which the Haverford Ave. property was transferred to the Trust on November 1, 2013.

        3.      Attached hereto as Exhibit D is the rental agreement, which was created on the advice of trust attorney James Murphy. Exhibit D also includes subsequent rental extension agreements.

        4.      Attached hereto as Exhibit E is the most recent bank statement for the City National Bank Trust Account.

        5.      Attached hereto as Exhibit F are the 2016 tax returns for Lifehouse Tonics.

        6.      The JPMorgan Chase safe deposit box was opened on June 9, 2014 for no cost as part of Mr. Thompson's banking package.  Attached hereto as Exhibit G is the Chase safe deposit box contract card and box access record, which demonstrates that the only access date was the opening date. Nothing was ever placed in the box. Pursuant to the Court's request, Mr. Thompson went to the bank on January 9, 2018 and had the box opened in the presence of bank officer Mr. Todd Gharibian. A photograph of Mr. Gharibian with the empty box is attached

986090.1

**Browne George Ross LLP**

The Honorable Katherine B. Forrest
January 11, 2018
Page 2


hereto as Exhibit H. Mr. Thompson was informed that the bank's rules did not authorize bank employees to represent  or certify anything. Undersigned counsel was in New York City on January 9 and was, therefore, not available to be present at the opening. Mr. Thompson is prepared to state under oath at the sentencing that the box remained empty.

      Should the Court have any further questions, we will be happy to address them at the January 12 sentencing hearing.

                     Respectfully submitted,

                     MARC S. NURIK
                     BROWNE GEORGE ROSS LLP

BY:

                     /s/ MARC S. NURIK
                     Marc S. Nurik
                     Attorney for Defendant, Fraser Thompson

MSN:jgc
cc:     All parties and their counsel (via ECF)

986090.1

# EXHIBIT A

# FRASER THOMPSON IRREVOCABLE TRUST

**Trust Agreement dated** _NOV. 1_ **, 2013**

USW 803926946.3

# TABLE OF CONTENTS

**Page**

ARTICLE I TRUST PROPERTY..................................................................1
    A.   Transfer of Property to Trustee.....................................1
    B.   Management of Trust Estate............................................1
    C.   Character of Property.......................................................1
    D.   Additional Property..........................................................2

ARTICLE II IRREVOCABLE TRUST.......................................................2
    A.   Modification and Termination of Trusts......................2
    B.   Consolidations..................................................................4
    C.   Divisions............................................................................5
    D.   Commingling of Assets....................................................5

ARTICLE III DISTRIBUTION OF TRUST INCOME AND PRINCIPAL.................6
    A.   Distributions to KYLA and Descendants.....................6
    B.   Ultimate Contingent Beneficiaries...............................11

ARTICLE IV TRUSTEE SUCCESSION.....................................................12
    A.   Trustee Succession............................................................12
    B.   No Bond Required.............................................................12
    C.   Removal and Replacement of Trustees.........................13
    D.   Right of Other Beneficiaries To Remove and Appoint
        Successor Trustee..............................................................14

ARTICLE V POWERS OF THE TRUSTEE; ADDITIONAL TRUSTEE
    PROVISIONS; GENERAL, GST, AND SUBCHAPTER S
    PROVISIONS.....................................................................14
    A.   Trustee Powers..................................................................14
    B.   Additional Provisions Regarding the Trustee..............20
    C.   General Provisions...........................................................23
    D.   Generation-Skipping Tax Provisions............................30
    E.   Trust Which Holds S Corporation Stock.....................32

# FRASER THOMPSON IRREVOCABLE TRUST

This Trust Agreement is made on the date set forth below by FRASER ROBERT THOMPSON, as Settlor (sometimes hereinafter referred to as "FRASER"), and WALTER B. MANDELL, as Trustee.  This Trust Agreement may be designated as the FRASER THOMPSON IRREVOCABLE TRUST.  The trust established under this Trust Agreement is for the benefit of the Settlor's companion, KYLA BROOKE SCHAEFER (sometimes hereinafter referred to as "KYLA"), and the Settlor's descendants of whatever degree living from time to time, subject to the terms and conditions of the Trust agreement, with reference to the following facts:

FRASER and KYLA have one (1) child of their relationship now living, whose name is PARKER RAE THOMPSON.

Neither FRASER nor KYLA has any other children, living or deceased.

## ARTICLE I

## TRUST PROPERTY

A.   Transfer of Property to Trustee

The Settlor has transferred or intends to transfer to the Trustee, without consideration, those assets described on Schedule A attached hereto and incorporated by reference.  The interests now held or hereafter received by the Trustee in such assets, together with all other property now or hereafter subject to this Trust Agreement, constitute the "trust estate."

B.   Management of Trust Estate

The Trustee shall hold, manage, and distribute the initial trust estate and all property which may hereafter be added to any trust created under this Trust Agreement, together with all income and the proceeds thereof, in accordance with the terms of this Trust Agreement.

C.   Character of Property

1

The Settlor declares that any property described on Schedule A or transferred to the Trustee was the Settlor's sole and separate property at the time of transfer.

D.    Additional Property

The principal of any trust created under this Trust Agreement may be augmented from time to time by other property acceptable to the Trustee added to it by any person, trust, or other entity, or by will, insurance policy, annuity, or otherwise.  The Trustee shall hold, manage and administer such additional property, together with the income and the proceeds thereof, in accordance with the terms of this Trust Agreement, but subject to any conditions acceptable to the Trustee that may be imposed by the instrument of transfer.  For purposes of this Trust Agreement, any reference to "property" shall be deemed to include any and all real and personal property of any kind and amount.

ARTICLE II_

IRREVOCABLE TRUST

This Trust Agreement and all trusts created hereunder shall be irrevocable and non-amendable except as provided in the following provisions of this Article II.

A.    Modification and Termination of Trusts

1.    Modification in General.   This Trust Agreement, and the trusts created hereunder, may be modified or terminated pursuant to Sections 15403 through 15406 (modification compelled by consent of settlor and all beneficiaries, or by all beneficiaries) and 15408 through 15410 (modification or termination of small trusts and modification due to unanticipated circumstances) of the Probate Code.

2.    Modification To Reflect New Developments.   We do not want the assets of the trust estate included in either of our gross estates, and the trust provisions of this Trust Agreement shall be construed accordingly.  The Trustees, other than any beneficiary serving as Trustee, shall have the power

and discretion to modify this Trust Agreement to conform to laws affecting the estate and gift tax treatment of the trust estate in order to avoid the inclusion of any portion of the trust estate in either of our gross estates, including the power and discretion to modify the powers of the Trustees.

3.    <u>Modification of Administrative Provisions</u>.    The Trustees, other than any beneficiary serving as Trustee, with the written consent of the Beneficiary (or the guardian or conservator of a minor or incapacitated Beneficiary, or if none, an agent acting under a valid durable power of attorney) of a trust created hereunder, shall have the power to modify any administrative provisions of this Trust Agreement applicable to such trust without court approval, including the power to change the name of such trust, provided such modification does not significantly affect the substantive rights or beneficial interests of the beneficiaries of such trust.

4.                      <u>Termination of Trusts</u>.    Unless terminated at an earlier date, all trusts created under this Trust Agreement, including those created by exercise of a power of appointment granted under this Trust Agreement, shall terminate upon the day before the term of the trust must cease under applicable law.   Under present California law, a trust can continue for the longer of (i) the date that is twenty-one (21) years from the death of the last beneficiary of the trust estate who is living at the date this Trust Agreement (or a trust established hereunder) becomes irrevocable; or (ii) the date that is ninety (90) years after the date that this Trust Agreement (or a trust established hereunder) becomes irrevocable.   Notwithstanding the foregoing, with respect to any irrevocable trust established under this Trust Agreement that is partly or wholly exempt from generation-skipping transfer tax, and to the extent that, (i) the Rule Against Perpetuities is repealed; and, (ii) the application of the repeal of the Rule Against Perpetuities to such trust would have the effect of reducing the proportionate share of such trust that is not subject to generation-skipping transfer tax, then the law in effect immediately prior to the enactment of such repeal will apply with respect to such trust.   Except as otherwise specifically provided elsewhere in this Trust Agreement with regard to any trust created hereunder, on such termination, the principal and accumulated income of each separate trust shall be distributed immediately to the person who would have been the Beneficiary of the trust if the trust had not been terminated under this provision, as determined under the provisions of this Trust Agreement.

5.   <u>Early Termination</u>.   If the Trustee determines, in its discretion, that the size of a trust does not warrant the cost of continuing that trust or that continued administration of any trust would be impractical for any reason, the Trustee, without further responsibility or liability, may transfer such trust property outright to the person or persons then entitled to the income from it, in the proportions in which income would have been held for or distributed to them.  Any portion not so allocated to specific beneficiaries shall be distributed among the beneficiaries as the Trustee, excluding any such beneficiary serving as Trustee, shall determine.  If the principal of the trust has a fair market value less than One Hundred Thousand Dollars ($100,000), a decision of the Trustee to so distribute the trust shall not be subject to question by anyone.  No Trustee who is entitled to income or principal from a trust may exercise discretion under this Section to terminate such trust.

B.   <u>Consolidations</u>

.  If a trust is to be established or exists under this Trust Agreement for a beneficiary or beneficiaries for whom another trust has been established under this Trust Agreement, the Trustee, in its discretion, may allocate the property of the one trust to the other trust.  Similarly, if we or either of us have established a trust for a beneficiary for whom a trust is to be established or exists under this Trust Agreement, and the dispositive provisions of that trust are substantially the same as the dispositive provisions of the trust to be established or existing hereunder, the Trustee may, in its discretion, transfer the property for the trust to be established or existing under this Trust Agreement to the Trustee of the other trust, to be held on the terms of that other trust, or may accept the assets of the other trust to be held and administered as part of the trust established or existing under this Trust Agreement.  Further, where the dispositive provisions of each trust or trust share are substantially similar, the Trustee shall have the discretion to combine any trusts or trust shares into one trust because of changed circumstances, litigation among beneficiaries, administrative difficulties, or other reasons suggesting a need for such a combination.  Such combination must not materially impair the interests of any beneficiaries, nor cause a trust that would otherwise have an inclusion ratio of zero for generation-skipping transfer tax purposes, as defined in Section 2642(a)(1) of the Code, to have an inclusion ratio greater than zero.  Trusts may be combined or consolidated whether created inter vivos or by Will, by the same or different trust instruments, by the same or different settlors, whether the Trustees are the same, and regardless of

where the trusts were created or administered.

C.    <u>Divisions</u>

1.                    <u>Generally</u>.   The Trustee shall have the discretion to create a separate trust for each current income beneficiary of a trust or trust share, and to divide any trust along family lines to be administered as separate trusts.  The Trustee shall also have the discretion to create a separate trust as to any share or portion of a trust disclaimed by a trust beneficiary, and to sever the disclaimed portion to be administered as a separate trust.   In addition, the Trustee shall have the discretion to divide a trust so as to qualify one of the separate trusts as a qualified S Corporation shareholder or as any other type of special trust provided for under the Code.  Further, the Trustee shall have the discretion to divide any trust or trust share into two or more separate trusts for tax planning purposes or because of changed circumstances, litigation among beneficiaries, administrative difficulties, or other reasons suggesting a need for a division.  The allocation of property between or among separate trusts created from a single trust or trust share may be unequal in amount and in the type of assets, and the division may be made non-pro rata.

2.    <u>For GST Purposes</u>.  In particular, the Trustees are expressly authorized to divide a trust which, but for such division, would possess an inclusion ratio for generation-skipping transfer tax purposes, as defined in Section 2642(a)(1) of the Code, of neither one nor zero, into two separate trusts, one such trust having an inclusion ratio of one and the other such trust having an inclusion ratio of zero.  Such separate trusts need not be funded with a pro rata portion of each asset held by the undivided trust.  Any division of a trust pursuant to the provisions of this Section 2 shall be made by the Trustees in accordance with the applicable Treasury Regulations.  All separate trusts created by the Trustees pursuant to the discretion provided under this Section 2 shall be administered by the Trustees under the same terms as would have applied to the undivided trust.

D.    <u>Commingling of Assets</u>

. Although the trusts created under this Trust Agreement shall be separate trusts for trust, accounting, tax, and all other purposes, the Trustees may mingle the money and property of the separate trusts, allotting to each separate trust its interest in the mingled funds and property.  The undivided interest shall always

equal that trust's proportionate contribution to the mingled assets.

ARTICLE III_

DISTRIBUTION OF TRUST INCOME AND PRINCIPAL

A.     Distributions to KYLA and Descendants

The trust shall be held, managed and distributed for the benefit of KYLA and the Settlor's descendants as hereinafter provided:

1.                    The Trustee shall pay to, or use and apply for the benefit of, KYLA, but only if the Settlor and KYLA are Living Together,  and the Settlor's descendants living from time to time so much or all of the net income and principal as the Trustee in the Trustee's absolute discretion determines is necessary for their respective health, education, support and maintenance.  Before making such payments, the Trustee shall take into account all other income and resources known to the Trustee to be readily available to KYLA and the Settlor's descendants for such purposes, to the extent the Trustee in the Trustee's discretion determines.  In administering the trust while KYLA is living, in investing and reinvesting the principal thereof, the Trustee's primary objective shall be to provide for KYLA and the Settlor's descendants living from time to time without regard to the interests of others (including without limitation the remainder beneficiaries of the Trust), and the Trustee shall not be obligated to consider the growth of trust principal or protection against inflation except that the Trustee may take such factors into account if the Trustee in the Trustee's discretion determines that taking such factors into account is necessary to or not inconsistent with the Trustee's primary objective.

2.                    From and after KYLA's death or, if the Settlor and KYLA cease Living Together prior to KYLA's death for a reason other than the Settlor's death or incapacity, then from and after the date of such cessation, the Trustee shall distribute so much or all of the principal and any accrued or undistributed net income of the trust to trusts for the benefit of such one or more of the descendants of the Settlor (each a "Beneficiary"), in such manner and at such time or times as KYLA may appoint, either outright or in trust, in a signed written instrument referring specifically to this limited power of appointment and delivered to the Trustee during KYLA's lifetime; but such

power of appointment shall be effective only if KYLA and the Settlor are Living Together at the time of the Settlor's death or, if earlier, the time of KYLA's death.  In any event, KYLA shall not have the power to appoint to herself, her estate, her creditors or the creditors of her estate.  To the extent that KYLA does not make a valid and effective exercise of such power of appointment, then to that extent the balance of the trust shall be divided into shares in accordance with the principle of representation and allocated among the Settlor's then living descendants (each a "Beneficiary").  Each share allocated to a Beneficiary shall be held in trust for the Beneficiary (a "Beneficiary Trust").  Each such Beneficiary Trust shall be held, administered and distributed in accordance with the following provisions of this Paragraph A.

      3.    Each Beneficiary Trust shall be held, administered and distributed in accordance with the following:

      (a)      The Trustee shall pay to or apply for the benefit of the Beneficiary for whom the Beneficiary Trust is established so much of the net income and principal of the Beneficiary Trust as the Trustee in the Trustee's absolute discretion determines is necessary for the health, education, maintenance and support of the Beneficiary, taking into account any other income and resources of the Beneficiary available for such purposes, including without limitation any other trusts for the benefit of the Beneficiary.  In determining whether to exercise such discretion, the Trustee shall be entitled to require the Beneficiary and/or the parent or guardian of the Beneficiary to provide financial information regarding the resources of the Beneficiary and/or such parent or guardian.

      (b)     In administering the Beneficiary Trust while the Beneficiary for whom the Beneficiary Trust is established is living, in investing and reinvesting the principal thereof, the Trustee's primary objective shall be to provide for the Beneficiary without regard to the interests of others (including without limitation the remainder beneficiaries of the Beneficiary Trust), and the Trustee shall not be obligated to consider the growth of trust principal or protection against inflation except that the Trustee may take such factors into account if the Trustee in the Trustee's discretion determines that taking such factors into account is necessary to or not inconsistent with the Trustee's primary objective.

(c)     If, at the time of the establishment of the Beneficiary Trust, the Beneficiary had not attained age forty (40), the Trustee shall distribute to the Beneficiary, free of trust, one half of the remaining balance of the trust estate upon the Beneficiary's attainment of age forty (40) and the entire remaining balance, if any, of the trust estate of the Beneficiary Trust upon the Beneficiary's attainment of age forty-five (45).

If, at the time of the establishment of the Beneficiary Trust, the Beneficiary had attained age forty (40) but not age forty-five (45), the Trustee shall distribute to the Beneficiary, free of trust, the entire remaining balance, if any of the Beneficiary Trust upon the Beneficiary's attainment of age forty-five (45).

(iii)   The distributions provided for in the foregoing subparagraphs (i) and (ii) shall not be made during the Settlor's lifetime but shall instead be deferred until his death.

4.              Upon the Beneficiary's death, the Beneficiary shall have the limited power to appoint the principal and any accrued or undistributed net income of the Beneficiary Trust or to an irrevocable trust for the benefit of the Beneficiary's spouse (provided that such spouse was married to the Beneficiary at the time of the Beneficiary's death and no petition for annulment or dissolution of marriage or legal separation was pending at the time of the Beneficiary's death) and/or outright or in trust for the Beneficiary's descendants in such proportions and on such terms and conditions as the Beneficiary specifies in the instrument of appointment.   The Beneficiary's power of appointment shall be exercised, if at all, in a signed written instrument referring specifically to this limited power of appointment and delivered to the Trustee during the Beneficiary's lifetime.  No Beneficiary shall have the power to appoint to the Beneficiary's estate, the beneficiary's creditors, or the creditors of the beneficiary's estate.   To the extent the Beneficiary does not make a valid and effective exercise of such power of appointment, then to that extent the Trustee shall distribute the entire remaining balance of the Beneficiary Trust, to the extent not effectively appointed, to the Beneficiary's then living descendants (also each a "Beneficiary"), in accordance with the principle of representation, to be held by the Trustee, in trust, as a

separate trust (also a "Beneficiary Trust) for such Beneficiary subject to the provisions of Paragraphs A.3 and this A.4. If the Beneficiary has no then living descendants, the Trustee shall allocate the entire remaining balance of the Beneficiary Trust to the then living descendants of the Settlor (also each a "Beneficiary"), upon the principle of representation, to be held by the Trustee, in trust, as a separate trust for each such Beneficiary subject to the provisions of Paragraphs A.3 and this A.4. Any principal distributable to a Beneficiary for whose benefit a separate trust is already held under the terms of this Trust Agreement shall be added to the principal of such trust and shall thereafter be held as a part thereof, and shall be distributed in the same manner, to the same Beneficiary, and in the same proportions as if such trust (with respect to the principal being so added) had been created on the date of such addition. Any principal distributable to a Beneficiary for whose benefit a separate trust is *not* already held under the terms of this Trust Agreement shall be held by the Trustee, in trust, as a separate trust for such Beneficiary and such trust shall be administered pursuant to the provisions of Paragraphs A.3 and this A.4. The Trustee shall always maintain separate trusts to preserve the generation-skipping transfer tax ("GST") exempt status of an exempt trust so that such exempt trust shall not be "tainted" (for GST purposes) by the addition to it of property that is not fully GST exempt.

5.                    The Trustee is expressly authorized, in the Trustee's discretion, to permit any current beneficiary of any trust established hereunder, and such beneficiary's spouse and descendants, if any, to occupy any real property and improvements (the "Residence") held wholly or partly by such trust, to the extent of the trust's interest therein, and to use all furniture, fixtures and equipment (the "Personal Property") held wholly or partly by such trust, to the extent of the trust's interest therein, which are associated with such Residence, on such terms as the Trustee deems advisable, whether free of rent or in consideration of payment of taxes, insurance, maintenance, repairs, or otherwise. If a current beneficiary or spouse or descendant thereof who is permitted to occupy and use such Residence and Personal Property pursuant to this Paragraph is being cared for by a live-in care provider, such care provider shall also be permitted to occupy and use such Residence and Personal Property, during such period of care. In exercising the discretion granted by this Section, the Trustee may permit such occupancy and use for one or more

but fewer than all beneficiaries of the trust, and may fix different or more favorable terms for one beneficiary than for other beneficiaries. Any payments made by the Trustee of taxes, insurance, maintenance, repairs, and indebtedness relating to such Residence and Personal Property shall be charged against the trust as a whole rather than against the ultimate distributive share of the beneficiary permitted to occupy and use such Residence and Personal Property. The Trustee is specifically authorized to retain, acquire or otherwise purchase a Residence and Personal Property for occupancy and use by a beneficiary pursuant to this Paragraph, even though it is not productive of income and even though it constitutes all or a major portion of the trust estate. The Trustee is also expressly authorized, in the Trustee's discretion, to rent any such Residence and/or Personal Property to others on such terms and conditions as the Trustee in the Trustee's discretion determines.

6.    Irrespective of any other provision in this Trust Agreement, the Trustee shall neither have nor exercise any power, discretion or authority if the possession or exercise thereof would cause the Trustee to have a general power of appointment within the meaning of Section 2041 of the Code. Irrespective of any other provision of this Trust Agreement, no distribution of income or principal to a Beneficiary shall be made to satisfy a legal obligation of support imposed upon the Settlor, upon a Trustee, upon a Co-trustee, upon any person other than the Settlor who transfers property to this trust, or upon a person who holds the power to appoint a Trustee or Co-trustee (other than a corporate or institutional Trustee).

7.    Irrespective of any other provision in this Trust Agreement, so long as there is at least one lineal descendant of the Settlor living, the trusts created under this Trust Agreement, and the property subject thereto, shall be held by the Trustee, in trust, for the longest period of time permissible under the applicable rule against perpetuities. Under present California law, a trust can continue for the longer of (i) the date that is twenty-one (21) years from the death of the last beneficiary of the trust estate who is living at the date this Trust Agreement (or a trust established hereunder) becomes irrevocable; or (ii) the date that is ninety (90) years after the date that this Trust Agreement (or a trust established hereunder) becomes irrevocable. Notwithstanding the foregoing, with respect to any irrevocable trust established

under this Trust Agreement that is partly or wholly exempt from generation-skipping transfer tax, and to the extent that, (i) the Rule Against Perpetuities is repealed or the period within which interests must vest is extended; and, (ii) the application of the repeal or extension of the Rule Against Perpetuities to such trust would have the effect of reducing the proportionate share of such trust that is not subject to generation-skipping transfer tax, then the law in effect immediately prior to the enactment of such repeal will apply with respect to such trust.  With regard to any trust created hereunder, upon termination of such trust pursuant to the provisions of this subparagraph 6 the Trustee shall distribute the principal and accumulated income of such trust to the beneficiary then eligible to receive the income thereof.

8.    Nothing in this Trust Agreement shall be construed to discharge the Settlor's obligation to support any person under applicable law.

9.    At any time commencing on the tenth (10th) anniversary of the execution of the Trust Agreement, the individual acting as Trustee, provided such individual is not a Disqualified Person, shall have the power and authority to add or remove any one or more individuals as beneficiaries of this Trust, provided any such individual added as a beneficiary is a descendant of the Settlor's parents.  In exercising such power and authority, the individual shall not be acting in a fiduciary capacity.  The Settlor hereby indemnifies the individual from and against any and all claims, causes of actions, liabilities, proceedings, costs and expenses, including without limitation reasonable costs and fees of attorneys and other professionals, arising out of or in connection with such individual's exercise or non-exercise of such power and authority.

B.    <u>Ultimate Contingent Beneficiaries</u>

Any share of the trust estate not effectively disposed of under the foregoing provisions of this Trust Agreement shall be allocated to the Settlor's legal heirs.  The identity and respective interests of such legal heirs shall be determined as if the Settlor's death occurred immediately following the event requiring such distribution.  Allocation shall be made according to the laws of succession of the State of California then in force relating to the succession of separate property that was not acquired from a predeceased spouse and that did not have its source in community property.  Any share thereby allocated to a legal heir of the Settlor shall, for so long as the Settlor is living, be held in a Beneficiary Trust for the benefit of the heir (also a "Beneficiary"), and

shall be administered and distributed in accordance with the provisions of Sections 3 through 8 of Paragraph A; and, upon the death of the Settlor, such Beneficiary Trust shall be distributed to the Beneficiary free of trust, and if the Beneficiary is not then living, it shall be distributed to the Beneficiary's then living issue, by right of representation.

<div align="center">ARTICLE IV_</div>

<div align="center">TRUSTEE SUCCESSION</div>

A.   <u>Trustee Succession</u>

WALTER B. MANDELL is designated as original Trustee under this Trust Agreement.  If WALTER B. MANDELL shall cease to act as Trustee for any reason, ROBERT ALFRED THOMPSON is designated to act as Trustee.  If neither WALTER B. MANDELL nor ROBERT ALFRED THOMPSON is acting as Trustee and either (i) no person has been appointed and designated pursuant to Paragraph C to act as Trustee or (ii) each person so appointed and designated has died, become incapacitated, cannot be located within ninety (90) days following the occurrence of the vacancy in the office of Trustee to which such person has been designated, notifies the Trustees that he/she declines such designation, or fails to qualify or otherwise is unable or ceases to act as Trustee for any reason, then the court having jurisdiction over the trust is requested to designate a bank or trust company authorized to and conducting business as a fiduciary in any jurisdiction and supervising trust assets of not less than Two Hundred Fifty Million Dollars ($250,000,000) to act as sole successor Trustee.

B.   <u>No Bond Required</u>

No bond shall be required of the original Trustee or any successor Trustee described in this ARTICLE, or if a bond is required by law, no surety on such bond shall be required.

C.  <u>Removal and Replacement of Trustees</u>

1.  <u>By Original Trustees</u>.   Subject to the specific Trustee succession designations set forth in Paragraph A, WALTER B. MANDELL shall have the power to appoint and designate any person other than a Disqualified Person as a Trustee or as Co-trustees (individual or corporate), or a series of Trustees or Co-trustees, if he ceases to act as Trustee for any reason and if all other persons named to act as Trustee pursuant to Paragraph A or designated to act as Trustee pursuant to the terms of this Paragraph C has died, become incapacitated, cannot be located within ninety (90) days following the occurrence of the vacancy in the office of Trustee to which such person has been designated, notifies the Trustee that he/she declines such designation, or fails to qualify or otherwise is unable or ceases to act as Trustee for any reason.

2.  <u>By Named Successor Trustees</u>.   If WALTER B. MANDELL does not appoint and designate any person to act as Trustees in accordance with the foregoing who is available, able and willing to act, or if each person thereby designated becomes incapacitated, dies, cannot be located within ninety (90) days following the occurrence of the vacancy in the office of Trustee to which such person has been designated, notifies the Trustees that he/she declines such designation, or fails to qualify or otherwise is unable or ceases to act as Trustee for any reason, then ROBERT ALFRED THOMPSON shall while acting as Trustee have the power to appoint and designate a Trustee or Co-trustees (individual or corporate), or a series of Trustees or Co-trustees in the event ROBERT ALFRED THOMPSON ceases to act as Trustee for any reason.

3.  <u>By the Settlor</u>.   During the Settlor's lifetime, the Settlor may remove any person appointed and designated as Trustee in this Trust Agreement or pursuant to its terms and/or appoint any person, other than a Disqualified Person, as successor Trustee or Co-trustee and/or cancel any appointment and designation by WALTER B. MANDELL or ROBERT ALFRED THOMPSON of a successor Trustee.

4.  <u>Exercise of Appointment Rights</u>.   The right to remove or appoint a Trustee is exercisable by delivery of a written instrument of removal or appointment signed by the person having the right to remove or appoint and

delivered to the person so removed or appointed and to any other then acting Trustee(s).  The removal or appointment shall be effective immediately upon delivery or by its terms may be effective upon the occurrence of some future event specified therein.

     5.   No Limitation on Exercise.   There shall be no limit on the number of times I, WALTER B. MANDELL or ROBERT ALFRED THOMPSON may exercise the foregoing powers of removal, appointment and designation.  All such removals, appointments and designations shall be revocable and amendable, unless specifically provided otherwise in the instrument of removal, appointment or designation. All removals, appointments and designations shall continue to be effective after the death of the person or persons making such removal, appointment or designation.

     6.   No Appointment of Settlor.   The Settlor shall not be appointed Trustee.

     D.   Right of Other Beneficiaries To Remove and Appoint Successor Trustee

     With respect to a separate trust or share established hereunder for his or her benefit, an adult beneficiary who is then eligible to receive trust income or principal, or the guardian or conservator of a beneficiary who is then eligible to receive trust income or principal, has the right to designate a successor Trustee a bank or trust company authorized to and conducting business as a fiduciary in any jurisdiction and supervising trust assets of not less than One Billion Dollars ($1,000,000,000) to act as Trust upon the last individual Trustee named in this Trust Agreement or designated pursuant to its term ceasing to act as Trustee and the right to remove any acting Trustee or Co‑Trustee and appoint a successor Trustee or Co‑Trustee.

## ARTICLE V_

## POWERS OF THE TRUSTEE: ADDITIONAL TRUSTEE

## PROVISIONS: GENERAL, GST, AND SUBCHAPTER S PROVISIONS

     A.   Trustee Powers

To carry out the purposes of this Trust Agreement and all trusts created hereunder, and subject to any limitations stated elsewhere herein, the Trustee is vested with the following powers:

1.   To continue to hold any property without diversification, although not of a type or quality, nor constituting a diversification, considered proper for trust investments, and to operate at the risk of the trust estate and not at the risk of the Trustee, any property or business received in this trust at any time, so long as it may deem advisable, the profits and losses therefrom to inure or be chargeable to the trust estate as a whole and not to the Trustee.

2.   To invest and reinvest the principal, and income if the Trustee is directed to accumulate it, and to purchase or acquire therewith, and sell, exchange, or dispose of every kind of property, real, personal or mixed, and every kind of investment, specifically including but not by way of limitation, limited partnerships, options, commodities, trust deeds of any priority, common trust funds, mutual funds, money market interests, corporate obligations of every kind and preferred or common stocks, in accordance with the Prudent Investor Rule.

3.   To manage, control, sell, convey, exchange, partition, divide, subdivide, improve and repair; to grant options and to sell upon deferred payments; to lease for terms within or extending beyond the duration of this trust for any purpose; to create restrictions, easements and other servitudes.

4.   To advance funds to this trust for any trust purpose, such advances, with interest at current rates, to be a first lien on and to be repaid out of the trust estate; to reimburse itself from the trust estate for any loss or expense incurred by reason of its ownership or holding any property in this trust.

5.   To compromise, arbitrate or otherwise adjust claims in favor of or against the trust; to carry such insurance as the Trustee may deem advisable.

6.   To borrow money for any trust purpose upon such terms and conditions as the Trustee deems proper and to obligate the trust estate for

repayment; to encumber the trust estate or any of its property by mortgage, deed of trust, pledge or otherwise, using such procedures to consummate the transaction as the Trustee deems advisable, for the debts of the trust or the joint debts of the trust.

7.   To make payments to any beneficiary under disability by making them to the guardian or conservator of the person of the beneficiary, or to the parent of the beneficiary, if a minor, or to apply them for the beneficiary's benefit.   Sums necessary for support and education may be paid directly to minor beneficiaries who, in the discretion of the Trustee, have attained sufficient age and discretion to render it probable that the money will be properly expended.   In the Trustee's discretion, such payments, including but not limited to payments of trust income, may be made to a custodian for the beneficiary under the Uniform Transfers to Minors Act (or similar law) in effect in the jurisdiction in which the beneficiary resides.

8.   To have respecting securities all the rights, powers and privileges of an owner, including the power to vote, to give proxies, and to pay assessments and other sums deemed by the Trustee necessary for the protection of the trust estate; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers and liquidations; and in connection therewith, to deposit securities with and transfer title to any protective or other committee under such terms as the Trustee may deem advisable; to exercise or sell stock subscription or conversion rights; to accept and retain as an investment any securities or other property received through the exercise of any of the foregoing powers, subject to any limitations elsewhere in this instrument relating to investments by the Trustee.

9.   To hold securities or other property in the Trustee's name as Trustee under this Trust, in the Trustee's own name, or in the name of a nominee.   The Trustee may hold securities unregistered in such condition that ownership will pass by delivery.

10.   Whenever the Trustee is required to separate the trust estate into parts or shares, whether by division, partition, allotment, allocation, distribution or otherwise, the Trustee is authorized to make such separation of the trust estate in undivided interests, in kind, or partly in money and partly in

kind, either prorata or non-prorata, at values as reasonably determined by the Trustee, and to sell such property as the Trustee considers advisable in order to accomplish such separation.  The Trustee, in the Trustee's absolute discretion, is expressly authorized to make any such non-prorata division, partition, allotment, allocation or distribution despite conflicting interests of those interested in the trust estate and without making any adjustments among them, whether tax-related or otherwise.

11.    To budget the estimated annual income and expenses of the trust in such manner as to equalize, as far as practicable, periodic income payments to beneficiaries.

12.    To make sales, loans or exchanges between any trusts created hereunder or any other trusts created by the Settlor if the Trustee deems it necessary or desirable, or to avoid the holding of fractional interests, including but not limited to sales or exchanges of undivided interests in residential property.

13.    To purchase for a full and adequate consideration and to retain as investments any security or other property, real or personal, belonging to the estate of the Settlor.

14.    To make loans from the trust estate on terms and conditions that the Trustee determines are fair and reasonable under the circumstances, including loans to the personal representatives of the estate of the Settlor.

15.    To deal with any other trust created by the Settlor or the Will of the Settlor and with the estate of the Settlor, even though the Trustee may also be serving as Trustee of such trust or as executor or administrator of such estate.  Such dealings shall be upon reasonable terms, and sales or purchases shall be at fair market value.

16. Except as otherwise specifically provided herein, the determination of all matters with respect to what is principal or income of the trust estate, and the apportionment and allocation of receipts and expenses between these accounts, shall be governed by the provisions of the California Principal and Income Law from time to time existing.  Any such matter not

provided for herein or in said Principal and Income Law, shall be determined by the Trustee in the Trustee's discretion.

17.   The Trustee is authorized to acquire and carry insurance of such kinds and in such amounts as the Trustee deems advisable, at the expense of the trust, to protect the trust estate and the Trustee personally against any hazard.

18.   The Trustee is specifically authorized to commingle the property of the separate shares and separate trusts established hereunder, allocating to each separate share or trust an undivided interest in the commingled property, which undivided interest shall always be equal to the proportionate contribution of that share or trust to the commingled property, as adjusted from time to time as a result of accumulations or payments of income, or payments of or additions to principal.

19.   The Trustee is authorized to commence or defend, at the expense of the trust, such litigation with respect to the trust or any property of the trust estate as the Trustee considers advisable, and to compromise or otherwise adjust any claims or litigation against or in favor of the trust.  The Trustee's powers under this paragraph shall apply during the term of the trust and after distribution of trust assets.  However, the Trustee shall have no obligations or duties with respect to any litigation or claims occurring after distribution of trust assets, unless the Trustee is adequately indemnified by the distributees for any loss in connection with such matters.

20.   After carefully considering the potential tax consequences of such action, the Trustee may, in its discretion, combine a trust created for a beneficiary hereunder with another trust created for such beneficiary if the dispositive terms are essentially the same and it would be administratively efficient; provided, however, that the Trustee shall not be obligated to use any property derived from any trust created under this Trust Agreement in the payment of taxes, debts, expenses of administration or other charges enforceable against the Settlor's estate.

21.   The Trustee may hold any trust property in the name of the trust or the Trustee, or in the name of a nominee, and may enter into agreements

to facilitate holding such property. The Trustee may accomplish such with or without disclosing its fiduciary capacity. The Trustee is specifically authorized to open, operate, manage and close bank, brokerage and other accounts held in the name of the trust or the Trustee, or in the name of a nominee.

22.   To combine or merge the trust estate of any trust established hereunder with or into the trust estate of any other trust established by the Settlor having the same beneficiaries and substantially the same terms.

23.   Without limiting the generality of the other provisions of this Paragraph A, with respect to Artistic Property, to develop, acquire, receive and retain such Artistic Property, even though such Artistic Property may constitute a large portion of the trust estate; to acquire, upon such terms as the Trustee considers advisable, such extensions, renewals or rights as the Trustee determines for the protection of Artistic Property and to pay all expenses in connection therewith; to make any and all agreements, contracts, assignments or arrangements for Artistic Property as the Trustee considers advisable; to institute, join in, maintain, compromise, defend, or otherwise dispose of any litigation arising in any manner in connection with Artistic Property; to license such persons and corporations as the Trustee may select to use, perform, publish, sell, distribute, or otherwise exploit, exclusively or nonexclusively, any Artistic Property for such periods of time, for such royalties or other payments, and upon such terms and conditions as the Trustee determines, with full power of modification of such licensing, distribution, or other agreements; to give such licensees or distributees a power of assignment or sublicense, with or without the consent of the Trustee, subject to such terms as the Trustee determines; to employ and pay attorneys, brokers, managers and agents, for or in connection with the sale, lease, licensing, exploitation, utilization, distribution, or other disposition of, or dealing with, Artistic Property; to transfer such Artistic Property in exchange for stock or securities in a corporation, an interest or interests as a limited and/or general partner in a partnership or an interest in a limited liability company, or an interest or interests in a tenancy in common, or a beneficial interest in a trust; and the Trustee shall be under no liability or obligation to any person for any action taken pursuant to the powers granted in this paragraph. The term "Artistic Property" refers to and includes all right, title, and interest in and to (i) artistic

or intellectual works and properties of any kind and nature created, compiled, written, directed, composed, produced or otherwise authored by the Settlor or by any business entity with which the Settlor is affiliated, whether done so alone or in collaboration with others, (ii) any derivatives of such works or properties, (iii) the name, voice, signature, photograph, costume, appearance and likeness (including without limitation the rights recognized under section 3344.1 of the California Civil Code) of the Settlor, (iv) the tangible embodiments of any of the foregoing (including without limitation films, tapes, prints, discs, records, cassettes, photographs and items of merchandise), (v) all copyrights, trademarks and tradenames on or associated with any of the foregoing (and all renewals and extensions thereof), (vi) all rights and proceeds under contracts for the publication, performance, sale, distribution, licensing or other exploitation of any of the foregoing, including royalty rights and all other rights and causes of action of any kind or nature at any time existing in connection with any of the foregoing, or which may arise or accrue therefrom, whether such works or properties shall be finished or unfinished or published or unpublished, and including the rights to secure, extend or renew any copyrights, trademarks, tradenames or other agreements and the right to exercise all rights with respect to such copyrights, trademarks, tradenames or other agreements, and (vii) any interest in a business entity a substantial portion of the operating assets of which consists of Artistic Property.  For such purposes, works shall include all works described in or covered by section 101 of Title 17 of the United States Code, or in the provisions of the laws of other jurisdictions protecting the rights of authors and artists.

24.   To give a power of attorney to act for or sign the name of such Trustee to any instrument in the Trustee's fiduciary capacity, and any action taken pursuant to such power of attorney shall be valid for all purposes as if done or signed by the Trustee giving such power of attorney.  Any such power of attorney may be general or may be limited to certain acts or instruments or may contain conditions and restrictions, and such power of attorney may be amended or revoked at any time by the Trustee giving such power.

B.   <u>Additional Provisions Regarding the Trustee</u>

Except as otherwise provided, the following additional trustee provisions shall apply with respect to all trusts created hereunder:

1.     Reference in this instrument to "the Trustee" shall be deemed to include not only the original Trustee but also any successor Trustee; and each successor Trustee shall without the necessity of any active transfer or action by any court, become vested with title to the trust assets and shall have all the same powers and obligations as if such successor were an original Trustee.

2.     The Trustee shall be entitled to receive reimbursement of reasonable expenses incurred in discharging the duties of Trustee.  The Trustee shall be entitled to reasonable compensation for its services as Trustee, but in the case of a professional Trustee, not in excess of that compensation normally charged by it to similar accounts at the time said compensation is earned.

3.     Any Trustee acting hereunder shall have the right to resign as Trustee at any time.  Each successor Trustee shall have all the powers, authorities and discretions herein conferred upon the Trustee, and may accept the property tendered by the predecessor or predecessors in trust as constituting the entire trust.  The Trustee, upon such terms as it deems best, may compromise or abandon entirely any or all claims against each predecessor Trustee, without liability to any beneficiary by so doing.

4.     No successor Trustee shall be liable for any act, omission, or default of a predecessor Trustee.  Unless requested in writing by an adult beneficiary of the trust, by the parent or guardian of the person of a minor beneficiary, or by the guardian or conservator of the person of a beneficiary under any other disability, any successor Trustee shall have no duty to investigate or review any action of a predecessor Trustee, and may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the trust.

5.     The trust's books and records along with all trust documentation shall be available and open at all reasonable times to the inspection of the beneficiaries eligible to receive trust income or principal and their representatives.

6.                        In lieu of any accounting required under Section 16062 of the California Probate Code, (a) during the lifetime of the

Settlor, the Trustee shall render an accounting covering the period since the prior accounting (but not for a period shorter than one year) only to the Settlor at the Settlor's written request; and (b) following the death of the Settlor, the Trustee shall render an accounting of any trust created by this instrument at least every three (3) years.  In addition, each Trustee shall render an accounting upon the termination of any trust created by this instrument and upon a change of Trustee.  Accountings shall be made by delivering a written accounting to each beneficiary eligible to receive trust income or principal and to each remainder beneficiary in being.  The accounting shall be delivered to a parent or the guardian of the person or estate of a minor beneficiary, or the guardian or conservator of the person or estate of a beneficiary under any other disability.  Unless any beneficiary, including parent, guardians or conservators of beneficiaries, shall deliver a written objection to the Trustee within one hundred and eighty (180) days after receipt of the Trustee's account, the account shall be final and conclusive in respect to transactions disclosed therein as to all beneficiaries of the Trust, including unborn and unascertained beneficiaries. After settlement of the account by agreement of the parties objecting to it, or by expiration of the one hundred and eighty (180) day period, the Trustee shall no longer be liable to any beneficiary of the Trust, including unborn and unascertained beneficiaries, with respect to transactions disclosed in the account, except for the Trustee's intentional wrongdoing or fraud.

7.     The Trustee may disclose the existence, nature, terms and conditions hereof to the extent necessary in the administration of this trust.

8.     No person dealing with any Trustee hereunder need inquire concerning the validity of anything the Trustee purports to do or the application of any money paid or property transferred to or upon the order of the Trustee.

9.     Until the Trustee receives written notice of any death, birth, marriage or other event upon which the right to payments from this trust may depend, the Trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been affected by such event.

10.    The Trustee, at the expense of the trust estate, may employ accountants, legal or tax counsel, financial consulting services, investment counsel, or utilize the management services of any firm or institution.  This

paragraph is not intended to constitute a limitation upon the general powers of the Trustee.

11.   The Trustee shall not be required to make trust property income producing if the administrative cost would exceed the income that could have been earned.

C.   General Provisions

Except as otherwise provided, the following general provisions shall apply with respect to all trusts created hereunder:

1.                        The interests of beneficiaries of any trust created hereunder in principal or income shall not be subject to claims of their creditors or others nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered, except to the extent a power of withdrawal or power of appointment is expressly granted to a beneficiary hereunder.   Except as otherwise required by court order, all distributions authorized under this Trust Agreement shall be made directly to the beneficiary entitled to such distributions or for his or her benefit as expressly authorized under this Trust Agreement.   Accordingly, except as otherwise required by court order, where a distribution to a beneficiary might be subject to a claim or judgment of the beneficiary's creditors or others, the Trustees are hereby directed to withhold all payments of trust income or principal otherwise authorized to be made to or for such beneficiary under the trust, in excess of the minimum amount necessary for the beneficiary's reasonable support and education, including the support of all persons the beneficiary is required to support.   If a beneficiary is insolvent, he or she shall have no right under the trust to compel the Trustees to pay income or principal to him or her or for his or her benefit.

2.   Nothing in this Trust Agreement shall be construed to preclude any beneficiary hereunder from disclaiming, relinquishing or renouncing any power or right retained or granted by the terms of this Trust Agreement, by a signed written instrument delivered to the Trustee.

3.   Income accrued or unpaid on trust property when received into the trust shall be treated as any other income.   Income accrued or held

undistributed by the Trustee at the termination of any interest or estate under this trust shall go to the beneficiaries entitled to the next eventual interest in the proportions in which they take such interest, except as expressly provided to the contrary herein.  Periodic payments out of principal, not due upon the termination of any interest or estate, shall not be apportioned to that date.  The Trustee shall not be required to prorate taxes and other current expenses to the date of termination.

4.     All rights granted to any person by any provisions of this trust may be exercised personally by such person at any time during his or her lifetime and competency, unless otherwise specifically provided herein.  For all purposes of this trust, it shall be conclusively presumed that each such person is competent unless (a) he or she shall have been declared incompetent by a court having jurisdiction to determine such incompetency, and until a duly certified or authenticated copy of such determination of incompetency issued by such court shall have been served upon and delivered to the Trustee; or (b) he or she shall have been certified in writing to the contrary by two physicians licensed to practice medicine in any state of the United States of America, one of whom shall be such individual's personal attending physician, if any and if he or she is reasonably available for this purpose, and until such certifications have been delivered to such individual or the next successor Trustee as the case may be.

5.     Any corporate or institutional trustee named herein or appointed pursuant to this Trust Agreement as a Trustee must be a bank or trust company situated in the United States and authorized under applicable federal and state law to conduct trust business.  Such corporate or institutional trustee shall have minimum capitalization of at least Two Hundred Fifty Million Dollars ($250,000,000).

6.                         If the Trustee determines, in its sole discretion, that the size of a trust does not warrant the cost of continuing that trust or that continued administration of any trust would be impracticable for any reason, the Trustee, without further responsibility or liability, may transfer such trust property outright to the person or persons then entitled to the income from it, in the proportions in which income would have been held for or distributed to them.  Any portion not so allocated to specific beneficiaries shall be distributed among the beneficiaries as the Trustee, excluding any such

beneficiary serving as Trustee, shall determine.  No Trustee who is entitled to income or principal from a trust may exercise discretion under this Section.  If, after the death of the survivor of the Settlor and KYLA, the principal of any trust created hereunder has a fair market value of less than $250,000, adjusted for inflation (based on the Consumer Price Index), the Trustee shall terminate such trust and distribute the trust property in the manner set forth above in this subparagraph 6.

7.     This trust has been accepted by the Trustee in the State of California, and unless otherwise provided in this instrument, its validity, construction and all rights under it shall be governed by the laws of that State. Notwithstanding the foregoing, the Trustee may from time to time remove all or any part of the trust estate to another jurisdiction and may fix the situs of trust administration within such jurisdiction.  The trust estate so removed shall thereafter be administered pursuant to, and the applicable terms of the trust governed by, the laws of such jurisdiction.

8.     Chapters 1-3 of Part 5 (commencing with Section 17000) of Division 9 of the Probate Code of California shall apply to all trusts created under this Trust Agreement.

9.     If any provision of this Trust Agreement is unenforceable, the remaining provisions shall nevertheless be carried into effect.

10.  As used in this Trust Agreement, the terms "child," "grandchild," and "descendant" shall refer only to persons, other than stepchildren or foster children, for whom a parent-child relationship is established under Chapter 2 (commencing with Section 6450) of Part 2, Division 6 of the California Probate Code as constituted at the date of execution of this instrument, except that such a relationship is deemed established in the case of adopted persons only if such persons have not attained age ten (10) at the date of adoption.

11.  As used in this Trust Agreement, the term "principle of representation" means division into as many equal shares as there are living members of the nearest generation of descendants then living and deceased members of that generation who leave descendants then living.  One such share shall be allocated to each living member of the nearest generation of

descendants then living and one such share shall be allocated to the descendants of each deceased member of that generation who leaves descendants then living, to be further divided in the same manner among such descendants.

12.   Whenever provision is made to pay for the education of a beneficiary, the term "education" shall include trade school, college and postgraduate study, so long as in the Trustee's discretion it is pursued to advantage by the beneficiary, at an institution of the beneficiary's choice.  In determining payments to be made for education, the Trustee shall consider the beneficiary's reasonably related living and traveling expenses.

13.   The captions used in this document are not part of the Trust Agreement itself, but are used strictly for convenience.

14.   As used herein, the masculine, feminine and neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context indicates such inclusion to be appropriate.

15.                     If any beneficiary under this trust (or any trust established hereunder), singly or in conjunction with any other person or persons, shall (i) directly contest, without probable cause, the validity of this trust (including any amendment hereto containing or amending this no contest clause) or of any other instrument, will, codicil, contract, agreement, trust, or beneficiary designation that the Settlor entered into during the Settlor's lifetime and executed on or before the date of this trust, or if later the date of any trust amendment containing or amending this no contest clause, and that relates to the disposition of the Settlor's assets upon the Settlor's death (this trust, any such trust amendments, and any other such documents collectively referred to as "Protected Documents"), or any provision of any Protected Documents, or seek to obtain an adjudication in any proceeding in court that any Protected Document is void, or seek to otherwise void, nullify or set aside any Protected Document or any provision of any Protected Document; (ii) challenge in court any transfer of property on the grounds that it was not the Settlor's property at the time of the transfer; (iii) file a creditor's claim or prosecute an action based on it respecting an alleged oral promise to make a gratuitous transfer, a lifetime gift or a pledge, or (iv) file any other creditor's claim or prosecute an action based on it, without probable cause (other than a written charitable pledge), then

the right of such beneficiary to take any interest given to him or her by this trust shall be determined as it would have been determined had such beneficiary predeceased the execution of this trust without surviving issue.  The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on any Protected Document or any provision of any Protected Document.  Notwithstanding the foregoing, this paragraph shall not apply to any transfer or trust set forth in this trust otherwise qualifying for the federal estate tax charitable deduction.  Furthermore, the foregoing provisions shall not be violated by the disclaimer of any right or interest in property of the Settlor's probate estate or of any trust created under this Trust Agreement.

16.   Notwithstanding anything in this Trust Agreement to the contrary, the Settlor shall have the power and right, exercisable in a non-fiduciary capacity without approval or consent of any person acting in a fiduciary or non-fiduciary capacity, to reacquire the trust corpus by substituting the property reacquired with property having an equivalent fair market value, valued as of the date of reacquisition.  The right to reacquire the trust property is exercisable by delivery of a signed statement of reacquisition by the Settlor to the Trustee specifying the property to be reacquired and the property to be substituted in lieu thereof.  This power shall lapse upon the death of the Settlor or upon the Settlor releasing this power, such release to be exercised by delivery of a signed notice of release to the Trustee.  Notwithstanding the foregoing, the Settlor shall not exercise the power to reacquire trust property in a manner that can shift benefits among the trust beneficiaries.

17.   Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not pay any premiums on life insurance on the life of the Settlor from trust income as defined for purposes of Section 677 of the Code, except with the express prior approval of an "adverse party," as defined for purposes of Section 677 of the Code.

18.   Notwithstanding anything in this Trust Agreement to the contrary, the Settlor is prohibited from borrowing principal or income from the trust, directly or indirectly, without adequate interest and adequate security; provided further, that notwithstanding anything in this instrument to the contrary, the Settlor is prohibited from borrowing principal or income from the trust, directly or indirectly, unless:  (1) the entire amount of the loan (including

interest) is repaid before the beginning of the taxable year; or (2) the loan is made by a Trustee other than a related and subordinate Trustee subservient to the Settlor (as such terms are defined in Section 672 of the Code).

19.   Notwithstanding anything in this Trust Agreement to the contrary, the Settlor and all parties non-adverse (as such term is defined in Section 672 of the Code) to the Settlor are expressly prohibited from purchasing, exchanging, or otherwise dealing with or disposing of the principal or income of the trust estate for less than adequate consideration in money or money's worth passing to the trust, without the express approval or consent in writing of any adverse party (as such term is defined in Section 672 of the Code).

20.   Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not use any assets of any trust created hereunder for the payment of any taxes, debts, and other obligations of the Settlor.

21.   The term "Disqualified Person" means, with respect to any individual, the Settlor, the individual (if different from the Settlor), the spouse of the individual, the descendants of the individual, a person previously removed as Trustee, and any person who is a related or subordinate party, within the meaning of Section 672(c) of the Code, with respect to the individual.

22.   The words "incapacity," "incapacitated," or "incompetent" as used in this Trust Agreement, and the term "unable to serve" or equivalents thereof, shall be determined to refer to not only a person who has been judicially declared incompetent and a person for whom a guardian or conservator or other fiduciary of the person or estate or both shall have been appointed, but also a person who shall be incapacitated by reason of physical or mental disability, or other similar cause, so as to make it impossible or improbable for such person to exercise consistently good judgment in matters concerning the management of the trust estate or assets distributed therefrom.

If a Trustee has not been judicially declared incompetent, the person shall be presumed competent to act as such unless certified in writing to the contrary by two physicians licensed to practice medicine in any state of the United States of America, one of whom shall be such individual's personal attending physician, if any and if he or she is reasonably available for this purpose, and until such certifications have been delivered to such individual and to the remaining Co-trustees, if any, or the next

successor Trustee.  In determining the incapacity of a Trustee, a Trustee will have the power, pursuant to specific authorizations separately executed by a Trustee, to demand, obtain, review and release to others, as necessary, individually identifiable health information and medical records and documents governed by the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d and 45 C.F.R. § 160 – 164, and the California Confidentiality of Medical Information Act, Cal. Civil Code § 56 *et seq*., including any written opinion relating to a Trustee's incapacity.  The capacity of a Trustee shall be determined restored upon a written and signed statement to that effect of two physicians licensed to practice medicine in any state of the United States of America, one of whom shall be such individual's personal attending physician, if any and if he or she is reasonably available for this purpose.

Prior to any distribution to a Beneficiary under this Trust Agreement, the Trustees, in their discretion, shall have the right to demand that the Beneficiary produce evidence of capacity in the form of a letter from a licensed physician, or such other form as is acceptable to the Trustees.  The Trustees' determination in this regard shall be conclusive and binding, and no Trustee making such a determination shall be subject to liability therefor.

23.   The term "Code" means the Internal Revenue Code of 1986, as amended, and any successor or substituted statute.

24.   References to any provision of a statute or regulation shall be deemed a reference to any successor or substitute provision of similar import.

25.   References to the "Probate Code" means the California Probate Code.

26.   Except as otherwise provided in this Trust Agreement, the Trustee shall invest and manage trust assets in accordance with the prudent investor rule as set forth in the Uniform Prudent Investor Act.  Notwithstanding the foregoing and without limiting the generality of the Trustee's power to retain and acquire unproductive property or wasting assets, the Trustee is authorized to acquire and retain one or more or all of the following, whether or not productive of income and whether or not in accordance with the Uniform Prudent Investor Act, and even if it or they constitute all or a substantial portion

of the trust estate: (i) policies of insurance on the life of the Settlor or any beneficiary of the trust or any other person, (ii) interests in limited partnerships, limited liability companies and closely held corporations for potential long-term appreciation, even if distributions therefrom are not expected in the foreseeable future, and (iii) one or more residences and tangible personal property for the use of one or more beneficiaries of the trust.

27.          A Trustee may delegate investment and management functions from time to time with respect to all or a portion of the trust estate of any trust established hereunder. Any such delegation shall be in writing, shall specify the powers and authorities delegated and may be revoked or modified in writing. A statement that the Trustee delegates all powers and authorities granted by this Trust Agreement shall be sufficient to delegate all such powers and authorities. Such delegation shall terminate as provided in the written notice, or upon the delivery by the delegating Trustee to its delegate of written notice of revocation. The delegating Trustee shall incur no liability to any person regarding the administration of such trust with respect to the exercise of the powers and authorities delegated during the delegation period. Any third party, including any bank, savings and loan, title insurer, stock or bond broker or transfer agent may rely upon such delegation and shall incur no liability for any action taken in reliance on such delegation in the absence of actual knowledge of its revocation or modification. No such delegation shall be made if it would cause any beneficiary of the trust to possess a general power of appointment, within the meaning of Section 2041 of the Code, with respect to all or any portion of the trust.

28. The term "Living Together" means occupying the same principal place of abode on a permanent basis without regard to temporary absences for business, pleasure or health care. If two persons are Living Together, and one of them enters a long-term care facility, they shall be considered to be Living Together during the period of residence in the long-term care facility.

D.     Generation-Skipping Tax Provisions

Except as otherwise provided, the following provisions regarding generation-skipping transfer taxes shall apply with respect to all trusts created hereunder:

1.     Under the Settlor's Will, or under applicable provisions of federal law, a Settlor's executor has the power in its sole discretion to allocate any portion of a Settlor's exemption under Section 2631(a) of the Code to any property as to which such Settlor is the transferor, including any property transferred by such Settlor during life as to which an allocation was not made prior to such Settlor's death.  The Settlor directs that in the event there is no executor appointed in the Settlor's estate, "executor" shall be defined as it is in the Code to mean a person in possession of a decedent's property and the Trustee as such person shall hold this power of allocation.

2.     The Trustee shall have the power in the Trustee's sole discretion, with respect to any property held by the Trustee or received by the Trustee, to create separate trusts from that property and to allocate that property to and to hold that property in separate trusts so that the "inclusion ratio," as defined in Section 2642(a)(1) of the Code of all trusts held hereunder shall be an inclusion ratio of one or an inclusion ratio of zero.  Reference hereinafter to an "exempt trust" shall mean a trust having an inclusion ratio of zero.

3.     The Settlor directs the Trustee, to the extent that it is practicable, to pay any inheritance, succession, or estate taxes, including interest and penalties thereon, payable from trust property from a trust or trusts the inclusion ratio of which is other than zero, unless such payment would be a constructive addition to an exempt trust, in which case such exempt trust shall bear its pro rata portion of such tax payment.

4.     When the Trustee has the discretion or pursuant to a standard has the obligation to make distributions from principal from a generation-skipping trust for the benefit of a non-skip beneficiary, the Trustee shall consider and, to the extent that it is practica- ble, first use for this purpose principal from a generation-skipping trust the inclusion ratio of which is other than zero.

5.                    Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall have the power in the Trustee's sole discretion, with respect to all or any part of the principal of any trust created hereunder (including a pecuniary amount), by a written instrument filed with the trust records to create a general testamentary power of appointment

within the meaning of Section 2041 of the Code in any beneficiary; and to eliminate such power for all or any part of such principal as to which such power was previously created.  In authorizing such action it is our hope (but not a direction) that a general power shall be kept in effect when the Trustee believes the inclusion of the property affected thereby in the beneficiary's gross estate may achieve a significant savings in transfer taxes by having an estate tax rather than a generation-skipping transfer tax imposed on the property subject to the general power, or significant savings in income taxes.  Notwithstanding the foregoing, any Trustee or Co‑trustee who is a beneficiary of a trust created hereunder shall not have the powers set forth in this paragraph; instead, such powers are exercisable only by the Co‑trustee who is not a beneficiary, or if none, by the next successor Trustee who is not an appointee of such beneficiary.

6.                    Upon the death of any beneficiary holding a general power of appointment created under the preceding paragraph, to the extent the beneficiary does not exer-cise the power of appointment hereinabove provided, subject to a direction to the contrary in the Will of the beneficiary or in a trust established by the beneficia-ry which specifically refers to death taxes attributable to the property held for the beneficiary here-under, the Trustee shall pay from the principal not so appointed, and without apportionment or reimbursement from any beneficiary hereunder, all inheritance, succession, and estate taxes, including interest and penalties thereon, which may be due by reason of the bene-ficiary's death, and which are attributable to the property held for the beneficiary hereunder over which the power existed but was not exercised.  The amount of such tax to be paid by the Trustee shall be the amount by which the total of such taxes payable in the beneficiary's estate exceeds the total of such taxes that would have been payable if the value of the property held for the beneficiary hereunder had not been included in the beneficiary's estate.

E.     Trust Which Holds S Corporation Stock

1.                    Notwithstanding any other provision of this Trust Agreement to the contrary, if after the Settlor's death or after the Settlor is no longer treated as the grantor of a trust because of the Settlor's release of the Settlor's right to reacquire trust corpus, any trust is funded with, or subsequently acquires, stock in a corporation which has made an election to

be taxed under Subchapter S of the Code ("S Corporation Stock"), then the Trustee may divide such trust into two separate trusts, one of which will bear the original name of such trust and the other of which will be called "[Original Name] S Trust" (the "Subchapter S Trust"). The Trustee shall allocate to the Subchapter S Trust the S Corporation Stock, if any, which is allocated to, or acquired by, the original trust. The net income and principal of the original trust shall continue to be distributed by the Trustee in the manner described in the original provisions of this Trust Agreement governing distributions from such trust. The net income and principal of the Subchapter S Trust shall be distributed in a manner consistent with such provisions, subject, however, to the following modifications:

      2.    If there is more than one permissible current income beneficiary of such trust, then the Trustee shall divide the Subchapter S Trust into separate trust shares for such beneficiaries. The division of property into such trust shares shall be made in the proportions in which income would have been distributed to the income beneficiaries from the original trust, such proportions to be determined by the Trustee, other than a Trustee who is a current income beneficiary of the trust, in their sole and absolute discretion. The income beneficiary for whom such a trust has been established under this Paragraph E shall be its beneficiary for the purposes of this Paragraph E and all other provisions of this Trust Agreement.

      3.    The Trustee shall distribute to or for the benefit of the beneficiary of a Subchapter S Trust the net income of the Subchapter S Trust.

      4.    During the lifetime of the beneficiary, the Trustee may not make any distributions of net income or principal from the Subchapter S Trust to any person other than the beneficiary of the Subchapter S Trust.

      5.    If, for any reason, the Subchapter S Trust should terminate during the beneficiary's lifetime, the entire trust estate shall be distributed to the beneficiary of the Subchapter S Trust.

      6.            This Paragraph E is intended to qualify the Subchapter S Trust as a Qualified Subchapter S Trust, as described in Section 1361(d)(3) of the Code and the applicable Treasury Regulations, and the Trustee shall construe such provisions accordingly. Notwithstanding the

foregoing, if the requirements for a trust to be treated as a Qualified Subchapter S Trust are modified such that one or more of the provisions described in Paragraph E is no longer necessary for a trust created hereunder to be treated as a Qualified Subchapter S Trust, then the Trustee shall disregard such unnecessary provisions and administer the Subchapter S Trust to the greatest extent possible in a manner consistent with the provisions that would have applied to the trust if it had never held S Corporation Stock.  Conversely, if additional requirements should be imposed in order for the trust to qualify as a Qualified Subchapter S Trust, the Trustee may impose such additional requirements upon the Subchapter S Trust.  In addition, instead of dividing the trust into separate trusts as provided for above, the Trustee may make an Electing Small Business Trust Election as permitted under Section 1361(e) of the Code.

SIGNED at _LOS ANGELES, CA_ , on _NOVEMBER_ , 2013.

_____
FRASER ROBERT THOMPSON,
Settlor

ACCEPTED:

WALTER B. MANDELL, Trustee

STATE OF CALIFORNIA            )
                              )
COUNTY OF LOS ANGELES          )

On _NOV 1,_ 2013, before me, _ANDREW VOGEL_, Notary Public, personally appeared FRASER ROBERT THOMPSON, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature                                    Seal

STATE OF CALIFORNIA            )
                              )
COUNTY OF LOS ANGELES          )

On _NO V 1,_ 2013, before me, _ANDREW VOGEL_, Notary Public, personally appeared WALTER B. MANDELL, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature                                    Seal

FRASER THOMPSON IRREVOCABLE TRUST

<u>Schedule A</u>

1.      The real property and improvements commonly known as 767 Haverford Avenue, Pacific Palisades, CA  90272.

1

# EXHIBIT B

# THE WALTER B. MANDELL GROUP
## FINANCIAL & BUSINESS MANAGEMENT
8447 WILSHIE BLVD., SUITE 204, BEVERLY HILLS CA 90211
TELEPHONE (323) 651-3000
FACSIMILE   (323) 651-3003

January 9, 2018

RE: Fraser Thompson Irrevocable Trust

To Whom it May Concern:

I am the trustee of the Fraser Thompson Irrevocable Trust. I am also the C.P.A. for Fraser Thompson.

In February, 2013, I advised Fraser Thompson that he should do some estate planning since he was engaged and had a daughter. I always recommend a solid estate plan for all my clients. We met with James Murphy, Esq. (an estate planning attorney) to discuss estate planning options.

We decided to create the Fraser Thompson Irrevocable Trust dated November 1, 2013. The trust was established for the benefit of Kyla Schaefer and his daughter. His personal residence was transferred into the trust. The tax planning objectives were to avoid estate tax and also a possible exit tax.

The exit tax was an issue in the event Fraser would have to move back to Canada because of his wife's U.S. status (she was on a temporary visa). By transferring the residence to the trust, Fraser would avoid this exit tax.

Please let me know if you have any questions.

Sincerely,

Walter B. Mandell

# EXHIBIT C

**This page is part of your document - DO NOT DISCARD**



# 20131588318



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/07/13 AT 09:50AM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |



**L E A D S H E E T**



201311070010017

00008525673

005879152

**SEQ:**
**01**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E123753

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

JAMES M. A. MURPHY
McKenna Long & Aldridge LLP
300 South Grand Avenue, Suite 1400
Los Angeles, CA  90071



11/07/2013

*20131588318*

Space above this line reserved for Recorder's Use Only

# INDIVIDUAL GRANT DEED

JSW 201080937.1

**RECORDING REQUESTED BY:**
James M.A. Murphy

**AND WHEN RECORDED MAIL TO:**
James M.A. Murphy
300 S. Grand Avenue, 14th Floor
Los Angeles, California 90071-3124

**MAIL TAX STATEMENTS TO:**
Walter B. Mandell, Trustee
The Fraser Thompson Irrevocable Trust
1640 S. Sepulveda Blvd., Suite 515
Los Angeles, California 90025

**APN:**   4412-006-032

# INDIVIDUAL GRANT DEED

(Excluded from reappraisal under Proposition 13)
**TRUST TRANSFER**

The undersigned grantor, FRASER R. THOMPSON, declares as follows:

1)      **Documentary transfer tax is $0.00.**  This transaction is exempt from Documentary Transfer Tax because (a) this conveyance transfers the grantor's interest into a revocable living trust and to an irrevocable trust, not pursuant to a sale, and is exempt pursuant to Los Angeles County Ordinance 9443 and California Revenue and Taxation Code Section 11911, and (b) there is no consideration for this transfer.

2)      The undersigned, FRASER R. THOMPSON, a single man, hereby grants to WALTER B. MANDELL, as Trustee of THE FRASER THOMPSON IRREVOCABLE TRUST, dated _11/1_____, 2013, the following described real property in the City of Los Angeles, County of Los Angeles, State of California:

> Parcel 1:  Lot 17 in Block 26 of Tract Number 9300, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 125, Pages 55 to 78 inclusive of Maps, in the office of the County Recorder of said County.

> Parcel 2:  An easement for ingress and egress over the Southerly one foot of Lot 16 in Block 26 of Tract Number 9300, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 125, Pages 55 to 78 inclusive of Maps, in the office of the County Recorder of said County.

Subject to:  Liens, encumbrances, covenants, conditions, restrictions, reservations, rights, rights-of-way, and easements of record.

Commonly known as 767 Haverford Avenue, Pacific Palisades, CA 90272

Dated: _____11/1_____, 2013

_____
FRASER R. THOMPSON

STATE OF CALIFORNIA          )

                                    )        ss:
COUNTY OF LOS ANGELES   )

On _NOV. 1_, 2013 before me, _ANDREW VOGEL_
Notary Public, personally appeared _FRASER ROBERT THOMPSON_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/
~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed
the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.



                                                    Signature of Notary Public

[Seal]

# EXHIBIT D

# RESIDENTIAL LEASE

### 767 Haverford Avenue, Pacific Palisades, CA 90272

This LEASE is made this _1_ day of _November_, 2013 by and between **WALTER B. MANDELL, as Trustee of THE FRASER THOMPSON IRREVOCABLE TRUST dated _November 1_, 2013, herein called "Landlord," and FRASER ROBERT THOMPSON, herein called "Tenant."**

Tenant agrees by signing this agreement that each term of this agreement is material and reasonable, the performance of which constitutes a condition of Tenant's right to possession of the premises. The failure by Tenant to comply with any material term herein shall constitute a default hereunder and Landlord may terminate Tenant's right to possession of the premises and declare a forfeiture of this agreement, in any manner provided by law.

(1)   **RENT AND TERM.**   For and in consideration of the prompt payment of the rent by Tenant and exact performance of the covenants hereinafter set forth by Tenant, Landlord does hereby lease to Tenant, and Tenant does hereby hire from Landlord, the Landlord's undivided 100% interest in that **home** located at **767 Haverford Avenue, Los Angeles, California 90272** (the "premises") for the term of twenty-four **(24) months** commencing on _November 1_, 2013 (the "Commencement Date") and ending on _October 31_, 2015, at the initial monthly rental rate of _____ $ 5,000 _____ **($ .00)** (the "Initial Monthly Rent") payable to Landlord.

Rent shall be paid on November _1_, 2013 for the initial period of **30** days and thereafter it shall be paid monthly in advance of the first day of the month by personal check or certified funds, without deduction or offset, to Landlord. Should Tenant fail to pay rent by the close of the fifteenth day following the date on which it was due, or should Tenant pay rent by a check that is not honored by the bank, then Tenant agrees to pay to Landlord a fee in the amount of $25.00. In addition to the preceding fee, in the event Tenant's check is returned to Landlord as "non-sufficient funds" or otherwise unpaid, Tenant agrees to pay an additional fifteen dollars ($15.00) as a reasonable approximation of Landlord's costs in handling the returned check. Landlord and Tenant agree that the charge is presumed to be the damages sustained because the check was not paid, and that it is impracticable or extremely difficult to fix the actual damages. Said fifteen dollars ($15.00) shall not constitute additional rent and its non-payment shall not be grounds for eviction; however, Landlord may deduct such charge from Tenant's security deposit. The

USW 804030258.1

parties acknowledge that if rent is not paid on time or is paid by a check that is not honored by the bank, that Landlord is put to additional bookkeeping and related expenses, the precise amount of which is difficult if not impossible to ascertain, and for that reason the parties hereto have agreed upon the above sum to compensate Landlord for such expenses. Nothing herein contained shall be construed as to either permit, sanction, or authorize the payment of rent other than on the day it is due or the payment of rent with checks that are not honored by the bank. Should rent be paid by a check which is not honored by the bank, Landlord may, at its sole discretion, demand that future payments be made by cashier's check or money order. The failure to pay rent on the due date or the payment of rent with a check that is not honored by the bank shall immediately vest in Landlord all of those rights which it would have notwithstanding any provisions contained in this paragraph, including, without limitation, those rights described in paragraph (12) herein.

(2)     **OPTION TO EXTEND.**  Tenant may elect to extend the term of this Lease for one or more additional periods of twelve (12) consecutive months (not to exceed sixteen (16) such additional periods) (collectively, the "Extension Periods"). Any such additional period shall commence on the day following the expiration of the immediately preceding period.  Any such election shall be made in writing and delivered to Landlord at least thirty (30) days prior to the expiration of the existing twelve (12) month period under the term of this Lease and shall be effective only for one period of twelve (12) consecutive months.  Rent shall be adjusted to an amount equal to the greater of (A) the rent in effect immediately prior to the applicable Extension Period, or (B) the product obtained by multiplying the Initial Monthly Rent by a fraction, the numerator of which is the Consumer Price Index for all urban consumers for the Los Angeles Area as prepared by the United States Department of Labor, Bureau of Labor Statistics (the "Index"), published nearest but prior to the start of the Extension Period and the denominator of which is the Index published nearest the but prior to the Commencement Date.

Tenant     _____

(3)     **DELAY OF POSSESSION.**  If Landlord is unwilling or unable to deliver possession of the premises to Tenant on the agreed date, because of: (a) the loss or destruction of the premises, (b) failure of the prior tenant to vacate, or (c) for any other reason, then the Tenant or Landlord may immediately cancel and terminate this agreement upon written notice to the other party at their last known address; whereupon neither party shall have liability to the other, and any sums paid under this lease shall be refunded in full.  If neither party cancels, the rent payable under this lease shall be prorated and begin on the date that Landlord makes possession of premises available to Tenant.

USW 804030258 1

(4)   **KEYS.**  All keys and/or entry cards relating to the premises shall be returned on the date the premises are vacated.  If Tenant shall fail to return any key or card supplied by Landlord, Tenant shall pay Landlord's charge (as adopted from time to time) for the failure to return any such key and/or card.

(5)   **USE, ASSIGNMENT AND SUBLEASE.**  Tenant shall not use the premises or any part thereof or suffer the same to be used for any purpose other than a private dwelling, nor by any person other than Tenant as identified hereinabove. Tenant shall not sell, assign, hypothecate or transfer this lease in whole or in part, nor sell, assign, sublet, hypothecate, license or transfer the premises or any part thereof (including, without limitation, any assigned parking stall or privilege) without the express written consent of Landlord, which Landlord may withhold at its sole and absolute discretion.  In the event the premises is sublet or the lease is assigned by Tenant, whether Tenant permanently resides in the premises or not, then the rental rate for the premises shall be increased by 50% of the then existing rent automatically without further notice from Landlord. This paragraph is pursuant to Civil Code §1954.53(d).  When Landlord first discovers the illegal assignment or subletting, Landlord shall elect the option of either collecting the increased rent from Tenant (including all increased back rent due from the date the unit was first sublet or the lease assigned) or enforcing the provisions of this paragraph (4) of the lease which prohibits subletting or assignment.  It is expressly understood and agreed that the character of the occupancy of the premises, as above restricted, is a special consideration and inducement for the granting of this lease and in the event of violation hereof by Tenant or if Tenant shall cease to occupy the home, or shall permit the premises (including, without limitation, any parking stall or privilege) to be occupied or used by parties other than Tenant, or violate any other restriction or condition hereby imposed, this lease may be terminated by Landlord in the manner provided in paragraph (9) hereof.  No commercial use shall be made of said premises or any part thereof.

Tenant Initials _____    Landlord Initials _____

Tenant shall not use the premises or any part thereof as an office or work studio. Tenant shall not engage in any activity within the home for which a Home Work Permit must be obtained from any governmental agency.  Tenant further agrees (a) not to use or suffer or permit the premises or any part thereof to be used for any purpose or use in violation of any law, ordinance, or regulation of any governmental authority, or in any manner that will constitute a nuisance or an annoyance to the owners or occupants of adjoining or neighboring property or to other occupants of the home, or in any manner that interferes with the quiet enjoyment of such persons, or that might injure the reputation of the home, or for any hazardous purpose or in

USW 804030258.1

any manner that might violate any policy of insurance or suspend, avoid, make inoperative or increase the rate of any fire, rental, or other insurance, at any time carried on the building or on any of its contents and (b) not to permit any auction to be conducted in the premises.  In the event of any disturbance by Tenant or Tenant's family, servants, employees, agents, invitees, or licensees, Landlord may, in addition to all other remedies provide herein, at its option terminate this lease by written notice.  Tenant agrees to vacate the premises within three days after delivery of said notice.  If Landlord accepts rent from any person not a tenant (or not named above), whether or not the person occupies the premises, said shall not constitute a waiver of this paragraph (4), shall not be used to establish said person's right to possession of the premises, and shall be interpreted only as an accommodation to Tenant.

(6)   **ACCEPTANCE AND SURRENDER OF PREMISES/REPAIRS.**
Tenant has examined and knows the condition of the premises and has received the same in good order and repair, except as herein otherwise specified, and acknowledges that no representations as to the condition or repair thereof have been made by Landlord, or the agents of Landlord, prior to or at the execution of this lease, that are not herein expressed.  Throughout said term Tenant shall take good care of the premises, its appurtenances, fixtures, and equipment, and shall not drill into, disfigure, or deface any part of the buildings, grounds, or any part or portion of the premises, or suffer the same to be done.  As and when needed, Landlord shall have the right, but not the obligation, to repair the premises, its appurtenances, fixtures, and equipment where rendered necessary by misuse or neglect of Tenant, Tenant's family, servants, employees, agents, invitees, or licensees.  The cost thereof shall be determined on statements rendered by Landlord to Tenant and the sum so determined shall be payable to Landlord upon the delivery of such statement; and if the same not be paid by Tenant within ten (10) days thereafter, then said sum shall be deducted from the security deposit and the failure of Tenant to promptly restore the security deposit for the full amount shall be a breach of this lease.

a)   Tenant shall comply with all laws, ordinances, governmental regulations and with the regulations.

b)   Upon the ending of the term in any manner, Tenant shall quit and surrender the premises in as good an order and condition as they were at the beginning of the term, excluding normal wear and tear.  If said premises be not so surrendered at any ending of the term, Tenant shall be responsible to Landlord for all of the damage which Landlord shall suffer as a result thereof, and further will hold harmless Landlord from any claim made by any succeeding Tenant against Landlord, resulting from delay by Landlord in delivering possession of the premises to such succeeding Tenant, so far as

such delay is occasioned by failure of Tenant to surrender the premises timely and in the condition required by this provision.

(7)    **LIENS.**  Tenant shall keep the premises and the property free and clear of all liens.

(8)    **DAMAGE.**  If the premises shall be partially damaged by fire or casualty, Landlord may make repairs.  But in the event of substantial destruction of the building of which the premises form a part by fire, earthquake or otherwise, or in case the damage to the premises shall be so extensive that they cannot, in the sole opinion of Landlord, be repaired within thirty (30) days, or if Landlord shall decide to rebuild or to reconstruct or repair the building so that, as reconstructed or repaired, it will be substantially different structurally or architecturally, then all interest of Tenant in the premises shall terminate, and this lease shall become void from such time.  In the event that Landlord is making repairs and that any question shall arise between Landlord and Tenant as to whether or not repairs shall have been made with reasonable dispatch, due allowance shall be made for any delay which may arise in connection with the adjustment of the fire insurance loss, and for any delay arising out of what are commonly known as "labor troubles," or any other cause beyond Landlord's direct control.

(9)    **DEFAULT.**  If Tenant defaults in the payment of the rent herein provided for, or if Tenant defaults in the performance of any other of Tenant's obligations herein contained for three days after written notice thereof from Landlord, or if Tenant abandons or vacates the premises, in addition to any other rights or remedies which Landlord may have by law, Landlord may at its option:

a)    Terminate and declare a forfeiture of this lease and re-enter the premises as provided by law; and Landlord shall be thereupon entitled to recover from Tenant all damages Landlord may have suffered by reason of Tenant's breach, including the cost of recovery of the premises, the cost of removal of persons and property therefrom, and the worth at the time of a court award of damages in favor of Landlord of the amount by which the unpaid rent for the balance of the term after the time of such court award exceeds the amount of such rental loss for the same period that Tenant proves could be reasonably avoided.

Tenant Initials _____        Landlord Initials _____

b)    Re-enter the premises and remove all persons therefrom in accordance with law, and, without terminating this lease, from time to time re-let the

USW 804030258.1

premises or any part thereof on such terms and conditions as Landlord may deem fit (which may be for a term extending beyond the term of this lease or any extension or renewal thereof) and receive and collect the rents therefor which shall be applied to any indebtedness due hereunder from Tenant to Landlord provided that Tenant shall not be entitled to any excess of the proceeds of such re-letting over such indebtedness. In this event, and whether or not the premises or any part thereof is re-let, Tenant shall pay to Landlord all such sums required to be paid by Tenant up to the time of re-entry by Landlord, and thereafter Tenant shall, if required by Landlord, pay to Landlord until the end of the term of this lease or any extension or renewal thereof the equivalent of the amount of all rent and other charges required to be paid by Tenant under the terms hereof, less the proceeds of any re-letting after deducting all Landlord's cost and expenses assumed or incurred in recovering possession and re-letting the premises, and the same shall be due and payable on the several rent days specified herein.

c)    In the event of any re-entry and taking possession of the premises as provided in this paragraph (9), Landlord shall have the right but not the obligation to remove therefrom all or any personal property located therein and may place the same in storage at the expense and risk of the owner or owners thereof and sell the same in the manner prescribed by law.

d)    No employee of Landlord or Landlord's agent shall have any power to accept keys to the premises prior to the termination of this lease. The delivery of keys and/or entry cards to any employee of Landlord or Landlord's Agent shall not operate as a termination of this lease or as a surrender of the premises. Interruption or curtailment of any service shall not constitute a constructive or partial eviction nor entitle Tenant to any compensation or abatement of rent. The receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach. No provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing, signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy, including, without limitation, the remedy of eviction. If upon failure of Tenant to pay the rent as aforesaid, or to comply with any other covenants, conditions, rules

USW 804030258.1

and regulations of this lease, action should be brought or notice served on account thereof to enforce payment of rent herein, or to recover possession of premises, or to enforce any provision of this lease, or to obtain damages, Tenant agrees to pay Landlord reasonable costs and expenses in said action or for said notice, including attorneys' fees, whether or not any such action proceeds to judgment.

(10)   **NOTICES.**   Any notice from Landlord to Tenant (other than a notice from Landlord to Tenant terminating this Lease) shall be given, in writing, and delivered personally to Tenant or mailed and deposited in any general branch U.S. Post Office or post box, enclosed in a postpaid envelope addressed to any of the tenants at the building in which the premises are located.   Any notice by Landlord to Tenant terminating this Lease shall be in writing, and shall be served in the manner proscribed by Section 1162 of the California *Code of Civil Procedure* or by sending a copy certified or registered mail to Tenant at the premises.   Any notice or service of process to Landlord from Tenant shall be deemed to be fully given or served, if in writing, and delivered personally to Landlord.   Notices to Landlord from Tenant may also be mailed by certified or registered mail to the address set forth below:

Walter B. Mandell, Trustee, 1640 S. Sepulveda Boulevard, Suite 515, Los Angeles CA 90025.

(11)   **ABATEMENT OF SERVICES.**   No diminution or abatement of rent or other compensation shall be claimed or allowed for inconvenience or discomfort arising from repairs or improvements made to the building, its systems, or appliances, nor for any space taken to comply with any law, ordinance or order of government authority, nor for any reassignment of the automobile parking or privilege referenced herein.   In respect to any "services" herein expressly or impliedly agreed to be furnished by Landlord to Tenant, it is agreed that there shall be no diminution or abatement of the rent or any other compensation for interruption or curtailment of such "services".   Landlord shall not be required to furnish and Tenant shall not be entitled to receive any such "services" during any period wherein Tenant shall be in default in respect to payment of the rent.

(12)   **ACCESS TO PREMISES.**   Landlord and Landlord's agents shall be permitted at any time during the term of this lease to visit and examine the premises at any reasonable hour, and Landlord, Landlord's agents, and/or workmen authorized by Landlord or Landlord's agent, may enter the premises at reasonable times upon 24-hour written notice to Tenant, or immediately without written notice in the event of an emergency, to perform services or to make or facilitate repairs, changes, alterations, or improvements in any part of the building whenever Landlord

USW 804030258.1

may see fit to make the same and to show said premises during thirty (30) days prior to the termination of this lease, and if said Tenant shall not be personally present to open and permit the entry into said premises at any time when for any reason an entry therein shall be necessary or permissible hereunder, Landlord or Landlord's agents may enter same without rendering Landlord or such agent liable to any claim or cause of action for damages by reason thereof and without in any manner affecting the obligations and covenants of this lease.  In the event that at any time before the expiration of the term hereby granted Tenant shall cease to occupy the premises, Landlord shall have the right to enter upon the premises for the purpose of cleaning and redecorating the same, or for any other purpose, and the exercise of such right by Landlord shall in no way affect or modify the obligations of Tenant under this lease for the remainder of the term thereof.

(13)  **INDEMNIFICATION.** Landlord shall not be liable for, and Tenant shall indemnify Landlord and its beneficiaries, agents, employees, representatives, affiliates, successors and assigns against, any damage or injury sustained by Tenant, Tenant's family, servants, employees, agents, invitees or licensees in the use of the premises, building, property or recreational facilities and swimming pool, if any. Tenant shall indemnify Landlord from and against any claim asserted by or against, and any loss, cost, damage or expense incurred by, Landlord or Tenant, arising out of Tenant's use of the premises, the building, the property or recreational facilities and swimming pool, if applicable, of Landlord.

(14)  **UTILITIES.** Tenant shall pay all charges for electricity used on the premises.  Any telephone, cable and telecommunication charges shall be paid by Tenant.  Landlord shall not be responsible for the curtailment of any utilities serving the building for any reason.

(15)  **NO WAIVER.**  The failure of Landlord to insist in one or more instances upon a strict performance of any of the covenants of this lease, or to exercise any right herein contained, shall not be construed as a waiver or relinquishment for the future of such covenant or right, but the same shall continue and remain in full force and effect.  No waiver by Landlord of any provision hereof shall be deemed to have been made unless expressly in writing and signed by Landlord.  Landlord's acceptance of rent with knowledge of a default by Tenant of any breach of any term or condition of this agreement shall not constitute a waiver of that breach or any subsequent breaches.

(16)  **NO REPRESENTATIONS.** Tenant acknowledges that Landlord has made no representations or promises in respect to the premises except those contained herein, and that Tenant is not relying on any representation or promise not

contained herein in executing this lease.  Except as expressly herein provided, Landlord shall not be liable to Tenant for any damages or other consideration upon termination of this lease or otherwise.

(17)  **TIME OF ESSENCE.**  Time is of the essence in this lease.

(18)  **NOTICE TO VACATE.**  If Tenant intends to vacate the premises at the expiration of the Lease term specified hereinabove or at any time thereafter, Tenant shall give Landlord written notice of that intention at least thirty (30) days prior to the expiration of the Lease term.  If Tenant vacates the premises at the expiration of the Lease term, or at any time thereafter, without first having provided Landlord with such written notice, Landlord shall be entitled to recover an additional month's rent from Tenant.  Nothing contained herein is intended to relieve or should be construed to relieve Tenant from the obligation to pay rent for the entire term of this lease.  In the event that Landlord elects to terminate this Lease after the expiration of the term of this Lease specified in Section 1 hereinabove, Landlord shall give at least thirty (30) days notice to Tenant, in writing, of Landlord's intent to terminate this Lease.  Pursuant to Section 1946.1 of the California *Civil Code,* in the event that Tenant has resided in the premises for one (1) year or more and provided that Section 1946.1 of the California *Civil Code* is still valid and in effect at the time that Landlord gives its notice to terminate this Lease to Tenant, Landlord shall then provide said notice to Tenant at least sixty (60) days prior to the proposed date of termination of this Lease.

Tenant _____

(19)  **WAIVER OF TRIAL BY JURY.**  Landlord and Tenant hereby waive trial by jury in any action or proceeding brought by any of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Landlord and Tenant, or Tenant's use and occupancy of the premises.

Tenant _____

(20)  **IMPROVEMENT/REHABILITATION WORK.**  Tenant agrees to pay all rent increases resulting from capital improvement or rehabilitation work completed after the date hereof.

(21)  **TENANT'S INSURANCE.**  Tenant hereby acknowledges that Tenant has been informed and understands that Landlord is not required to, and does not, carry insurance covering Tenant's personal property.  Tenant agrees that Tenant

USW 804030258.1

shall be responsible for obtaining any such insurance at Tenant's own cost and without contribution or reimbursement from Landlord.

Tenant ________

(22) **ESTOPPEL CERTIFICATE.** Within fifteen (15) days after written request is mailed to Tenant, Tenant agrees to execute and deliver to Landlord an estoppel certificate on the form submitted by Landlord: (a) acknowledging that this agreement is in full force and effect and whether this agreement has been modified and if so, stating all modifications; (b) stating the amount of the current rent Tenant is paying and the amount Tenant has paid as prepaid rent and security deposit; (c) stating whether or not Tenant is then aware of any violation of law in the operation of the building and/or has any claim against Landlord; and (d) stating requests for any other information relevant to Tenant's occupancy of the premises.

(23) **LEAD-BASED PAINT.** Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention. *Premises was constructed prior to 1978.* In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form ("Disclosure of Information on Lead-Based Paint and/or Lead-based Paint Hazards") and a federally approved lead pamphlet.

Tenant ________

(24) **REPAIRS AND IMPROVEMENTS.** Tenant shall keep the premises in good order and repair. Landlord, at Landlord's option, shall have the right to make repairs in and about the premises, and to fixtures, appurtenances and equipment located therein. In the event that such repairs have been necessitated by the acts, conduct or omissions of Tenant, Tenant's family, servants, employees, invitees or licensees, Tenant shall reimburse Landlord upon demand for all amounts incurred by Landlord to make such repairs. No alteration, addition or improvement to the inside or outside of the premises shall be made by Tenant (or at Tenant's direction). Any alteration, addition or improvement to the premises made by Tenant shall, at Landlord's option, become the property of Landlord upon the expiration or sooner termination of this lease; provided, however, that Landlord shall have the right to require Tenant to remove such alterations and improvements at Tenant's sole cost upon termination of this lease.

USW 804030258 1

(25) **FUMIGATION.** If and when Landlord wishes to fumigate the premises, Tenant agrees to temporarily vacate the premises for the time period reasonably necessary to complete the fumigation. Landlord will give Tenant at least seven (7) days prior written notice to vacate. Landlord shall only be required to pay Tenant the per diem cost of Tenant's rent for the number of days Tenant must remain out of possession [i.e., Tenant's monthly rent divided by thirty (30) multiplied by the number of days Tenant must stay out of possession]. Tenant shall comply with all instructions of the fumigation company as to packaging food, clothing, and plants at Tenant's sole cost and expense.

(26) **"MEGAN'S LAW" DATABASE DISCLOSURE.** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

(27) **REFERENCES.** Tenant will not request, nor will Landlord give, any written or oral reference to anyone concerning Tenant or Tenant's status at the property. Tenant hereby waives any right that may exist to request Landlord to send such a reference. In the event anyone requests a reference of Tenant from Landlord, Landlord has the right to ignore said request altogether, or to respond to the requesting party that Landlord's business practice is NOT to give references.

(28) **NO REPRESENTATION OR WARRANTY.** Nothing contained herein is intended to constitute nor shall it be construed to constitute a representation or warranty by Landlord that the premises are safe or secured against the wrongful or criminal acts, conduct or omissions of third persons. The parties hereto expressly acknowledge and agree that Landlord has no duty to protect or safeguard Tenant against any such act, conduct or omission. Tenant hereby expressly waives and relinquishes any such purported obligation, and agrees to indemnify and hold harmless Landlord from and against any and all claims or damages in any way arising from or relating to any such act, conduct, or omission.

Tenant _____

(29) **HOLDING OVER.** Any holding over after expiration of the Lease, with the consent of Landlord, shall be construed as a month-to-month tenancy in accordance with the terms of this Lease, as applicable. No holding over or extension

USW 804030258.1

of this Lease shall extend the time for the exercise of the option unless agreed upon in writing by Landlord.

(30) **AMENDMENT.** This Lease may not be amended or altered except by an instrument in writing executed by Landlord and Tenant.

(31) **PARTIAL INVALIDITY.** If any part of any paragraph or section of this agreement shall be found by a court to be legally invalid, only that part shall be severed to the extent that it is invalid, but this invalidity shall not affect the validity or enforceability of any other part of this agreement.

(32) **GOVERNING LAW.** The validity, meaning, and effect of this Lease shall be determined in accordance with California law.

Tenant agrees to rent the premises on the above terms and conditions, effective as of _November 1_, 2013.

_____
FRASER ROBERT THOMPSON

Landlord agrees to rent the premises on the above terms and conditions, effective as of _November 1_, 2013.

_____
WALTER B. MANDELL, Trustee
1640 S. Sepulveda Blvde., Suite 515
Los Angeles, CA  90025
(310) 738-7392

USW 804030258.1

September 1, 2015

RE: 767 Haverford Avenue Lease

I, Fraser Thompson, extend the lease for an additional one year term

until October 31, 2016.

Fraser Thompson

OK - Neter Ardl

November 1, 2016

RE: 767 Haverford Avenue Lease

I, Fraser Thompson, extend the lease for an additional one year term

until October 31, 2017.

Fraser Thompson

OK - water _____

November 1, 2017

RE: 767 Haverford Avenue Lease

I, Fraser Thompson, extend the lease for an additional one year term

until October 31, 2018

Fraser Thompson

or - wate ø ~loo

# EXHIBIT E

```
##XXH1309DPCSTM        12291700123842375
```

Page 1      (0)

Account #: 123842375

This statement: December 29, 2017          Contact us:
Last statement: November 30, 2017          800 773-7100

                                           City National Bank
                                           400 N Roxbury Drive
001                        0830N           Beverly Hills CA  90210
FRASER THOMPSON IRREVOCABLE TRUST
FRASER ROBERT THOMPSON, SETTLOR            cnb.com
C/O WALTER B MANDELL GROUP
8447 WILSHIRE BLVD SUITE 204
BEVERLY HILLS CA 90211


 IMPORTANT NOTICE: THE TREASURY MANAGEMENT DISCLOSURE AND AGREEMENT
 (TMDA) HAS BEEN UPDATED TO REFLECT NEW INFORMATION FOR TREASURY
 MANAGEMENT SERVICES. YOU CAN OBTAIN A COPY FROM ANY CITY NATIONAL BRANCH
 OR ONLINE AT CNB.COM (NAVIGATE TO PERSONAL OR BUSINESS CHECKING AND
 CLICK ON THE LINK FOR AGREEMENTS, FEES AND DISCLOSURES.

Personal Checking Account

Account Summary              Account Activity
Account number      123842375  Beginning bal  (11/30/2017)          $127,631.30
Minimum balance   $127,631.30  Deposits       (0)         + 0.00
Average balance   $131,941.64  Electronic cr  (0)         + 0.00
Avg. collect bal  $131,941.00  Other credits  (1)     + 5,000.00
                               Total credits                       +$5,000.00
                               Debits                   -  $0.00
                               Ending balance (12/29/2017)         $132,631.30

OTHER CREDITS
Date   Description                                    Reference      Credits  Control Number
12-5   Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0123785800    5,000.00  000000000000000

DAILY BALANCES


Date        Amount  Date         Amount  Date        Amount
11-30   127,631.30  12-05    132,631.30
```

##XXH1309DPCSTM            12291700123842375

FRASER THOMPSON IRREVOCABLE TRUST        **Page 2**
December 29, 2017                        Account #: 123842375

OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

For accounts in an account analysis relationship, the
Overdraft/Return Item Fees may include fees incurred during the
previous statement cycle period whether or not directly charged to
the account.  For an itemization of these fees, contact your Account
Officer.

# EXHIBIT F

STEVEN M GREEN CPA
A PROFESSIONAL ACCOUNTANCY CORPORATION
5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367
310-556-2407

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC
Instructions for Filing
Form 8879-PE
2016 IRS e-file Signature Authorization for Form 1065
for the year ended December 31, 2016

The original form should be signed (using full name and title) and dated by an authorized general partner or limited liability company member manager of the partnership.

The signed form should be returned on or before September 15, 2017:

STEVEN M GREEN CPA
A PROFESSIONAL ACCOUNTANCY CORPORATION
5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367

Or fax to: 310-307-3305
Attn: Steve Green

Or email to: sgreen@smgcpa.net

DO NOT separately file a paper Form 1065 with the Internal Revenue Service.  Doing so will delay the processing of your return.

We must receive your signed form before we can electronically transmit your return.  The Internal Revenue Service will notify us when your return is accepted.  Please note that the IRS does not consider your return as filed until they confirm acceptance of the return.

Form **8879-PE**

Department of the Treasury
Internal Revenue Service

## IRS *e-file* Signature Authorization for Form 1065

▶ **Don't send to the IRS. Keep for your records.**

▶ **Information about Form 8879-PE and its instructions is at** *www.irs.gov/form8879pe.*

OMB No. 1545-0123

**2016**

For calendar year 2016, or tax year beginning _____ , 2016, and ending _____ , 20 ___

| Name of partnership | Employer identification number |
|---|---|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, | 46-5289857 |

**Part I**  **Tax Return Information** (Whole dollars only)

| | | |
|---|---|---:|
| 1 | Gross receipts or sales less returns and allowances (Form 1065, line 1c) . . . . . . . . . . . . . **1** | 169,971. |
| 2 | Gross profit (Form 1065, line 3) . . . . . . . . . . . . . . . . . . . . . . . . **2** | 90,767. |
| 3 | Ordinary business income (loss) (Form 1065, line 22) . . . . . . . . . . . . . . . . **3** | -161,754. |
| 4 | Net rental real estate income (loss) (Form 1065, Schedule K, line 2) . . . . . . . . . . . . **4** | |
| 5 | Other net rental income (loss) (Form 1065, Schedule K, line 3c) . . . . . . . . . . . . . . **5** | |

**Part II**  **Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager**
(Be sure to get a copy of the partnership's return)

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2016 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic return of partnership income. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**General Partner or Limited Liability Company Member Manager's PIN: check one box only**

[X] I authorize STEVEN M GREEN CPA, APAC _____ to enter my PIN 8 3 1 4 7 as my signature
              **ERO firm name**                                              **don't enter all zeros**
on the partnership's 2016 electronically filed return of partnership income.

[ ] As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the partnership's 2016 electronically filed return of partnership income.

General partner or limited liability company member manager's signature ▶ _____

Title ▶ MANAGER                                      Date ▶ _____

**Part III**  **Certification and Authentication**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.   9 6 5 4 4 4 2 7 2 8 2
                                                                          **don't enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature on the 2016 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 3112**, IRS *e-file* Application and Participation, and **Pub. 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ▶ _____        Date ▶ _____

### ERO Must Retain This Form - See Instructions
### Don't Submit This Form to the IRS Unless Requested To Do So

**For Paperwork Reduction Act Notice, see instructions.**               Form **8879-PE** (2016)

JSA
6P8907 2.000

| Electronic Return Acknowledgement |
|---|

**Tax Year :** 2016                                          **Return No:** 1355ID
**Taxpayer:** LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC
**ID No   :** 46-5289857

Return Identification Number        : 96544420172895000050

Return Type                         : 1065

Filing Type Description             : FEDERAL RETURN

Tax Period Beg. Date                : 01/01/2016

Tax Period End Date                 : 12/31/2016

Contained Alerts                    : N

IRS Received Date                   : 10/16/2017

Completed Validation                : Y

Electronic Postmark                 : 10/16/2017 6:56:00 P

Return Status                       : ACCEPTED

Status Date                         : 10/16/2017

Taxable Income (Loss)               :

Total Tax                           :

Payment Indicator                   :

Embedded CRC32                      : 0X70016382

Computed CRC32                      : 0X70016382


CONTAINED ALERTS    :(Y/N) INDICATES WHETHER THE SUBMISSION CONTAINS    ANY ALERTS FROM INTERNAL REVENUE SERVICE.
                    IF (Y) PRINT ALERT AS PER DETAILS LISTED ON STEP  8 - SENDING RETURNS AND STATUS.

COMPLETED VALIDATION:(Y/N) INDICATES WHETHER THE SUBMISSION WENT THR OUGH ALL POSSIBLE VALIDATION PROCESSING FROM IRS.
                    IF (N) PRINT DETAIL AS PER DETAILS LISTED ON STE P 8 - SENDING RETURNS AND STATUS.

EMBEDDED CRC32      :"HASH" OR "CHECK SUM" WHICH COUNTS EACH BYTE OF   ELECTRONIC TAX RETURN DATA GENERATED BY TTA AND INCLUDES
                    THIS TOTAL IN THE TRANSMISSION FILE SENT TO IRS   BY TTA.

COMPUTED CRC32      :"HASH" OR "CHECK SUM" WHICH COUNTS EACH BYTE OF   ELECTRONIC TAX RETURN DATA RECEIVED BY IRS AND INCLUDES THIS
                     IN THE ACKNOWLEDGEMENT FILE SENT BY IRS TO TTA.

ELECTRONIC POSTMARK : THIS IS THE TRANSMISSION DATE AND TIMESTAMP   AS PER CENTRAL TIME .

6X9061 1.000

**Form 1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2016, or tax year beginning _____, 2016, ending _____, 20_____.

▶ Information about Form 1065 and its separate instructions is at www.irs.gov/form1065.

OMB No. 1545-0123

**2016**

| A Principal business activity | Name of partnership | D Employer identification number |
|---|---|---|
| BEVERAGE BAR | LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 46-5289857 |

| B Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see the instructions. | E Date business started |
|---|---|---|---|
| JUICES | | 7515 SUNSET BLVD | 05/20/2013 |

| C Business code number | City or town, state or province, country, and ZIP or foreign postal code | F Total assets (see the instructions) |
|---|---|---|
| 722515 | LOS ANGELES, CA 90046 | $ 390,211. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**(6)** ☐ Technical termination - also check (1) or (2)

**H** Check accounting method: **(1)** ☒ Cash **(2)** ☐ Accrual **(3)** ☐ Other (specify) ▶ _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 2

**J** Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**Caution.** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

<table>
<tr><td rowspan="22"><b>Income</b></td><td>1a</td><td>Gross receipts or sales . . . . . . . . . . . . . . . . . .</td><td>1a</td><td>169,971.</td><td></td></tr>
<tr><td>b</td><td>Returns and allowances . . . . . . . . . . . . . . . . . .</td><td>1b</td><td></td><td></td></tr>
<tr><td>c</td><td>Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . .</td><td>1c</td><td></td><td>169,971.</td></tr>
<tr><td>2</td><td>Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . .</td><td>2</td><td></td><td>79,204.</td></tr>
<tr><td>3</td><td>Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . .</td><td>3</td><td></td><td>90,767.</td></tr>
<tr><td>4</td><td>Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) .</td><td>4</td><td></td><td></td></tr>
<tr><td>5</td><td>Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . . .</td><td>5</td><td></td><td></td></tr>
<tr><td>6</td><td>Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . .</td><td>6</td><td></td><td></td></tr>
<tr><td>7</td><td>Other income (loss) (attach statement) . . . . . . . . . . . . . . . .</td><td>7</td><td></td><td></td></tr>
<tr><td>8</td><td>Total income (loss). Combine lines 3 through 7 . . . . . . . . . . . . .</td><td>8</td><td></td><td>90,767.</td></tr>
</table>

| | | | |
|---|---|---|---|
| Deductions *(see the instructions for limitations)* | 9 | Salaries and wages (other than to partners) (less employment credits) . . . . | **9** | 121,097. |
| | 10 | Guaranteed payments to partners . . . . . . . . . . . . . . . . . | **10** | |
| | 11 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . | **11** | 350. |
| | 12 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | |
| | 13 | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | 61,807. |
| | 14 | Taxes and licenses . . . . . . . . . . . . . SEE STATEMENT 1 . | **14** | 12,910. |
| | 15 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . | **15** | |
| | 16a | Depreciation (if required, attach Form 4562) . . . . . . . | **16a** | 1,612. | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | **16b** | | **16c** | 1,612. |
| | 17 | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . | **17** | |
| | 18 | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . | **18** | |
| | 19 | Employee benefit programs . . . . . . . . . . . . . . . . . . | **19** | |
| | 20 | Other deductions (attach statement) . . . . . . . . SEE STATEMENT 1 . | **20** | 54,745. |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 . . . | **21** | 252,521. |
| | 22 | Ordinary business income (loss). Subtract line 21 from line 8 . . . . . . . | **22** | -161,754. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

MANAGER

JACK T LATNER

▶ Signature of general partner or limited liability company member manager ▶ Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| STEVEN M GREEN | | 10/14/2017 | | P00514869 |

Firm's name ▶ STEVEN M GREEN CPA, APAC

Firm's EIN ▶ 27-2824782

Firm's address ▶ 5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367

Phone no. 310-556-2407

**For Paperwork Reduction Act Notice, see separate instructions.**

Form **1065** (2016)

JSA
6P1010 2.000

Form 1065 (2016)   LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC   46-5289857   Page **2**

| **Schedule B** | **Other Information** | | |
|---|---|---|---|

| | | **Yes** | **No** |
|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | |

| | | | | | |
|---|---|---|---|---|---|
| **a** | ☐ Domestic general partnership | **b** | ☒ Domestic limited partnership | | |
| **c** | ☐ Domestic limited liability company | | ☐ Domestic limited liability partnership | | |
| **e** | ☐ Foreign partnership | **f** | ☐ Other ▶ | | |

| | | **Yes** | **No** |
|---|---|---|---|
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | X | |
| **3** | At the end of the tax year: | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . . . . . . . . | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . . . . . . . . | | X |
| **4** | At the end of the tax year, did the partnership: | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below . . . . . . . . . . . . . . . . . . . . . . . . | | X |

| **(i)** Name of Corporation | **(ii)** Employer Identification Number (if any) | **(iii)** Country of Incorporation | **(iv)** Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | **Yes** | **No** |
|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below . . . . | | X |

| **(i)** Name of Entity | **(ii)** Employer Identification Number (if any) | **(iii)** Type of Entity | **(iv)** Country of Organization | **(v)** Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | **Yes** | **No** |
|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3 . . . . . . . . . . . . . . . . . . . | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . . . . . . . . . | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **10** | At any time during calendar year 2016, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country. ▶ | | X |

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    46-5289857

Form 1065 (2016)                                                                                            Page **3**

| **Schedule B** | **Other Information** *(continued)* | Yes | No |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| **11** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions . . . . . . . . . . . . . . . | | X |
| **12a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? . . . . . . . . . . . | | X |
| | See instructions for details regarding a section 754 election. | | |
| **b** | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions . . . . . . . . . | | X |
| **c** | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| **13** | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | |
| **14** | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **15** | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| **16** | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| **17** | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| **18a** | Did you make any payments in 2016 that would require you to file Form(s) 1099? See instructions . . . . . . . . . | | X |
| **b** | If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **19** | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| **20** | Enter the number of partners that are foreign governments under section 892. ▶ | | |
| **21** | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? . . . . . . . | | X |
| **22** | Was the partnership a specified domestic entity required to file Form 8938 for the tax year (See the Instructions for Form 8938)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ▶ SYCAMORE HOUSE, LLC      Identifying number of TMP ▶ 46-4809756

If the TMP is an entity, name of TMP representative ▶      Phone number of TMP ▶

Address of designated TMP ▶ 5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS            CA  91367

Form **1065** (2016)

Form 1065 (2016)     LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC     46-5289857    Page **4**

| Schedule K | Partners' Distributive Share Items | | | Total amount |
|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) (page 1, line 22) . . . . . . . . . . . . . . . . | 1 | −161,754. |
| | 2 | Net rental real estate income (loss) (attach Form 8825) . . . . . . . . . . | 2 | |
| | 3a | Other gross rental income (loss) . . . . . . . . . . . . . . | 3a | |
| | b | Expenses from other rental activities (attach statement) . . . . | 3b | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a . . . . . . | 3c | |
| | 4 | Guaranteed payments . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| | 5 | Interest income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |
| | 6 | Dividends: **a** Ordinary dividends . . . . . . . . . . . . . . . | 6a | |
| | | **b** Qualified dividends . . . . . . . . . . . . . . | 6b | |
| | 7 | Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) . . . . | 8 | |
| | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) . . . . | 9a | |
| | b | Collectibles (28%) gain (loss) . . . . . . . . . . . . | 9b | |
| | c | Unrecaptured section 1250 gain (attach statement) . . . . . | 9c | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) . . . . . . . . . . . . . | 10 | |
| | 11 | Other income (loss) (see instructions) Type ▶ | 11 | |
| **Deductions** | 12 | Section 179 deduction (attach Form 4562) . . . . . . . . . . . . . . . . . | 12 | |
| | 13a | Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13a | |
| | b | Investment interest expense . . . . . . . . . . . . . . . . . . . . . . . | 13b | |
| | c | Section 59(e)(2) expenditures: **(1)** Type ▶      **(2)** Amount ▶ | 13c(2) | |
| | d | Other deductions (see instructions) Type ▶ | 13d | |
| **Self-Employ-ment** | 14a | Net earnings (loss) from self-employment . . . . . . . . . SEE STATEMENT 2 | 14a | −109,993. |
| | b | Gross farming or fishing income . . . . . . . . . . . . . . . . . . . . . | 14b | |
| | c | Gross nonfarm income . . . . . . . . . . . . . . SEE STATEMENT 3 . . | 14c | 61,722. |
| **Credits** | 15a | Low-income housing credit (section 42(j)(5)) . . . . . . . . . . . . . . . | 15a | |
| | b | Low-income housing credit (other) . . . . . . . . . . . . . . . . . . . . | 15b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) . . | 15c | |
| | d | Other rental real estate credits (see instructions)     Type ▶ | 15d | |
| | e | Other rental credits (see instructions)     Type ▶ | 15e | |
| | f | Other credits (see instructions)     Type ▶ | 15f | |
| **Foreign Transactions** | 16a | Name of country or U.S. possession ▶ | | |
| | b | Gross income from all sources . . . . . . . . . . . . . . . . . . . . . . | 16b | |
| | c | Gross income sourced at partner level . . . . . . . . . . . . . . . . . . | 16c | |
| | | Foreign gross income sourced at partnership level | | |
| | d | Passive category ▶    **e** General category ▶    **f** Other ▶ | 16f | |
| | | Deductions allocated and apportioned at partner level | | |
| | g | Interest expense ▶     **h** Other ▶ | 16h | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i | Passive category ▶    **j** General category ▶    **k** Other ▶ | 16k | |
| | l | Total foreign taxes (check one): ▶   Paid ☐    Accrued ☐ . . . . . . | 16l | |
| | m | Reduction in taxes available for credit (attach statement) . . . . . . . . | 16m | |
| | n | Other foreign tax information (attach statement) . . . . . . . . . . . . . | | |
| **Alternative Minimum Tax (AMT) Items** | 17a | Post-1986 depreciation adjustment . . . . . . . . . . . . . . . . . . . . | 17a | |
| | b | Adjusted gain or loss . . . . . . . . . . . . . . . . . . . . . . . . . . | 17b | |
| | c | Depletion (other than oil and gas) . . . . . . . . . . . . . . . . . . . . | 17c | |
| | d | Oil, gas, and geothermal properties - gross income . . . . . . . . . . . . | 17d | |
| | e | Oil, gas, and geothermal properties - deductions . . . . . . . . . . . . . | 17e | |
| | f | Other AMT items (attach statement) . . . . . . . . . . . . . . . . . . . . | 17f | |
| **Other Information** | 18a | Tax-exempt interest income . . . . . . . . . . . . . . . . . . . . . . . . | 18a | |
| | b | Other tax-exempt income . . . . . . . . . . . . . . . . . . . . . . . . . | 18b | |
| | c | Nondeductible expenses . . . . . . . . . . . . . . . . . . . . . . . . . . | 18c | |
| | 19a | Distributions of cash and marketable securities . . . . . . . . . . . . . | 19a | |
| | b | Distributions of other property . . . . . . . . . . . . . . . . . . . . . | 19b | |
| | 20a | Investment income . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20a | |
| | b | Investment expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20b | |
| | c | Other items and amounts (attach statement) . . . . . . . . . . . . . . . | | |

Form **1065** (2016)

JSA
6P1030 2.000

1355ID    M405    01/09/2018    11:18:00    V16-7.1F    46-5289857      10

Form 1065 (2016)   LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC       46-5289857       Page **5**

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | **1** | -161,754. |

2  Analysis by partner type:

| | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | -109,993. | | | | |
| b Limited partners | | | -51,761. | | | |

## Schedule L — Balance Sheets per Books

| | Assets | (a) Beginning of tax year | (b) | (c) End of tax year | (d) |
|---|---|---|---|---|---|
| 1 | Cash . . . . . . . . . . . . . | | 13,818. | | 61,227. |
| 2a | Trade notes and accounts receivable . . . . . | | | | |
| b | Less allowance for bad debts . . . . . . . | | | | |
| 3 | Inventories . . . . . . . . . . . . . | | | | |
| 4 | U.S. government obligations . . . . . . . | | | | |
| 5 | Tax-exempt securities . . . . . . . . . | | | | |
| 6 | Other current assets (attach statement) . . . . | | | | |
| 7a | Loans to partners (or persons related to partners) | | 3,000. | | 1,200. |
| b | Mortgage and real estate loans . . . . . . | | | | |
| 8 | Other investments (attach statement) . . . . . | | | | |
| 9a | Buildings and other depreciable assets . . . . | | | | |
| b | Less accumulated depreciation . . . . . . | | | | |
| 10a | Depletable assets . . . . . . . . . . | | | | |
| b | Less accumulated depletion . . . . . . . | | | | |
| 11 | Land (net of any amortization) . . . . . . . | | | | |
| 12a | Intangible assets (amortizable only) . . . . . . | 330,647. | | 351,197. | |
| b | Less accumulated amortization . . . . . . . | | 330,647. | 23,413. | 327,784. |
| 13 | Other assets (attach statement) . . . . . . . | | | | |
| 14 | Total assets . . . . . . . . . . . . | | 347,465. | | 390,211. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable . . . . . . . . . . . | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year . . | | | | |
| 17 | Other current liabilities (attach statement) . . . . | | | | |
| 18 | All nonrecourse loans . . . . . . . . . | | | | |
| 19a | Loans from partners (or persons related to partners) . . | | | | |
| b | Mortgages, notes, bonds payable in 1 year or more . . | | | | |
| 20 | Other liabilities (attach statement) . . . . . . | | | | |
| 21 | Partners' capital accounts . . . . . . . . . | | 347,465. | | 390,211. |
| 22 | Total liabilities and capital . . . . . . . . | | 347,465. | | 390,211. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** The partnership may be required to file Schedule M-3 (see instructions).

| | | | | |
|---|---|---|---|---|
| 1 | Net income (loss) per books . . . . | -161,754. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a Tax-exempt interest $ _____ | |
| 3 | Guaranteed payments (other than health insurance) . . . . . . . . . | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a Depreciation $ _____ | |
| a | Depreciation $ _____ | | _____ | |
| b | Travel and entertainment $ _____ | | 8 Add lines 6 and 7 . . . . . . . . . | |
| | | | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 . . | -161,754. |
| 5 | Add lines 1 through 4 . . . . . . . | -161,754. | | |

## Schedule M-2 — Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 | Balance at beginning of year . . . . . | 347,465. | 6 Distributions: a Cash . . . . . . . . | |
| 2 | Capital contributed: a Cash STMT. 4 | 204,500. | b Property . . . . . . | |
| | b Property . . . . | | 7 Other decreases (itemize): _____ | |
| 3 | Net income (loss) per books . . . . . | -161,754. | _____ | |
| 4 | Other increases (itemize): _____ | | 8 Add lines 6 and 7 . . . . . . . . . | |
| 5 | Add lines 1 through 4 . . . . . . . | 390,211. | 9 Balance at end of year. Subtract line 8 from line 5 | 390,211. |

JSA
6P1035 4.000

Form **1125-A**
(Rev. October 2016)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

▶ **Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.**
▶ **Information about Form 1125-A and its instructions is at** *www.irs.gov/form1125a.*

OMB No. 1545-0123

| Name | Employer identification number |
|------|-------------------------------|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 46-5289857 |

| | | | |
|---|---|---|---:|
| 1 | Inventory at beginning of year | **1** | |
| 2 | Purchases | **2** | 79,204. |
| 3 | Cost of labor | **3** | |
| 4 | Additional section 263A costs (attach schedule) | **4** | |
| 5 | Other costs (attach schedule) | **5** | |
| 6 | **Total.** Add lines 1 through 5 | **6** | 79,204. |
| 7 | Inventory at end of year | **7** | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | **8** | 79,204. |

**9a** Check all methods used for valuing closing inventory:

    (i) ☐ Cost

    (ii) ☐ Lower of cost or market

    (iii) ☐ Other (Specify method used and attach explanation.) ▶

  **b** Check if there was a writedown of subnormal goods . . . . . . . . . . . . . . . . . . . ▶ ☐

  **c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . . . . . ▶ ☐

  **d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . . . . . . . . . . . . . . . . **9d** ☐

  **e** If property is produced or acquired for resale, do the rules of section 263A apply to the entity? See instructions . . . ☐ Yes ☐ No

  **f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

Use Form 1125-A to calculate and deduct cost of goods sold for certain entities.

### Who Must File

Filers of Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B, must complete and attach Form 1125-A if the applicable entity reports a deduction for cost of goods sold.

### Inventories

Generally, inventories are required at the beginning and end of each tax year if the production, purchase, or sale of merchandise is an income-producing factor. See Regulations section 1.471-1. If inventories are required, you generally must use an accrual method of accounting for sales and purchases of inventory items.

**Exception for certain taxpayers.** If you are a qualifying taxpayer or a qualifying small business taxpayer (defined below), you can adopt or change your accounting method to account for inventoriable items in the same manner as materials and supplies that are not incidental.

Under this accounting method, inventory costs for raw materials purchased for use in producing finished goods and merchandise purchased for resale are deductible in the year the finished goods or merchandise are sold (but not before the year you paid for the raw materials or merchandise, if you are also using the cash method).

If you account for inventoriable items in the same manner as materials and supplies that are not incidental, you can currently deduct expenditures for direct labor and all indirect costs that would otherwise be included in inventory costs. See the instructions for lines 2 and 7.

For additional guidance on this method of accounting, see Pub. 538, Accounting Periods and Methods. For guidance on adopting or changing to this method of accounting, see Form 3115, Application for Change in Accounting Method, and its instructions.

***Qualifying taxpayer.*** A qualifying taxpayer is a taxpayer that, (a) for each prior tax year ending after December 16, 1998, has average annual gross receipts of $1 million or less for the 3 prior tax years, and (b) its business is not a tax shelter (as defined in section 448(d)(3)). See Rev. Proc. 2001-10, 2001-2 I.R.B. 272.

***Qualifying small business taxpayer.*** A qualifying small business taxpayer is a taxpayer that, (a) for each prior tax year

ending on or after December 31, 2000, has average annual gross receipts of $10 million or less for the 3 prior tax years, (b) whose principal business activity is not an ineligible activity, and (c) whose business is not a tax shelter (as defined in section 448 (d)(3)). See Rev. Proc. 2002-28, 2002-18 I.R.B. 815.

**Uniform capitalization rules.** The uniform capitalization rules of section 263A generally require you to capitalize, or include in inventory, certain costs incurred in connection with the following.

● The production of real property and tangible personal property held in inventory or held for sale in the ordinary course of business.

● Real property or personal property (tangible and intangible) acquired for resale.

● The production of real property and tangible personal property by a corporation for use in its trade or business or in an activity engaged in for profit.

See the discussion on section 263A uniform capitalization rules in the instructions for your tax return before completing Form 1125-A. Also see Regulations sections 1.263A-1 through 1.263A-3. See Regulations section 1.263A-4 for rules for property produced in a farming business.

---

For Paperwork Reduction Act Notice, see instructions.                                        Form **1125-A** (Rev. 10-2016)

JSA
6X4012 2.000

1355ID    M405    01/09/2018    11:18:00    V16-7.1F    46-5289857         12

| Form **4562** | **Depreciation and Amortization** | OMB No. 1545-0172 |
|---|---|---|
| | **(Including Information on Listed Property)** | **2016** |
| Department of the Treasury<br>Internal Revenue Service   (99) | ▶ Attach to your tax return.<br>▶ Information about Form 4562 and its separate instructions is at *www.irs.gov/form4562*. | Attachment<br>Sequence No. **179** |

| Name(s) shown on return | Identifying number |
|---|---|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 46-5289857 |

Business or activity to which this form relates

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC

## Part I   Election To Expense Certain Property Under Section 179
**Note:** If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | 2,010,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |

| | | | | |
|---|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | **8** | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2015 Form 4562 | | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) | | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | | **12** | |
| 13 | Carryover of disallowed deduction to 2017. Add lines 9 and 10, less line 12 ▶ | **13** | | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

## Part II   Special Depreciation Allowance and Other Depreciation (Don't include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | 1,612. |

## Part III   MACRS Depreciation (Don't include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2016 | **17** | |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ | | |

### Section B - Assets Placed in Service During 2016 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a  3-year property | | | | | | |
| b  5-year property | | | | | | |
| c  7-year property | | | | | | |
| d  10-year property | | | | | | |
| e  15-year property | | | | | | |
| f  20-year property | | | | | | |
| g  25-year property | | | 25 yrs. | | S/L | |
| h  Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i  Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

### Section C - Assets Placed in Service During 2016 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a  Class life | | | | | S/L | |
| b  12-year | | | 12 yrs. | | S/L | |
| c  40-year | | | 40 yrs. | MM | S/L | |

## Part IV   Summary  (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions | **22** | 1,612. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

JSA   **For Paperwork Reduction Act Notice, see separate instructions.**
6X2300 2.000

Form **4562** (2016)

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC      46-5289857

Form 4562 (2016)     Page **2**

**Part V** **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

| 24a Do you have evidence to support the business/investment use claimed? | | | **Yes** | **No** | 24b If "Yes," is the evidence written? | | **Yes** | **No** |
|---|---|---|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . **25** | | | | | | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | S/L - | | | |
| | | % | | | S/L - | | | |
| | | % | | | S/L - | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . . . . . . . . . **28** | | | | | | | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . . . . . . . **29** | | | | | | | | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) . . . | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year . | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . . . . . | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . . . . . | **Yes** | **No** | **Yes** | **No** | **Yes** | **No** | **Yes** | **No** | **Yes** | **No** | **Yes** | **No** |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons (see instructions).

| | | **Yes** | **No** |
|---|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | | |
| 39 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . . . | | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . . . . . . | | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . . | | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

**Part VI** **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2016 tax year (see instructions): | | | | | |
|    START-UP COSTS | 01/01/2016 | 327,018. | 195 | 15.000 | 21,801. |
| 43 Amortization of costs that began before your 2016 tax year . . . . . . . . . . . . . . . . **43** | | | | | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report . . . . . . . . . . . **44** | | | | | 21,801. |

JSA

6X2310 2.000

Form **4562** (2016)

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC

# 2016 Depreciation

46-5289857

**Description of Property**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    GENERAL TRADE OR BUSINESS

| Asset description | Date placed in service | Unadjusted cost or basis | Bus. % | 179 exp. reduc. in basis | Basis Reduction | Basis for Depreciation | Beginning Accumulated depreciation | Ending Accumulated depreciation | Me-thod | Con-ven-tion | Life | ACRS class | MA CRS class | Current -yr 179 expense | Current-year depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OTHER: | | | | | | | | | | | | | | | |
| LEASE IMPROVEMENTS | 01/01/2016 | 24,179. | 100. | | | 24,179. | | 1,612. | S/L | S/L | 15.000 | | | | 1,612. |
| SUBTOTAL | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |
| | | | | | | | | | | | | | | | |
| Less: Retired Assets . . . . . . . . . . . . | | | | | | | | | | | | | | | |
| **TOTALS . . . . . . . . . . . . . . . . .** | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |

*Assets Retired

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC

# 2016 Depreciation

46-5289857

**Description of Property**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    GENERAL TRADE OR BUSINESS

| Asset description | Date placed in service | Unadjusted cost or basis | Bus. % | 179 exp. reduc. in basis | Basis Reduction | Basis for Depreciation | Beginning Accumulated depreciation | Ending Accumulated depreciation | Me-thod | Con-ven-tion | Life | ACRS class | MA CRS class | Current -yr 179 expense | Current-year depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OTHER THAN LISTED | | | | | | | | | | | | | | | |
| GROSS | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |
| LESS: RETIRED ASSETS | | | | | | | | | | | | | | | |
| SUBTOTAL: | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |
| | | | | | | | | | | | | | | | |
| LISTED PROPERTY | | | | | | | | | | | | | | | |
| GROSS | | | | | | | | | | | | | | | |
| LESS: RETIRED ASSETS | | | | | | | | | | | | | | | |
| SUBTOTAL: | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| GROSS AMOUNTS | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | |
| Less: Retired Assets . . . . . . . . . . . . | | | | | | | | | | | | | | | |
| **TOTALS** . . . . . . . . . . . . . . . . . . | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |

*Assets Retired

**2016 Amortization**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                                                                46-5289857

**Description of Property**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC          GENERAL TRADE OR BUSINESS

| Asset description | Date placed in service | Cost or basis | Beginning Accumulated amortization | Ending Accumulated amortization | Code | Life | Current-year amortization |
|---|---|---|---|---|---|---|---|
| START-UP COSTS | 01/01/2016 | 327,018. | | 21,801. | 195 | 15.000 | 21,801. |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Less: Retired Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | |
| **TOTALS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 327,018. | | 21,801. | | | 21,801. |

* Assets Retired

JSA
6X9026 1.000

1355ID  M405  01/09/2018  11:18:00  V16-7.1F  46-5289857                                          **17**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                         46-5289857
FORM 1065 SUPPORTING SCHEDULES
================================================================================
LINE 14 - PAGE 1 - TAXES
========================

PAYROLL TAXES                                                           12,110.
FRANCHISE TAX                                                              800.
                                                                 ---------------
     TOTAL TAXES                                                        12,910.
                                                                 ===============


LINE 20 - PAGE 1 - OTHER DEDUCTIONS
===================================

AMORTIZATION                                                            21,801.
AUTOMOBILE                                                                  29.
BANK CHARGES                                                             2,157.
BUSINESS MANAGEMENT                                                      2,500.
INSURANCE                                                                3,049.
LEGAL FESS                                                               2,866.
OFFICE SUPPLIES/EXPENSE                                                  1,115.
OUTSIDE SERVICES                                                        15,479.
TAXES-SALES                                                                172.
UTILITIES                                                                5,577.
                                                                 ---------------
     TOTAL OTHER DEDUCTIONS                                             54,745.
                                                                 ===============


                                                              STATEMENT   1

6XX063 1.000
           1355ID   M405   01/09/2018   11:18:00  V16-7.1F  46-5289857        18

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    46-5289857
FORM 1065 SUPPORTING SCHEDULES
================================================================================
SCHEDULE K - LINE 14A - NET EARNINGS (LOSS) FROM SELF-EMPLOYMENT
================================================================================

```
1A ORDINARY INCOME (LOSS) (SCHEDULE K, LINE 1). . . . . . . . .       -161,754.
 B NET INCOME(LOSS) FROM CERTAIN RENTAL REAL ESTATE ACTIVITIES. .
 C NET INCOME (LOSS) FROM OTHER RENTAL ACTIVITIES . . . . . . . .
 D NET LOSS FROM FORM 4797, PART II, LINE 18, INCLUDED ON LINE 1A
   ABOVE. ENTER AS A POSITIVE AMOUNT. . . . . . . . . . . . . . .
 E COMBINE LINES 1A THROUGH 1D. . . . . . . . . . . . . . . . .        -161,754.
2  NET GAIN FROM FORM 4797, PART II, LINE 18, INCLUDED ON LINE 1A
   ABOVE. . . . . . . . . . . . . . . . . . . . . . . . . . . .
3A SUBTRACT LINE 2 FROM LINE 1E. IF LINE 1E IS A LOSS, INCREASE
   THE LOSS ON LINE 1E BY THE AMOUNT ON LINE 2. . . . . . . . .        -161,754.
3B PART OF LINE 3A ALLOCATED TO LIMITED PARTNERS, ESTATES,
   TRUSTS, CORPORATIONS, EXEMPT ORGANIZATIONS, AND IRAS . . . . .        -51,761.
3C SUBTRACT LINE 3B FROM LINE 3A. IF LINE 3A IS A LOSS, REDUCE
   THE LOSS ON LINE 3A BY THE AMOUNT ON LINE 3B. INCLUDE EACH
   INDIVIDUAL GENERAL PARTNER'S SHARE ON LINE 14A OF SCHEDULE K-1       -109,993.
4A GUARANTEED PAYMENTS TO PARTNERS. . . . . . . . . . . . . . . .
 B PART OF LINE 4A ALLOCATED TO ESTATES, TRUSTS, CORPORATIONS,
   EXEMPT ORGANIZATIONS, AND IRAS . . . . . . . . . . . . . . . .
   PART OF LINE 4A ALLOCATED TO INDIVIDUAL LIMITED PARTNERS FOR
   OTHER THAN SERVICES  . . . . . . . . . . . . . . . . . . . . .
 C SUBTRACT LINE 4B FROM LINE 4A. INCLUDE IN EACH INDIVIDUAL
   GENERAL PARTNER'S SHARE AND EACH INDIVIDUAL LIMITED PARTNER'S
   SHARE ON LINE 14A OF SCHEDULE K-1. . . . . . . . . . . . . .
                                                                 ---------------
5   NET EARNINGS (LOSS) FROM SELF-EMPLOYMENT (LINE 3C + 4C)            -109,993.
                                                                 ===============
```

6XX063 1.000
     1355ID    M405    01/09/2018   11:18:00  V16-7.1F  46-5289857          19

```
  LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                       46-5289857
FORM 1065 SUPPORTING SCHEDULES
================================================================================

SCHEDULE K - LINE 14C - GROSS NONFARM INCOME
============================================

1A GROSS INCOME FROM NONFARM ACTIVITIES . . . . . . . . . . . .          90,767.
 B NET INCOME (LOSS) FROM CERTAIN RENTAL REAL ESTATE ACTIVITIES .
 C NET INCOME (LOSS) FROM OTHER RENTAL ACTIVITIES . . . . . . .
   LESS GUARANTEED PAYMENTS FROM SCHEDULE K, LINE 4 . . . . . . .
 D COMBINE LINES 1A - 1C. . . . . . . . . . . . . . . . . . . .           90,767.
 E PART ALLOCATED TO PARTNERS WHO ARE ESTATES, TRUSTS,
   CORPORATIONS, EXEMPT ORGANIZATIONS, IRAS, OR LIMITED PARTNERS.          29,045.
 F SUBTRACT LINE 1E FROM LINE 1D. . . . . . . . . . . . . . . .           61,722.
4A GUARANTEED PAYMENTS TO PARTNERS. . . . . . . . . . . . . . . .
 B PART OF LINE 4A ALLOCATED TO ESTATES, TRUSTS, CORPORATIONS,
   EXEMPT ORGANIZATIONS, AND IRAS . . . . . . . . . . . . . . .
   PART OF LINE 4A ALLOCATED TO INDIVIDUAL LIMITED PARTNERS FOR
   OTHER THAN SERVICES  . . . . . . . . . . . . . . . . . . . .
 C SUBTRACT LINE 4B FROM LINE 4A. INCLUDE IN EACH INDIVIDUAL
   GENERAL PARTNER'S SHARE AND EACH INDIVIDUAL LIMITED PARTNER'S
   SHARE ON LINE 14A OF SCHEDULE K-1. . . . . . . . . . . . . .        ---------------
5  GROSS NONFARM INCOME FOR SCHEDULE K, LINE 14C (LINE 1F + 4C)           61,722.
                                                                      ===============
```

```
  LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC              46-5289857
FORM 1065, SCHEDULE M-2, SUPPORTING SCHEDULES
================================================================================
SCHEDULE M-2 - LINE 2A - CASH CONTRIBUTED DURING YEAR
===================================================

CASH CONTRIBUTED DURING THE YEAR                                   204,500.
                                                                ---------------
TOTAL CASH CONTRIBUTED DURING THE YEAR                             204,500.
                                                                ===============
```

651113

☐ Final K-1    ☐ Amended K-1                    OMB No. 1545-0123

**Schedule K-1**
**(Form 1065)**

20**16**

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning _____ , 2016
ending _____ , 20 __

**Partner's Share of Income, Deductions,
Credits, etc.** ▶ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| | –109,993. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | 20 | Other information |
| 14 | Self-employment earnings (loss) | | |
| A | –109,993. | | |
| C | 61,722. | | |

**Part I   Information About the Partnership**

**A**   Partnership's employer identification number
46-5289857

**B**   Partnership's name, address, city, state, and ZIP code

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC
7515 SUNSET BLVD
LOS ANGELES, CA  90046

**C**   IRS Center where partnership filed return
EFILE

**D**   ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E**   Partner's identifying number       1
46-4809756

**F**   Partner's name, address, city, state, and ZIP code

SYCAMORE HOUSE, LLC
5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367

**G**   ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H**   ☒ Domestic partner    ☐ Foreign partner

**I1**   What type of entity is this partner?       INDIVIDUAL

**I2**   If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here   ☐

**J**   Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 68.000000 % | 68.000000 % |
| Loss | 68.000000 % | 68.000000 % |
| Capital | 100.000000 % | 50.000000 % |

**K**   Partner's share of liabilities at year end:

Nonrecourse . . . . . . . . . $ _____
Qualified nonrecourse financing . . . $ _____
Recourse . . . . . . . . . . $ _____

**L**   Partner's capital account analysis:

Beginning capital account . . . . . $   347,465.
Capital contributed during the year . $   154,500.
Current year increase (decrease) . . $   –109,993.
Withdrawals & distributions . . . . $ (_____)
Ending capital account . . . . . . $   391,972.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M**   Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.        IRS.gov/form1065        **Schedule K-1 (Form 1065) 2016**
JSA
6P1200 3.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857        **23**

Schedule K-1 (Form 1065) 2016     **PARTNER #    1   SYCAMORE HOUSE, LLC**     Page **2**

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

1. **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | *Report on* |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

2. **Net rental real estate income (loss)**   See the Partner's Instructions
3. **Other net rental income (loss)**

| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |

4. **Guaranteed payments**   Schedule E, line 28, column (j)
5. **Interest income**   Form 1040, line 8a
6a. **Ordinary dividends**   Form 1040, line 9a
6b. **Qualified dividends**   Form 1040, line 9b
7. **Royalties**   Schedule E, line 4
8. **Net short-term capital gain (loss)**   Schedule D, line 5
9a. **Net long-term capital gain (loss)**   Schedule D, line 12
9b. **Collectibles (28%) gain (loss)**   28% Rate Gain Worksheet, line 4 (Schedule D instructions)

9c. **Unrecaptured section 1250 gain**   See the Partner's Instructions
10. **Net section 1231 gain (loss)**   See the Partner's Instructions
11. **Other income (loss)**

*Code*
| | |
|---|---|
| A Other portfolio income (loss) | See the Partner's Instructions |
| B Involuntary conversions | See the Partner's Instructions |
| C Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D Mining exploration costs recapture | See Pub. 535 |
| E Cancellation of debt | Form 1040, line 21 or Form 982 |
| F Other income (loss) | See the Partner's Instructions |

12. **Section 179 deduction**   See the Partner's Instructions
13. **Other deductions**

| | |
|---|---|
| A Cash contributions (50%) | |
| B Cash contributions (30%) | |
| C Noncash contributions (50%) | |
| D Noncash contributions (30%) | See the Partner's Instructions |
| E Capital gain property to a 50% organization (30%) | |
| F Capital gain property (20%) | |
| G Contributions (100%) | |
| H Investment interest expense | Form 4952, line 1 |
| I Deductions - royalty income | Schedule E, line 19 |
| J Section 59(e)(2) expenditures | See the Partner's Instructions |
| K Deductions - portfolio (2% floor) | Schedule A, line 23 |
| L Deductions - portfolio (other) | Schedule A, line 28 |
| M Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| N Educational assistance benefits | See the Partner's Instructions |
| O Dependent care benefits | Form 2441, line 12 |
| P Preproductive period expenses | See the Partner's Instructions |
| Q Commercial revitalization deduction from rental real estate activities | See Form 8582 instructions |
| R Pensions and IRAs | See the Partner's Instructions |
| S Reforestation expense deduction | See the Partner's Instructions |
| T Domestic production activities information | See Form 8903 instructions |
| U Qualified production activities income | Form 8903, line 7b |
| V Employer's Form W-2 wages | Form 8903, line 17 |
| W Other deductions | See the Partner's Instructions |

14. **Self-employment earnings (loss)**

**Note:** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | |
|---|---|
| A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| B Gross farming or fishing income | See the Partner's Instructions |
| C Gross non-farm income | See the Partner's Instructions |

15. **Credits**

| | |
|---|---|
| A Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| B Low-income housing credit (other) from pre-2008 buildings | |
| C Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| D Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| E Qualified rehabilitation expenditures (rental real estate) | |
| F Other rental real estate credits | |
| G Other rental credits | |
| H Undistributed capital gains credit | Form 1040, line 73; check box a |
| I Biofuel producer credit | |
| J Work opportunity credit | See the Partner's Instructions |
| K Disabled access credit | |

*Code*
| | *Report on* |
|---|---|
| L Empowerment zone employment credit | |
| M Credit for increasing research activities | |
| N Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| O Backup withholding | |
| P Other credits | |

16. **Foreign transactions**

| | |
|---|---|
| A Name of country or U.S. possession | |
| B Gross income from all sources | Form 1116, Part I |
| C Gross income sourced at partner level | |

*Foreign gross income sourced at partnership level*
| | |
|---|---|
| D Passive category | |
| E General category | Form 1116, Part I |
| F Other | |

*Deductions allocated and apportioned at partner level*
| | |
|---|---|
| G Interest expense | Form 1116, Part I |
| H Other | Form 1116, Part I |

*Deductions allocated and apportioned at partnership level to foreign source income*
| | |
|---|---|
| I Passive category | |
| J General category | Form 1116, Part I |
| K Other | |

*Other information*
| | |
|---|---|
| L Total foreign taxes paid | Form 1116, Part II |
| M Total foreign taxes accrued | Form 1116, Part II |
| N Reduction in taxes available for credit | Form 1116, line 12 |
| O Foreign trading gross receipts | Form 8873 |
| P Extraterritorial income exclusion | Form 8873 |
| Q Other foreign transactions | See the Partner's Instructions |

17. **Alternative minimum tax (AMT) items**

| | |
|---|---|
| A Post-1986 depreciation adjustment | |
| B Adjusted gain or loss | See the Partner's |
| C Depletion (other than oil & gas) | Instructions and |
| D Oil, gas, & geothermal - gross income | the Instructions for |
| E Oil, gas, & geothermal - deductions | Form 6251 |
| F Other AMT items | |

18. **Tax-exempt income and nondeductible expenses**

| | |
|---|---|
| A Tax-exempt interest income | Form 1040, line 8b |
| B Other tax-exempt income | See the Partner's Instructions |
| C Nondeductible expenses | See the Partner's Instructions |

19. **Distributions**

| | |
|---|---|
| A Cash and marketable securities | |
| B Distribution subject to section 737 | See the Partner's Instructions |
| C Other property | |

20. **Other information**

| | |
|---|---|
| A Investment income | Form 4952, line 4a |
| B Investment expenses | Form 4952, line 5 |
| C Fuel tax credit information | Form 4136 |
| D Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E Basis of energy property | See the Partner's Instructions |
| F Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| G Recapture of low-income housing credit (other) | Form 8611, line 8 |
| H Recapture of investment credit | See Form 4255 |
| I Recapture of other credits | See the Partner's Instructions |
| J Look-back interest - completed long-term contracts | See Form 8697 |
| K Look-back interest - income forecast method | See Form 8866 |
| L Dispositions of property with section 179 deductions | |
| M Recapture of section 179 deduction | |
| N Interest expense for corporate partners | |
| O Section 453(l)(3) information | |
| P Section 453A(c) information | |
| Q Section 1260(b) information | |
| R Interest allocable to production expenditures | See the Partner's Instructions |
| S CCF nonqualified withdrawals | |
| T Depletion information - oil and gas | |
| U Reserved | |
| V Unrelated business taxable income | |
| W Precontribution gain (loss) | |
| X Section 108(i) information | |
| Y Net investment income | |
| Z Other information | |

JSA
6P1300 2.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857     24

PTR #   1     SYCAMORE HOUSE, LLC      LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC    46-5289857

## Schedule of Activities

| | Type of Activity | Disposed | QLIH | PTP | Pass-through |
|---|---|---|---|---|---|
| **A:** LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | GEN. T/B | NO | NO | NO | NO |
| **B:** | | | | | |
| **C:** | | | | | |
| **D:** | | | | | |

| | | | **A** | **B** | **C** | **D** |
|---|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) | -109,993. | | | |
| | 2 | Net rental real estate income (loss) | | | | |
| | 3 | Other net rental income (loss) | | | | |
| | 4 | Guaranteed payments | | | | |
| | 5 | Interest income | | | | |
| | 6a | Ordinary dividends | | | | |
| | 6b | Qualified dividends | | | | |
| | 7 | Royalties | | | | |
| | 8 | Net short-term capital gain (loss) | | | | |
| | 9a | Net long-term capital gain (loss) | | | | |
| | 9b | Collectibles (28%) gain (loss) | | | | |
| | 9c | Unrecaptured section 1250 gain | | | | |
| | 10 | Net section 1231 gain (loss) | | | | |
| | 11 | Other income (loss) | | | | |
| **Deductions** | 12 | Section 179 deduction | | | | |
| | 13a-g | Contributions | | | | |
| | 13i,k,l | Deductions related to portfolio income | | | | |
| | 13h | Investment interest expense | | | | |
| | 13i | Section 59(e)(2) expenditures | | | | |
| | 13l-v | Other deductions | | | | |
| **Credits** | 15a,c | Low-income housing credit (section 42(j)(5)) | | | | |
| | 15b,d | Low-income housing credit (other) | | | | |
| | 15e | Qualified rehabilitation expenditures (rental real estate) | | | | |
| | 15f | Other rental real estate credits | | | | |
| | 15g | Other rental credits | | | | |
| | 15h-p | Other credits | | | | |
| **Foreign Transactions** | 16b | Gross income from all sources | | | | |
| | 16c | Gross income sourced at partner level | | | | |
| | 16d | Foreign gross income (partnership level): Passive | | | | |
| | 16e | Foreign gross income (partnership level): General categories | | | | |
| | 16f | Foreign gross income (partnership level): Other | | | | |
| | 16g | Deductions allocated and apportioned (partner level): Interest expense | | | | |
| | 16h | Deductions allocated and apportioned (partner level): Other | | | | |
| | 16i | Deductions allocated and apportioned (partnership level): Passive | | | | |
| | 16j | Deductions allocated and apportioned (partnership level): General categories | | | | |
| | 16k | Deductions allocated and apportioned (partnership level): Other | | | | |
| | 16l | Total foreign taxes paid | | | | |
| | 16m | Total foreign taxes accrued | | | | |
| | 16n | Reduction in taxes available for credit | | | | |
| | 16o | Foreign trading gross receipts | | | | |
| | 16p | Extraterritorial income exclusion | | | | |
| | 16q | Other foreign transactions | | | | |
| **Alternative Minimum Tax** | 17a | Post-1986 depreciation adjustment | | | | |
| | 17b | Adjusted gain or loss | | | | |
| | 17c | Depletion (other than oil and gas) | | | | |
| | 17d | Gross income from oil, gas, and geothermal | | | | |
| | 17e | Deductions from oil, gas, and geothermal | | | | |
| | 17f | Other AMT items | | | | |
| **Tax-exempt Inc. & Exp.** | 18a | Tax-exempt interest income | | | | |
| | 18b | Other tax-exempt income | | | | |
| | 18c | Nondeductible expenses | | | | |
| **Other** | 20a | Investment income | | | | |
| | 20b | Investment expenses | | | | |
| | 20c-x | Other information | | | | |

JSA
6P9011 1.000

1355ID   M405   01/09/2018  11:18:00  V16-7.1F  46-5289857         **25**

651113

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

20**16**

For calendar year 2016, or tax
year beginning _____ , 2016
ending _____ , 20 ___

| | Final K-1 | | Amended K-1 | OMB No. 1545-0123 |

### Partner's Share of Income, Deductions, Credits, etc. ▶ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |

| 1 | Ordinary business income (loss) | 15 | Credits |
| | −51,761. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | 20 | Other information |
| 14 | Self-employment earnings (loss) | | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number

46-5289857

**B** Partnership's name, address, city, state, and ZIP code

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC
7515 SUNSET BLVD
LOS ANGELES, CA  90046

**C** IRS Center where partnership filed return

EFILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's identifying number        2

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

**F** Partner's name, address, city, state, and ZIP code

FRASER THOMPSON
767 HAVERFORD AVENUE
PACIFIC PALISADES, CA 90272

**G** ☐ General partner or LLC member-manager       ☒ Limited partner or other LLC member

**H** ☒ Domestic partner       ☐ Foreign partner

**I1** What type of entity is this partner?        INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 32.000000 % | 32.000000 % |
| Loss | 32.000000 % | 32.000000 % |
| Capital | % | 32.000000 % |

**K** Partner's share of liabilities at year end:

Nonrecourse . . . . . . . . . $ _____
Qualified nonrecourse financing . . . $ _____
Recourse . . . . . . . . . . $ _____

**L** Partner's capital account analysis:

Beginning capital account . . . . . $ NONE
Capital contributed during the year . $ 50,000.
Current year increase (decrease) . . $ −51,761.
Withdrawals & distributions . . . . $ ( )
Ending capital account . . . . . . $ −1,761.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

Schedule K-1 (Form 1065) 2016     **PARTNER #    2    FRASER THOMPSON**         Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | Report on |
|---|---|---|
| **1.** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2.** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3.** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4.** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5.** | **Interest income** | Form 1040, line 8a |
| **6a.** | **Ordinary dividends** | Form 1040, line 9a |
| **6b.** | **Qualified dividends** | Form 1040, line 9b |
| **7.** | **Royalties** | Schedule E, line 4 |
| **8.** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9a.** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9b.** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| **9c.** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10.** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11.** | **Other income (loss)** | |
| | *Code* | |
| | A Other portfolio income (loss) | See the Partner's Instructions |
| | B Involuntary conversions | See the Partner's Instructions |
| | C Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | D Mining exploration costs recapture | See Pub. 535 |
| | E Cancellation of debt | Form 1040, line 21 or Form 982 |
| | F Other income (loss) | See the Partner's Instructions |
| **12.** | **Section 179 deduction** | See the Partner's Instructions |
| **13.** | **Other deductions** | |
| | A Cash contributions (50%) | |
| | B Cash contributions (30%) | |
| | C Noncash contributions (50%) | |
| | D Noncash contributions (30%) | See the Partner's Instructions |
| | E Capital gain property to a 50% organization (30%) | |
| | F Capital gain property (20%) | |
| | G Contributions (100%) | |
| | H Investment interest expense | Form 4952, line 1 |
| | I Deductions - royalty income | Schedule E, line 19 |
| | J Section 59(e)(2) expenditures | See the Partner's Instructions |
| | K Deductions - portfolio (2% floor) | Schedule A, line 23 |
| | L Deductions - portfolio (other) | Schedule A, line 28 |
| | M Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | N Educational assistance benefits | See the Partner's Instructions |
| | O Dependent care benefits | Form 2441, line 12 |
| | P Preproductive period expenses | See the Partner's Instructions |
| | Q Commercial revitalization deduction from rental real estate activities | See Form 8582 instructions |
| | R Pensions and IRAs | See the Partner's Instructions |
| | S Reforestation expense deduction | See the Partner's Instructions |
| | T Domestic production activities information | See Form 8903 instructions |
| | U Qualified production activities income | Form 8903, line 7b |
| | V Employer's Form W-2 wages | Form 8903, line 17 |
| | W Other deductions | See the Partner's Instructions |
| **14.** | **Self-employment earnings (loss)** | |

**Note:** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| | A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | B Gross farming or fishing income | See the Partner's Instructions |
| | C Gross non-farm income | See the Partner's Instructions |
| **15.** | **Credits** | |
| | A Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | B Low-income housing credit (other) from pre-2008 buildings | |
| | C Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | D Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | E Qualified rehabilitation expenditures (rental real estate) | |
| | F Other rental real estate credits | |
| | G Other rental credits | |
| | H Undistributed capital gains credit | Form 1040, line 73; check box a |
| | I Biofuel producer credit | |
| | J Work opportunity credit | See the Partner's Instructions |
| | K Disabled access credit | |

| | | Report on |
|---|---|---|
| | L Empowerment zone employment credit | |
| | M Credit for increasing research activities | |
| | N Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | O Backup withholding | |
| | P Other credits | |
| **16.** | **Foreign transactions** | |
| | A Name of country or U.S. possession | |
| | B Gross income from all sources | Form 1116, Part I |
| | C Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | D Passive category | |
| | E General category | Form 1116, Part I |
| | F Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | G Interest expense | Form 1116, Part I |
| | H Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | I Passive category | |
| | J General category | Form 1116, Part I |
| | K Other | |
| | *Other information* | |
| | L Total foreign taxes paid | Form 1116, Part II |
| | M Total foreign taxes accrued | Form 1116, Part II |
| | N Reduction in taxes available for credit | Form 1116, line 12 |
| | O Foreign trading gross receipts | Form 8873 |
| | P Extraterritorial income exclusion | Form 8873 |
| | Q Other foreign transactions | See the Partner's Instructions |
| **17.** | **Alternative minimum tax (AMT) items** | |
| | A Post-1986 depreciation adjustment | |
| | B Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | C Depletion (other than oil & gas) | |
| | D Oil, gas, & geothermal - gross income | |
| | E Oil, gas, & geothermal - deductions | |
| | F Other AMT items | |
| **18.** | **Tax-exempt income and nondeductible expenses** | |
| | A Tax-exempt interest income | Form 1040, line 8b |
| | B Other tax-exempt income | See the Partner's Instructions |
| | C Nondeductible expenses | See the Partner's Instructions |
| **19.** | **Distributions** | |
| | A Cash and marketable securities | |
| | B Distribution subject to section 737 | See the Partner's Instructions |
| | C Other property | |
| **20.** | **Other information** | |
| | A Investment income | Form 4952, line 4a |
| | B Investment expenses | Form 4952, line 5 |
| | C Fuel tax credit information | Form 4136 |
| | D Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | E Basis of energy property | See the Partner's Instructions |
| | F Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | G Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | H Recapture of investment credit | See Form 4255 |
| | I Recapture of other credits | See the Partner's Instructions |
| | J Look-back interest - completed long-term contracts | See Form 8697 |
| | K Look-back interest - income forecast method | See Form 8866 |
| | L Dispositions of property with section 179 deductions | |
| | M Recapture of section 179 deduction | |
| | N Interest expense for corporate partners | |
| | O Section 453(l)(3) information | |
| | P Section 453A(c) information | |
| | Q Section 1260(b) information | |
| | R Interest allocable to production expenditures | See the Partner's Instructions |
| | S CCF nonqualified withdrawals | |
| | T Depletion information - oil and gas | |
| | U Reserved | |
| | V Unrelated business taxable income | |
| | W Precontribution gain (loss) | |
| | X Section 108(i) information | |
| | Y Net investment income | |
| | Z Other information | |

PTR #   2   FRASER THOMPSON                                                      LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC   46-5289857

| Schedule of Activities | Type of Activity | Disposed | QLIH | PTP | Pass-through |
|---|---|---|---|---|---|
| **A:** LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | GEN. T/B | NO | NO | NO | NO |
| **B:** | | | | | |
| **C:** | | | | | |
| **D:** | | | | | |

| | | | **A** | **B** | **C** | **D** |
|---|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) . . . . . . . . . . . . . . . | -51,761. | | | |
| | 2 | Net rental real estate income (loss) . . . . . . . . . . . . . | | | | |
| | 3 | Other net rental income (loss) . . . . . . . . . . . . . | | | | |
| | 4 | Guaranteed payments . . . . . . . . . . . . . . . | | | | |
| | 5 | Interest income . . . . . . . . . . . . . . . . . | | | | |
| | 6a | Ordinary dividends . . . . . . . . . . . . . . . . | | | | |
| | 6b | Qualified dividends . . . . . . . . . . . . . . . | | | | |
| | 7 | Royalties . . . . . . . . . . . . . . . . . . . | | | | |
| | 8 | Net short-term capital gain (loss) . . . . . . . . . . . | | | | |
| | 9a | Net long-term capital gain (loss) . . . . . . . . . . . | | | | |
| | 9b | Collectibles (28%) gain (loss) . . . . . . . . . . . | | | | |
| | 9c | Unrecaptured section 1250 gain . . . . . . . . . . | | | | |
| | 10 | Net section 1231 gain (loss) . . . . . . . . . . . . | | | | |
| | 11 | Other income (loss) . . . . . . . . . . . . . . . | | | | |
| **Deductions** | 12 | Section 179 deduction . . . . . . . . . . . . . . | | | | |
| | 13a-g | Contributions . . . . . . . . . . . . . . . . . | | | | |
| | 13i,k,l | Deductions related to portfolio income . . . . . . . . | | | | |
| | 13h | Investment interest expense . . . . . . . . . . . . | | | | |
| | 13i | Section 59(e)(2) expenditures . . . . . . . . . . . | | | | |
| | 13l-v | Other deductions . . . . . . . . . . . . . . . | | | | |
| **Credits** | 15a,c | Low-income housing credit (section 42(j)(5)) . . . . . . | | | | |
| | 15b,d | Low-income housing credit (other) . . . . . . . . . . | | | | |
| | 15e | Qualified rehabilitation expenditures (rental real estate) . . . | | | | |
| | 15f | Other rental real estate credits . . . . . . . . . . . | | | | |
| | 15g | Other rental credits . . . . . . . . . . . . . . | | | | |
| | 15h-p | Other credits . . . . . . . . . . . . . . . . . | | | | |
| **Foreign Transactions** | 16b | Gross income from all sources . . . . . . . . . . . | | | | |
| | 16c | Gross income sourced at partner level . . . . . . . . | | | | |
| | 16d | Foreign gross income (partnership level): Passive . . . . | | | | |
| | 16e | Foreign gross income (partnership level): General categories | | | | |
| | 16f | Foreign gross income (partnership level): Other . . . . . | | | | |
| | 16g | Deductions allocated and apportioned (partner level): Interest expense | | | | |
| | 16h | Deductions allocated and apportioned (partner level): Other | | | | |
| | 16i | Deductions allocated and apportioned (partnership level): Passive | | | | |
| | 16j | Deductions allocated and apportioned (partnership level): General categories | | | | |
| | 16k | Deductions allocated and apportioned (partnership level): Other | | | | |
| | 16l | Total foreign taxes paid . . . . . . . . . . . . . | | | | |
| | 16m | Total foreign taxes accrued . . . . . . . . . . . . | | | | |
| | 16n | Reduction in taxes available for credit . . . . . . . . | | | | |
| | 16o | Foreign trading gross receipts . . . . . . . . . . . | | | | |
| | 16p | Extraterritorial income exclusion . . . . . . . . . . | | | | |
| | 16q | Other foreign transactions . . . . . . . . . . . . | | | | |
| **Alternative Minimum Tax** | 17a | Post-1986 depreciation adjustment . . . . . . . . . | | | | |
| | 17b | Adjusted gain or loss . . . . . . . . . . . . . . | | | | |
| | 17c | Depletion (other than oil and gas) . . . . . . . . . . | | | | |
| | 17d | Gross income from oil, gas, and geothermal . . . . . . | | | | |
| | 17e | Deductions from oil, gas, and geothermal . . . . . . . | | | | |
| | 17f | Other AMT items . . . . . . . . . . . . . . . | | | | |
| **Tax-exempt Inc. & Exp.** | 18a | Tax-exempt interest income . . . . . . . . . . . | | | | |
| | 18b | Other tax-exempt income . . . . . . . . . . . . | | | | |
| | 18c | Nondeductible expenses . . . . . . . . . . . . . | | | | |
| **Other** | 20a | Investment income . . . . . . . . . . . . . . . | | | | |
| | 20b | Investment expenses . . . . . . . . . . . . . . | | | | |
| | 20c-x | Other information . . . . . . . . . . . . . . . | | | | |

STEVEN M GREEN CPA
A PROFESSIONAL ACCOUNTANCY CORPORATION
5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367
310-556-2407

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC
Instructions for Filing
Form 8453-LLC
2016 California E-File Return Authorization for LLC's
for the year ended December 31, 2016

The original form should be signed (use full name) and dated by an authorized partner.

The signed form should be returned on or before September 15, 2017 to:

STEVEN M GREEN CPA
A PROFESSIONAL ACCOUNTANCY CORPORATION
5959 TOPANGA CANYON BLVD SUITE 370
WOODLAND HILLS, CA 91367

Or fax to:  310-307-3305
Attn:  Steve Green

Or email to:  sgreen@smgcpa.net

We must receive your signed Form 8453-LLC before we can electronically transmit your return.

There is no tax due to be paid with this return.

DO NOT separately file your tax return with the state.  Doing so will delay the processing of your return.  The state will notify us when your return is accepted.  Your return is not considered filed until the state confirms their acceptance, which may occur after the due date of your return.

027

**DO NOT MAIL THIS FORM TO FTB**

Date Accepted _____

| TAXABLE YEAR | California e-file Return Authorization for | FORM |
|---|---|---|
| **2016** | **Limited Liability Companies** | **8453-LLC** |

| Limited liability company name | Identifying number |
|---|---|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 201314910047 |

**Part I  Tax Return Information** (whole dollars only)

| | | |
|---|---|---|
| 1 | Total income (Form 568, Schedule B, Line 12 or Form 568, Line 1 for Single Member LLCs) . . . . . . . . . . . . . . 1 | 90,767. |
| 2 | Ordinary income (Form 568, Schedule B, line 23 or Form 568, Line 1 for Single Member LLCs) . . . . . . . . . . . . 2 | −160,954. |
| 3 | Tax and fee due (Form 568, line 13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 | |
| 4 | Overpayment (Form 568, line 14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 | |
| 5 | Total amount due (Form 568, line 18) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 | |

**Part II  Settle Your Account Electronically for Taxable Year 2016.**

| 6 | ☐ | Electronic funds withdrawal | 6a | Amount | | 6b | Withdrawal date (mm/dd/yyyy) | |

**Part III  Make Annual Tax or Estimated Fee Payment for Taxable Year 2017** This is NOT an installment payment for the current amount the LLC owes.

| | | Annual Tax Payment | Estimated Fee Payment |
|---|---|---|---|
| 7 | Amount | | |
| 8 | Withdrawal date | | |

**Part IV  Banking Information** (Have you verified the LLC's banking information?)

| 9 | Routing number | |
| 10 | Account number | | 11 Type of account: ☐ Checking ☐ Savings |

**Part V  Declaration of Authorized Member or Manager**

I authorize the limited liability company account to be settled as designated in Parts II, III, and IV. If I check Box 6, I authorize an electronic funds withdrawal for the amount listed on line 6a and for the 2017 annual tax or estimated fee payment amount listed on line 7 from the account specified in Part IV.

Under penalties of perjury, I declare that I am an authorized member or manager of the above limited liability company and that the information I provided to my electronic return originator (ERO), transmitter, or intermediate service provider and the amounts in Part I above agree with the amounts on the corresponding lines of the limited liability company's 2016 California income tax return. To the best of my knowledge and belief, the limited liability company's return is true, correct, and complete. If the limited liability company is filing a balance due return, I understand that if the Franchise Tax Board (FTB) does not receive full and timely payment of the limited liability company's tax liability, the limited liability company will remain liable for the tax liability and all applicable interest and penalties. I authorize the limited liability company return and accompanying schedules and statements be transmitted to the FTB by my ERO, transmitter, or intermediate service provider. **If the processing of the limited liability company's return or refund is delayed, I authorize the FTB to disclose to my ERO or intermediate service provider the reason(s) for the delay or the date when the refund was sent.**

| Sign Here | Signature of authorized member or manager | 10/14/2017 | MANAGER |
|---|---|---|---|
| | | Date | Title |

**Part VI  Declaration of Electronic Return Originator (ERO) and Paid Preparer.** See instructions.

I declare that I have reviewed the above limited liability company's return and that the entries on form FTB 8453-LLC are complete and correct to the best of my knowledge. (If I am only an intermediate service provider, I understand that I am not responsible for reviewing the limited liability company's return. I declare, however, that form FTB 8453-LLC accurately reflects the data on the return.) I have obtained the signature from the limited liability company authorized member or manager on form FTB 8453-LLC before transmitting this return to the FTB; I have provided the limited liability company authorized member or manager with a copy of all forms and information that I will file with the FTB, and I have followed all other requirements described in FTB Pub. 1345, 2016 e-file Handbook for Authorized e-file Providers. I will keep form FTB 8453-LLC on file for **four** years from the due date of the return or **four** years from the date the limited liability company return is filed, whichever is later, and I will make a copy available to the FTB upon request. If I am also the paid preparer, under penalties of perjury, I declare that I have examined the above limited liability company's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| ERO Must Sign | ERO's signature ▶ | Date | Check if also paid preparer | Check if self-employed X | ERO's PTIN P00514869 |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address | STEVEN M GREEN CPA, APAC | | | FEIN 27-2824782 |
| | 5959 TOPANGA CANYON BLVD SUITE   WOODLAND HILLS   CA | | | | ZIP code 91367 |

Under penalties of perjury, I declare that I have examined the above limited liability company's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| Paid Preparer Must Sign | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | Paid preparer's PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ▶ | | | FEIN |
| | | | | ZIP code |

**For Privacy Notice, get FTB 1131 ENG/SP.**                    FTB 8453-LLC 2016 (REV 03-17)

6Y0578 2.000

<u>TAXABLE YEAR</u>

**2016**

# Limited Liability Company
# Return of Income

<u>CALIFORNIA FORM</u>

**568**

RP

```
201314910047   LIFE  46-5289857              16   PBA   722515
TYB  01-01-2016   TYE  12-31-2016
LIFEHOUSE TONICS AND HEALTH LOS ANGELES LLC

7515 SUNSET BLVD
LOS ANGELES        CA   90046


ACCTMETHOD  1   05-20-2013   ASSETS        390,211.
INITIAL  0   FINAL  0   AMENDED  0
```

J (1) During this taxable year, did another person or legal entity acquire control or majority ownership (more than a 50% interest) of this LLC or any legal entity in which the LLC holds a controlling or majority interest that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● ☐ Yes ☒ No

(2) During this taxable year, did this LLC acquire control or majority ownership (more than a 50% interest) in another legal entity that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term? . . . . . . . . . . . . . . . . . . . . . . . . ● ☐ Yes ☒ No

(3) During this taxable year, has more than 50% of the LLC's ownership interests cumulatively transferred in one or more transactions after an interest in California real property (i.e., land, buildings) was transferred to it that was excluded from property tax reassessment under Revenue and Taxation Code Section 62(a)(2) and it was not reported on a previous year's tax return? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● ☐ Yes ☒ No

**(Yes requires filing of statement, penalties may apply – see instructions.)**

| | Complete Schedule IW, LLC Income Worksheet (on Side 7) first to determine Line 1. | | Whole dollars only |
|---|---|---|---|
| Enclose, but do not staple, any payment. | 1 Total income from Schedule IW, Limited Liability Company Income Worksheet. See instructions . . . . . ● | 1 | 169,971 00 |
| | 2 Limited Liability Company fee. See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . ● | 2 | 00 |
| | 3 2016 annual Limited Liability Company tax. See instructions . . . . . . . . . . . . . . . . . . . ● | 3 | 800 00 |
| | 4 Nonconsenting nonresident members' tax liability from Schedule T (Side 4) . . . . . . . . . . . ● | 4 | 00 |
| | 5 **Total tax and fee.** Add line 2, line 3, and line 4 . . . . . . . . . . . . . . . . . . . . . . . ● | 5 | 800 00 |
| | 6 Amount paid with form FTB 3537 and 2016 form FTB 3522 and form FTB 3536 . . . . . . . . . ● | 6 | 800 00 |
| | 7 Overpayment from prior year allowed as a credit . . . . . . . . . . . . . . . . . . . . . . . . ● | 7 | 00 |
| | 8 Withholding (Form 592-B and/or 593) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● | 8 | 00 |
| | 9 **Total payments.** Add line 6, line 7, and line 8 . . . . . . . . . . . . . . . . . . . . . . . . ● | 9 | 800 00 |
| | 10 **Use tax. This is not a total line.** See instructions . . . . . . . . . . . . . . . . . . . . . . ● | 10 | 00 |
| | 11 Payments balance. If line 9 is more than line 10, subtract line 10 from line 9 . . . . . . . . . . ● | 11 | 800 00 |
| | 12 **Use Tax balance.** If line 10 is more than line 9, subtract line 9 from line 10 . . . . . . . . . ● | 12 | 00 |

| | | Whole dollars only |
|---|---|---|
| 13 | **Tax and fee due.** If line 5 is more than line 11, subtract line 11 from line 5 . . . . . . . . . . ● | **13** | 00 |
| 14 | **Overpayment.** If line 11 is more than line 5, subtract line 5 from line 11 . . . . . . . . . ● | **14** | 00 |
| 15 | Amount of line 14 to be credited to 2017 tax or fee . . . . . . . . . . . . . . . . . . ● | **15** | 00 |
| 16 | **Refund.** If the total of line 15 is less than line 14, subtract the total from line 14 . . ●**16** | | 00 |
| 17 | Penalties and interest. See instructions . . . . . . . . . . . . . . . . . . . . . . . ● | **17** | 00 |
| 18 | **Total amount due.** Add line 12, line 13, line 15, and line 17, then subtract line 14 from the result. ●**18** | | 00 |

**K** Enter the maximum number of members in the LLC at any time during the year. For multiple member LLCs, attach a California Schedule K-1 (568) for each of these members . . . . . . . . . . . . . . . . . ●   [ 2 ]

**L** Is this LLC an investment partnership? See General Information 0 . . . . . . . . . . . . . . . ●  ☐ Yes  ☒ No

**M** (1) Is this LLC apportioning or allocating income to California using Schedule R? . . . . . . . . . . ●  ☐ Yes  ☒ No

  (2) If "No," was this LLC registered in California without earning any income sourced in this state during the taxable year? . ⊙  ☐ Yes  ☐ No

**N** Was there a distribution of property or a transfer (for example, by sale or death) of an LLC interest during the taxable year? . . ●  ☐ Yes  ☒ No

**P** (1) Does the LLC have any foreign (non-U.S.) nonresident members? . . . . . . . . . . . . . . ●  ☐ Yes  ☒ No

  (2) Does the LLC have any domestic (non-foreign) nonresident members? . . . . . . . . . . . . ●  ☐ Yes  ☒ No

  (3) Were Form 592, Form 592-A, Form 592-B , and Form 592-F filed for these members? . . . . . ● Ⓝ Yes  Ⓐ No

**Q** Are any members in this LLC also LLCs or partnerships? . . . . . . . . . . . . . . . . . . ● ☒ Yes  ☐ No

**R** Is this LLC under audit by the IRS or has it been audited in a prior year? . . . . . . . . . . . . ●  ☐ Yes  ☒ No

**S** Is this LLC a member or partner in another multiple member LLC or partnership? . . . . . . . . . ●  ☐ Yes  ☒ No

  If "Yes," complete Schedule EO, Part I.

**T** Is this LLC a publicly traded partnership as defined in IRC Section 469(k)(2)? . . . . . . . . . . .  ☐ Yes  ☒ No

**U** (1) Is this LLC a business entity disregarded for tax purposes? . . . . . . . . . . . . . . . . ●  ☐ Yes  ☐ No

  (2) If "Yes," see instructions and complete Side 1, Side 2, Side 3, Schedule B, Side 5, and Side 7, if applicable. Are there credits or credit carryovers attributable to the disregarded entity? . . . . . . . . . . . . . . .  ☐ Yes  ☐ No

  (3) If "Yes" to U(1), does the disregarded entity have total income derived from or attributable to California that is less than the LLC's total income from all sources? . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☐ No

**V** Has the LLC included a Reportable Transaction, or Listed Transaction within this return? (See instructions for definitions). If "Yes," complete and attach federal Form 8886 for each transaction . . . . . . . . . . ●  ☐ Yes  ☒ No

**W** Did this LLC file the Federal Schedule M-3 (federal Form 1065)? . . . . . . . . . . . . . . . ●  ☐ Yes  ☐ No

**X** Is this LLC a direct owner of an entity that filed a federal Schedule M-3? . . . . . . . . . . . . ●  ☐ Yes  ☐ No

**Y** Does the LLC have a beneficial interest in a trust or is it a grantor of a Trust? . . . . . . . . . . ●  ☐ Yes  ☐ No If "Yes," attach schedule of trusts and federal identification numbers.

**Z** Does this LLC own an interest in a business entity disregarded for tax purposes? . . . . . . . . . ⊙  ☐ Yes  ☐ No If "Yes," complete Schedule EO, Part II.

*(continued on Side 3)*

**Side 2**  Form 568 C1  2016      027      3672164

6Y0554 1.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857      31

*(continued from Side 2)*

**AA**  Is any member of the LLC related (as defined in IRC Section 267(c)(4)) to any other member of the LLC? . . . . . . . . . ●  ☐ Yes  ☒ No

**BB**  Is any member of the LLC a trust for the benefit of any person related (as defined in IRC Section 267(c)(4))
to any other member?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ●  ☐ Yes  ☒ No

**CC**  (1)  Is the LLC deferring any income from the disposition of assets? (see instructions). . . . . . . . . . . . . . . . . . ●  ☐ Yes  ☐ No

  (2)  If "Yes," enter the year of asset disposition . . . . . . . . . . . . . . . . . . . . ●  ☐

**DD**  Is the LLC reporting previously deferred Income from:
(see instructions) . . . . . . . . . . . . . ●  ☐ Installment Sale  ●  ☐ IRC §1031  ●  ☐ IRC §1033  ●  ☐ Other

**EE**  "Doing business as" name. See instructions: . . . . . . . . . ● _____

**FF**  (1)  Has this LLC operated as another entity type such as a corporation, S corporation, General Partnership,
Limited Partnership, or Sole Proprietorship in the previous five (5) years?. . . . . . . . . . . . . . . . . . . ●  ☐ Yes  ☐ No

  (2)  If "Yes," provide prior FEIN(s) if different, business name(s), and entity type(s) for prior returns
filed with the FTB and/or IRS (see instructions):_____

**GG**  (1)  Has this LLC previously operated outside California?. . . . . . . . . . . . . . . . . ●  ☐ Yes  ☐ No

  (2)  Is this the first year of doing business in California? . . . . . . . . . . . . . . . . . . . . ●  ☐ Yes  ☒ No

| Single Member LLC Information and Consent - Complete only if the LLC is disregarded. | ● Federal TIN/SSN |
|---|---|
| Sole Owner's name (as shown on owner's return)  ◉ | FEIN/CA Corp no./CA SOS File no. |

Street Address, City, State, and ZIP Code
● What type of entity is the ultimate owner of this SMLLC? See instructions. Check only one box:

☐ (1) Individual    ☐ (2) C Corporation    ☐ (3) Pass-Through (S corporation, partnership, LLC classified as a partnership)

☐ (4) Estate/Trust    ☐ (5) Exempt Organization

Member's Consent Statement: I consent to the jurisdiction of the State of California to tax my LLC income and agree to file returns and pay tax as may be required by the Franchise Tax Board.

Signature ▶ _____   Date _____

| | To learn about your privacy rights, how we may use your information, and the consequences for not providing the requested information, go to **ftb.ca.gov** and search for **privacy notice**. To request this notice by mail, call 800.852.5711. |
|---|---|
| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |
| | Signature of authorized member or manager ▶ _____  Date **10/14/2017**  Telephone ● |
| | Authorized member or manager's email address (optional) |

| | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | PTIN ● P00514869 |
|---|---|---|---|---|
| **Paid Preparer's Use Only** | Firm's name (or yours, if self-employed) and address ▶ | STEVEN M GREEN CPA, APAC<br>5959 TOPANGA CANYON BLVD SUITE 37<br>WOODLAND HILLS      CA    91367 | | FEIN ● 27-2824782 |
| | | | | Telephone ● 310-556-2407 |

May the FTB discuss this return with the preparer shown above (see instructions? . . . . ●  ☒ Yes  ☐ No

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC   ▬▬   46-5289857

**Schedule A   Cost of Goods Sold**

| | | | |
|---|---|---|---:|
| 1 | Inventory at beginning of year | 1 | 00 |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | 79,204 00 |
| 3 | Cost of labor | 3 | 00 |
| 4 | Additional IRC Section 263A costs. Attach schedule | 4 | 00 |
| 5 | Other costs. Attach schedule | 5 | 00 |
| 6 | **Total**. Add line 1 through line 5 | 6 | 79,204 00 |
| 7 | Inventory at end of year | 7 | 00 |
| 8 | **Cost of goods sold**. Subtract line 7 from line 6. Enter here and on Schedule B, line 2 | 8 | 79,204 00 |

9   **a**   Check all methods used for valuing closing inventory:

**(1)** ☐ Cost   **(2)** ☐ Lower of cost or market as described in Treas. Reg. Section 1.471-4   **(3)** ☐ Write down of "subnormal" goods as described in Treas. Reg. Section 1.471-2(c)   **(4)** ☐ Other. Specify method used and attach explanation _____

**b**   Check this box if the LIFO inventory method was adopted this taxable year for any goods. If checked, attach federal Form 970 . . . . . ☐

**c**   Do the rules of IRC Section 263A (with respect to property produced or acquired for resale) apply to the LLC? . . . . . . ☐ Yes   ☐ No

**d**   Was there any change (other than for IRC Section 263A purposes) in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

**Schedule B   Income and Deductions**

**Caution:** Include **only** trade or business income and expenses on line 1a through line 22 below. See the instructions for more information.

| | | | |
|---|---|---|---:|
| 1 | **a** Gross receipts or sales $ 169,971.   **b** Less returns and allowances $ _____   **c** Balance ● | 1c | 169,971 00 |
| 2 | Cost of goods sold (Schedule A, line 8) . . . . . . . . . . . . . . . . . ⊙ | 2 | 79,204 00 |
| 3 | GROSS PROFIT. Subtract line 2 from line 1c . . . . . . . . . . . . . ● | 3 | 90,767 00 |
| 4 | Total ordinary income from other LLCs, partnerships, and fiduciaries. Attach schedule . . . . ● | 4 | 00 |
| 5 | Total ordinary loss from other LLCs, partnerships, and fiduciaries. Attach schedule . . . . . ● | 5 | 00 |
| 6 | Total farm profit. Attach federal Schedule F (Form 1040) . . . . . . ● | 6 | 00 |
| 7 | Total farm loss. Attach federal Schedule F (Form 1040) . . . . . . ● | 7 | 00 |
| 8 | Total gains included on Schedule D-1, Part II, line 17 (**gain only**) . . . . ● | 8 | 00 |
| 9 | Total losses included on Schedule D-1, Part II, line 17 (**loss only**) . . . . ● | 9 | 00 |
| 10 | Other income. Attach schedule . . . . . . . . . . . . . . . . . . . . ● | 10 | 00 |
| 11 | Other loss. Attach schedule . . . . . . . . . . . . . . . . . . . . . ● | 11 | 00 |
| 12 | **Total income (loss)**. Combine line 3 through line 11 . . . . . . . . ● | 12 | 90,767 00 |
| 13 | Salaries and wages (other than to members) . . . . . . . . . . . . . | 13 | 121,097 00 |
| 14 | Guaranteed payments to members . . . . . . . . . . . . . . . . . ⊙ | 14 | 00 |
| 15 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 | 00 |
| 16 | Deductible interest expense not claimed elsewhere on return . . . . . ⊙ | 16 | 00 |
| 17 | **a** Depreciation and amortization. Attach form FTB 3885L $ 23,413.   **b** Less depreciation reported on Schedule A and elsewhere on return $ _____   **c** Balance ● | 17c | 23,413 00 |
| 18 | Depletion. Do not deduct oil and gas depletion . . . . . . . . . . . | 18 | 00 |
| 19 | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . | 19 | 00 |
| 20 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . | 20 | 00 |
| 21 | Other deductions. Attach schedule . . . . . . . . . . . . STMT 1 ● | 21 | 107,211 00 |
| 22 | **Total deductions**. Add line 13 through line 21 . . . . . . . . . . | 22 | 251,721 00 |
| 23 | Ordinary income (loss) from trade or business activities. Subtract line 22 from line 12 . . . ● | 23 | -160,954 00 |

**Schedule T   Nonconsenting Nonresident Members' Tax Liability. Attach additional sheets if necessary.**

| (a) Member's name | (b) SSN, ITIN, or FEIN | (c) Distributive share of income | (d) Tax rate | (e) Member's total tax due (see instructions) | (f) Amount withheld by this LLC on this member - reported on Form 592-B | (g) Member's net tax due |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total the amount of tax due. Enter the total here and on Side 1, line 4. If less than zero enter -0- . . . . . . . . . . . . . . . . . . . _____

6Y0507 1.000
1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857   33

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC          ■■          46-5289857

**Schedule K**   Members' Shares of Income, Deductions, Credits, etc.

| | (a) Distributive share items | | (b) Amounts from federal K (1065) | (c) California adjustments | (d) Total amounts using California law |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary income (loss) from trade or business activities | 1 | ● −161,754. | 800. | ⊙ −160,954. |
| | 2 Net income (loss) from rental real estate activities. Attach federal Form 8825 | 2 | | | ⊙ |
| | 3 a Gross income (loss) from other rental activities . . . . | 3a | | | ⊙ |
| | b Less expenses. Attach schedule | 3b | | | |
| | c Net income (loss) from other rental activities. Subtract line 3b from line 3a . . . . . . . . . . . | 3c | | | ● |
| | 4 Guaranteed payments to members . . . . . . . . . | 4 | | | ● |
| | 5 Interest income . . . . . . . . . . . . . . . . | 5 | | | ● |
| | 6 Dividends . . . . . . . . . . . . . . . . . . | 6 | | | ● |
| | 7 Royalties . . . . . . . . . . . . . . . . . . | 7 | | | ● |
| | 8 Net short-term capital gain (loss). Attach Schedule D (568) | 8 | | | ● |
| | 9 Net long-term capital gain (loss). Attach Schedule D (568) . | 9 | | | ● |
| | 10 a Total Gain under IRC Section 1231 (other than due to casualty or theft) | 10a | | | ● |
| | b Total Loss under IRC Section 1231 (other than due to casualty or theft) | 10b | | | ● |
| | 11 a Other portfolio income (loss). Attach schedule . . . . | 11a | | | ⊙ |
| | b Total other income. Attach schedule . . . . . . . . | 11b | | | ⊙ |
| | c Total other loss. Attach schedule . . . . . . . . . | 11c | | | |
| **Deductions** | 12 Expense deduction for recovery property (IRC Section 179). Attach schedule . . . . . . . . . . . . . . . | 12 | | | |
| | 13 a Charitable contributions. See instructions. Attach schedule | 13a | | | |
| | b Investment interest expense . . . . . . . . . . . | 13b | | | ● |
| | c 1 Total expenditures to which IRC Section 59(e) election may apply. | 13c1 | | | |
| | 2 Type of expenditures | 13c2 | | | |
| | d Deductions related to portfolio income . . . . . . . . | 13d | | | |
| | e Other deductions. Attach schedule . . . . . . . . . | 13e | | | ⊙ |
| **Credits** | 15 a Withholding on LLC allocated to all members . . . . . | 15a | | | |
| | b Low-income housing credit . . . . . . . . . . . . | 15b | | | |
| | c Credits other than the credit shown on line 15b related to rental real estate activities. Attach schedule . . . . | 15c | | | |
| | d Credits related to other rental activities. Attach schedule . | 15d | | | |
| | e Nonconsenting nonresident members' tax paid by LLC . . | 15e | | | |
| | f Other credits. Attach schedule . . . . . . . . . . | 15f | | | ● |
| **Alternative Minimum Tax (AMT) Items** | 17 a Depreciation adjustment on property placed in service after 1986 | 17a | | | |
| | b Adjusted gain or loss . . . . . . . . . . . . . . | 17b | | | |
| | c Depletion (other than oil and gas) . . . . . . . . . | 17c | | | |
| | d Gross income from oil, gas, and geothermal properties . . | 17d | | | |
| | e Deductions allocable to oil, gas, and geothermal properties | 17e | | | |
| | f Other alternative minimum tax items. Attach schedule . . | 17f | | | |
| **Other Information** | 18 a Tax-exempt interest income . . . . . . . . . . . . | 18a | | | |
| | b Other tax-exempt income . . . . . . . . . . . . . | 18b | | | ● |
| | c Nondeductible expenses . . . . . . . . . . . . . | 18c | | | |
| | 19 a Distributions of money (cash and marketable securities) . . | 19a | | | ⊙ |
| | b Distribution of property other than money . . . . . . . | 19b | | | ⊙ |
| | 20 a Investment income . . . . . . . . . . . . . . . | 20a | | | |
| | b Investment expenses . . . . . . . . . . . . . . | 20b | | | |
| | c Other information. See instructions . . . . . . . . . | 20c | | | |
| **Analysis** | 21 a Total distributive income/payment items. Combine lines 1, 2, and 3c through 11c. From the result, subtract the sum of lines 12 through 13e. . . . . | 21a | −161,754. | 800. | −160,954. |

| | (a) Corporate | (b) Individual | | (c) Partnership | (d) Exempt Organization | (e) Nominee/Other | (f) LLC |
|---|---|---|---|---|---|---|---|
| | | i. Active | ii. Passive | | | | |
| b Analysis of members: Members | | −109,449. | −51,505. | | | | |

6Y0534 1.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857          34

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC          46-5289857

**Schedule L**  **Balance Sheets.** See the instructions for Schedule L, before completing Schedules L, M-1, and M-2.

| Assets | Beginning of taxable year (a) | (b) | End of taxable year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 13,818. | | 61,227. |
| 2 a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | ( ) | | ( ) | |
| 3 Inventories | | | ● | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets. Attach schedule | | | ● | |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments. Attach schedule | | | ● | |
| 9 a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | ( ) | ⊙ | ( ) | |
| 10 a Depletable assets | | | | |
| b Less accumulated depletion | ( ) | | ( ) | |
| 11 Land (net of any amortization) | | ⊙ | | |
| 12 a Intangible assets (amortizable only) | 330,647. | | 351,197. | |
| b Less accumulated amortization | ( ) | 330,647. | ( 23,413.) | 327,784. |
| 13 Other assets. Attach schedule | STMT 2 | 3,000. | ● | 1,200. |
| 14 Total assets | | 347,465. | | 390,211. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | ● | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | ● | |
| 17 Other current liabilities. Attach schedule | | | | |
| 18 All nonrecourse loans | | ⊙ | ● | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | ⊙ | ● | |
| 20 Other liabilities. Attach schedule | | | ● | |
| 21 Members' capital accounts | | ⊙ 347,465. | ● | 390,211. |
| 22 Total liabilities and capital | | 347,465. | | 390,211. |

**Schedule M-1**  **Reconciliation of Income (Loss) per Books With Income (Loss) per Return.** Use total amount under California law. See instructions.

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | −161,754. | 6 Income recorded on books this year not included on Schedule K, line 1 through line 11c. Itemize: | |
| 2 Income included on Schedule K, line 1 through line 11c not recorded on books this year. Itemize ● | | a Tax-exempt interest . . $ _____ | |
| | | b Other . . . . . . . . . $ _____ | |
| 3 Guaranteed payments (other than health insurance) | | c Total. Add line 6a and line 6b. . . . . . ● | |
| 4 Expenses recorded on books this year not included on Schedule K, line 1 through line 13e. Itemize: | | 7 Deductions included on Schedule K, line 1 through line 13e not charged against book income this year. Itemize: | |
| a Depreciation . $ _____ | | a Depreciation . . . . . $ _____ | |
| b Travel and entertainment $ _____ | | b Other . . . . . . . . . $ _____ | |
| c Annual LLC tax. $ 800. | | c Total. Add line 6c and line 7c. . . . . . ● | |
| d Other . . . . $ _____ | | 8 Total. Add line 6c and line 7c. . . . . . . | |
| e Total. Add line 1 through line 4e ● | 800. | 9 Income (loss) (Schedule K, line 21a.) Subtract line 8 from line 5 . . . . . . . | |
| 5 Total of line 1 through line 4e . . . . | −160,954. | | −160,954. |

**Schedule M-2**  **Analysis of Members' Capital Accounts.** Use California amounts.

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year . . . . | 347,465. | 5 Total of line 1 through line 4 . . . . . . . | 390,211. |
| 2 Capital contributed during year | | 6 Distributions: a Cash . . . . . . . . . ● | |
| a Cash . . . . . . . . STMT 3 ● | 204,500. | b Property . . . . . ● | |
| b Property . . . . . . . . . . . | | 7 Other decreases. Itemize | |
| 3 Net income (loss) per books STMT 3 | −161,754. | 8 Total of line 6 and line 7 . . . . . . . . . | |
| 4 Other increases. Itemize ● | | 9 Balance at end of year. Subtract line 8 from line 5 | 390,211. |

**Schedule O**  **Amounts from Liquidation used to Capitalize a Limited Liability Company.** (Complete only if initial return box is checked on Side 1, Question H.)

Name of entity liquidated (if more than one, attach a schedule) _____

Type of entity: ☐ (1) C Corporation  ☐ (2) S Corporation  ☐ (3) Partnership  ☐ (4) Limited Partnership  ☐ (5) Sole Proprietor  ☐ (6) Farmer

Entity identification number(s) FEIN _____  SSN or ITIN _____  Corporation _____  CA SOS _____

Amount of liquidation gains recognized to capitalize the LLC . . . . . . . . . . . . . . . . . . . . . . ● _____

6Q0569 1.000
1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857          35

**Schedule IW**   **Limited Liability Company (LLC) Income Worksheet**

Enter your California income amounts on the worksheet. All amounts entered must be assigned for California law differences. **Use only amounts that are from sources derived from or attributable to California when completing lines 1-17 of this worksheet.** If your business is both within and outside of California, see Schedule IW instructions to assign the correct amounts to California. If the LLC is wholly within California, the total income amount is assigned to California and is entered beginning with line 1a. If the single member LLC (SMLLC) does not meet the 3 million criteria for filing Schedule B (568) and Schedule K (568), the SMLLC is still required to complete Schedule IW. Disregarded entities that do not meet the filing requirements to complete Schedule B or Schedule K should prepare Schedule IW by entering the California amounts attributable to the disregarded entity from the member's federal Schedule B, C, D, E, F (Form 1040), or additional schedules associated with other activities. **Do not enter amounts on this worksheet that have already been reported by another LLC to determine its fee.**

**See instructions on page 14 of the Form 568 Booklet for more information on how to complete Schedule IW.**

1 a Total California income from Form 568, Schedule B, line 3. See instructions . . . . . . . ⊙ 1a   90,767.
  b Enter the California cost of goods sold from Form 568, Schedule B, line 2 and from federal Schedule F (Form 1040) (plus California adjustments) associated with the receipts assigned to California on lines 1a and 4 . . . . . . . . . . . . . . . . . . . . . . . ⊙ 1b   79,204.

2 a If the answer to Question U(1) on Form 568 Side 2, is "Yes", include the gross income of this disregarded entity that is not included in lines 1 and 8 through 16 . . . . . . . . ⊙ 2a _____
  b Enter the cost of goods sold of disregarded entities associated with the receipts assigned to California on line 2a. . . . . . . . . . . . . . . . . . . . . . . . . . . . ⊙ 2b _____

3 a LLC's distributive share of ordinary income from pass-through entities . . . . . . . . . ⊙ 3a _____
  b Enter the LLC's distributive share of cost of goods sold from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ⊙ 3b _____
  c Enter the LLC's distributive share of deductions from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1b) . . . . . . ⊙ 3c _____

4 Add gross farm income from federal Schedule F (Form 1040). Use California amounts . . ⊙ 4 _____

5 Enter the total of other income (not loss) from Form 568, Schedule B, line 10 . . . . . . ⊙ 5 _____

6 Enter the total gains (not losses) from Form 568, Schedule B, line 8 . . . . . . . . . . ⊙ 6 _____

7 Add line 1a through line 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .⊙ 7   169,971.

8 California rental real estate
  a Enter the total gross rents from federal Form 8825, line 18a. . . . . . . . . . . ⊙ 8a _____
  b Enter the total gross rents from all Schedule K-1s (565), Table 3, line 2 . . . . . . . ⊙ 8b _____
  c Add line 8a and line 8b . . . . . . . . . . . . . . . . . . . . . . . . . . . .⊙ 8c _____
9 Other California rentals.
  a Enter the amount from Schedule K (568), line 3a . . . . . . . . . . . . . . . ⊙ 9a _____
  b Enter the amount from all Schedule K-1s (565), Table 3, line 3 . . . . . . . . . . ⊙ 9b _____
  c Add lines 9a and 9b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .⊙ 9c _____
10 California interest. Enter the amount from Form 568, Schedule K, line 5. . . . . . . . . . ⊙ 10 _____

11 California dividends. Enter the amount from Form 568, Schedule K, line 6 . . . . . . . . . ⊙ 11 _____

12 California royalties. Enter the amount from Form 568, Schedule K, line 7 . . . . . . . . . ⊙ 12 _____

13 California capital gains. Enter the capital gains (not losses) included in the amounts from Form 568, Schedule K, lines 8 and 9 . . . . . . . . . . . . . . . . . . . . . . . . . . ⊙ 13 _____
14 California 1231 gains. Enter the amount of total gains (not losses) from Form 568, Schedule K, line 10a . . . . . ⊙ 14 _____

15 Other California portfolio income (not loss). Enter the amount from Form 568 Schedule K, line 11a . . . . . . . ⊙ 15 _____

16 Other California income (not loss) not included in line 5. Enter the amount from Form 568, Schedule K, line 11b . ⊙ 16 _____

17 Total California income. Add lines 7, 8c, 9c, 10, 11, 12, 13, 14, 15, and 16. Line 17 may not be a negative number. Enter here and on Form 568, Side 1, Line 1. If less than zero enter -0- . . . . . . . . . . . . . . ⊙ 17   169,971.

TAXABLE YEAR

CALIFORNIA FORM

# 2016   Depreciation and Amortization

# 3885L

| Name as shown on return | California Secretary of State (SOS) file no. |
|---|---|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 201314910047 |

| ACTIVITY: | FEIN |
|---|---|
| LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC | 46-5289857 |

| Assets and intangibles placed in service during the 2016 taxable year: | Depreciation of assets | Amortization of property |
|---|---|---|

| (a) Description of property | (b) Date placed in service (mm/dd/yyyy) | (c) Cost or other basis | (d) Method of figuring depreciation | (e) Life or rate | (f) Depreciation for this year | (g) Code section | (h) Period or percentage | (i) Amortization to this year |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| | *** | SEE DETAIL | *** | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**1** Enter line 1, column (f) and column (i) totals . . . . . . . . . . . . . . . . . . . . **1** ⎹ 1,612.

**Depreciation**

Be sure to make adjustments for any basis differences when calculating depreciation.

**2** California depreciation for assets placed in service beginning before the 2016 taxable year . . . . . . . . . . . **2** _____

**3** Total California depreciation. Add line 1(f) and line 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3** 1,612.

**Amortization**

Be sure to make adjustments for any basis differences when calculating amortization.

**4** California amortization for intangibles placed in service beginning before the 2016 taxable year . . . . . . . . . **4** _____

**5** Total California amortization. Add line 1(i) and line 4 . . . . . . . . . . . . . . . . . . . . . . . . . **5** _____

**6** Total depreciation and amortization. Add line 3 and line 5. Enter the total here and on Form 568, Schedule B, line 17a,
   if from a trade or business, or on federal Form 8825, line 14, if from rental real estate activities . . . . . . . . . . **6** 1,612.

**7** IRC Section 179 expense deduction from line 12 of the worksheet in the instructions . **7** _____

**8** Carryover of disallowed deduction to 2017 from line 13 of the worksheet in the instructions . . . **8** _____

## General Information

In general, for taxable years beginning on or after January 1, 2016, California law conforms to the Internal Revenue Code (IRC) as of January 1, 2016. However, there are continuing differences between California and federal law. When California conforms to federal tax law changes, we do not always adopt all of the changes made at the federal level. For more information, go to **ftb.ca.gov** and search for **conformity**. Additional information can be found in FTB Pub. 1001, Supplemental Guidelines to California Adjustments, the instructions for California Schedule CA (540 or 540NR), and the Business Entity tax booklets.

The instructions provided with California tax forms are a summary of California tax law and are only intended to aid taxpayers in preparing their state income tax returns. We include information that is most useful to the greatest number of taxpayers in the limited space available. It is not possible to include all requirements of the California Revenue and Taxation Code (R&TC) in the instructions. Taxpayers should not consider the instructions as authoritative law.

## A   Purpose

Use form FTB 3885L, Depreciation and Amortization, to compute depreciation and amortization allowed as a deduction on Form 568, Limited Liability Company Return of Income. Attach form FTB 3885L to Form 568.

Depreciation is the annual deduction allowed to recover the cost or other basis of business or income producing property with a determinable useful life of more than one year. Land is not depreciable.

Amortization is an amount deducted to recover the cost of certain capital expenses over a fixed period.

## B   Federal/State Calculation Differences

California law has not always conformed to federal law with regard to depreciation methods, special credits, or accelerated write-offs. Consequently, the recovery periods and the basis on which the depreciation is calculated may be different from the amounts used for federal purposes. Reportable differences may occur if all or part of your assets were placed in service:

- **Before January 1, 1987:** California disallowed depreciation under the federal Accelerated Cost Recovery System (ACRS). Continue to calculate California depreciation in the same manner as in prior years for those assets.

- **On or after January 1, 1987:** California provides special credits and accelerated write-offs that affect the California basis for qualifying assets. California does not conform to all the changes to federal law enacted in 1993. Therefore, the California basis or recovery periods may be different for some assets.

California law does not conform to the federal law for:

- IRC Section 168(k) relating to the 50% bonus depreciation for certain assets.

- The enhanced IRC Section 179 expensing election.

- The additional first-year depreciation of certain qualified property placed in service after October 3, 2008, and the election to claim additional research and minimum tax credits in lieu of claiming the bonus depreciation.

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC

# 2016 Depreciation

46-5289857

**Description of Property**

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    CALIFORNIA GENERAL TRADE OR BUSINESS

| Asset description | Date placed in service | Unadjusted cost or basis | Bus. % | 179 exp. reduc. in basis | Basis Reduction | Basis for Depreciation | Beginning Accumulated depreciation | Ending Accumulated depreciation | Me-thod | Con-ven-tion | Life | ACRS class | MA CRS class | Current -yr 179 expense | Current-year depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LEASE IMPROVEMENTS | 01/01/2016 | 24,179. | 100. | | | 24,179. | | 1,612. | SL | | 15.000 | | | | 1,612. |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Less: Retired Assets . . . . . . . . . . . . | | | | | | | | | | | | | | | |
| **TOTALS** . . . . . . . . . . . . . . . . . . | | 24,179. | | | | 24,179. | | 1,612. | | | | | | | 1,612. |

*Assets Retired

JSA
6X9027 1.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857                    **38**

```
  LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC              46-5289857
FORM 568 SUPPORTING SCHEDULES
===================================================================
SCHEDULE B - INCOME AND DEDUCTIONS
==================================
LINE 21 - OTHER DEDUCTIONS
==========================
AUTOMOBILE                                                       29.
BANK CHARGES                                                  2,157.
BUSINESS MANAGEMENT                                           2,500.
INSURANCE                                                     3,049.
LEGAL FESS                                                    2,866.
OFFICE SUPLLIES/EXPENSE                                       1,115.
OUTSIDE SERVICES                                             15,479.
TAXES-SALES                                                     172.
UTILITIES                                                     5,577.
REPAIRS                                                         350.
RENTS                                                        61,807.
TAXES                                                        12,110.
                                                     ---------------
TOTAL OTHER DEDUCTIONS                                      107,211.
                                                     ===============


TAXES
=====
PAYROLL TAXES                                                12,110.
FRANCHISE TAX                                                   NONE
                                                     ---------------
TOTAL TAXES                                                  12,110.
                                                     ===============
```

```
  LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                   46-5289857
FORM 568, SIDE 6 SUPPORTING SCHEDULES
================================================================================
```

| OTHER ASSETS | BEGINNING | ENDING |
|---|---|---|
| LOANS TO PARTNERS | 3,000. | 1,200. |
| TOTAL OTHER ASSETS | 3,000. | 1,200. |

```
 LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                46-5289857
FORM 568, SIDE 6 SUPPORTING SCHEDULES
================================================================================
SCHEDULE M-2 - LINE 2A - CAPITAL CONTRIBUTED DURING YEAR
=======================================================
CASH CONTRIBUTED DURING THE YEAR                              204,500.
                                                         ---------------
TOTAL CAPITAL CONTRIBUTED DURING THE YEAR                    204,500.
                                                         ===============


SCHEDULE M-2 - LINE 3 - NET INCOME PER BOOKS
============================================
NET INCOME PER BOOKS                                        -161,754.
                                                         ---------------
TOTAL NET INCOME PER BOOKS                                  -161,754.
                                                         ===============
```

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                          46-5289857

027

CALIFORNIA

## Reconciliation of Partners' Capital Account

| Partner | A. Capital Account Beginning of Year | B. Capital Contributed | C. Partner's Share of Lines 3, 4, and 7 Form 565 Schedule M-2 | D. Withdrawal & Distribution | E. Capital Account End of Year |
|---|---|---|---|---|---|
| 1 | 347,465. | 154,500. | −109,993. | | 391,972. |
| 2 | NONE | 50,000. | −51,761. | | −1,761. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTALS | 347,465. | 204,500. | −161,754. | | 390,211. |

6Y0550 1.000

| TAXABLE YEAR | **Member's Share of Income,** | CALIFORNIA SCHEDULE |
|---|---|---|
| **2016** | **Deductions, Credits, etc.** | **K-1 (568)** |

```
TYB  01-01-2016  TYE  12-31-2016
46-4809756

SYCAMORE       H   LLC
5959 TOPANGA CANYON BLVD SUITE 370

WOODLAND HILLS      CA  91367


46-5289857       201314910047
LIFEHOUSE TONICS AND HEALTH LOS ANGELES LLC

7515 SUNSET BLVD
LOS ANGELES        CA  90046
```

**A** What type of entity is this member? ●

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **(1)** | [X] Individual | **(4)** | ☐ C Corporation | **(7)** | ☐ LLP | **(10)** | ☐ Exempt Organization |
| **(2)** | ☐ S Corporation | **(5)** | ☐ General Partnership | **(8)** | ☐ LLC | **(11)** | ☐ Disregarded Entity |
| **(3)** | ☐ Estate/Trust | **(6)** | ☐ Limited Partnership | **(9)** | ☐ IRA/Keogh/SEP | | |

**B** Is this member a foreign member? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● ☐ Yes [X] No

**C** Enter member's percentage (without regard to special allocations) of:

| | **(i) Before decrease or termination** | | **(ii) End of year** | |
|---|---|---|---|---|
| Profit sharing . . . . . . . . . . . . . . . | 68.0000 | % ● | 68.0000 | % |
| Loss sharing . . . . . . . . . . . . . . . . | 68.0000 | % ● | 68.0000 | % |
| Ownership of capital . . . . . . . . . . . . | 100.0000 | % ● | 50.0000 | % |

**D** Member's share of liabilities:

| | | |
|---|---|---|
| Nonrecourse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● $ | | .00 |
| Qualified nonrecourse financing . . . . . . . . . . . . . . . . . . . . . . . . ● $ | | .00 |
| Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● $ | | .00 |

**E** Reportable transaction or tax shelter registration number(s)

**F** **(1)** Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) . . . . . . . . . . . . . . . . . ⊙ ☐

**(2)** Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) . . . . . . . . . . . . . . . . . ⊙ ☐

**G** Check here if this is: ● **(1)** ☐ A final Schedule K-1 (568)   **(2)** ☐ An amended Schedule K-1 (568)

**H** Is this member a resident of California? . . . . . . . . . . . . . . . . . . . . . . ● [X] Yes ▶ ☐ No

6Q0577 1.000
1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857         45

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC 46-5289857

Member's name: PARTNER # 1 SYCAMORE HOUSE, LLC

Member's identifying number: 46-4809756

I Analysis of member's capital account: Check the box ● (1) [X] Tax Basis (2) [ ] GAAP (3) [ ] Section 704(b) Book (4) [ ] Other (explain)

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| ● 347,465. | ● 154,500. | ● -109,993. | ● ( ) | ● 391,972. |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | -109,993. | 544. | ● -109449. | ▶ -109449. |
| | 2 Net income (loss) from rental real estate activities | | | ● | ▶ |
| | 3 Net income (loss) from other rental activities | | | ⦿ | ⦿ |
| | 4 Guaranteed payments to members | | | ● | ▶ |
| | 5 Interest income | | | ● | ▶ |
| | 6 Dividends | | | ● | ▶ |
| | 7 Royalties | | | ● | ▶ |
| | 8 Net short-term capital gain (loss) | | | ● | ▶ |
| | 9 Net long-term capital gain (loss) | | | ● | ▶ |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| | 11 a Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| | b Total other income. Attach schedule | | | ● | ▶ |
| | c Total other loss. Attach schedule | | | ● | ▶ |
| Deductions | 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| | 13 a Charitable contributions | | | | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply. | | | | |
| | 2 Type of expenditures ______ | | | | |
| | d Deductions related to portfolio income Attach schedule | | | | |
| | e Other deductions. Attach schedule | | | | |

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                46-5289857

**Member's name**                                           **Member's identifying number**

| PARTNER #    1   SYCAMORE HOUSE, LLC | 46-4809756 |

| | (a)<br>Distributive share items | (b)<br>Amounts from federal<br>Schedule K-1 (1065) | (c)<br>California adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on Form 592-B if calendar year LLC) | | | ● | ▶ |
| | **b** Low-income housing credit | | | | |
| | **c** Credits other than line 15b related to rental real estate activities. Attach schedule | | | | |
| | **d** Credits related to other rental activities. Attach schedule | | | | |
| | **e** Nonconsenting nonresident member's tax paid by LLC | | | | |
| | **f** Other credits - Attach required schedules or statements | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property placed in service after 1986 | | | ⊙ | ⊙ |
| | **b** Adjusted gain or loss | | | | |
| | **c** Depletion (other than oil & gas) | | | | |
| | **d** Gross income from oil, gas, and geothermal properties | | | | |
| | **e** Deductions allocable to oil, gas, and geothermal properties | | | | |
| | **f** Other alternative minimum tax items. Attach schedule | | | | |
| **Tax-Exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income | | | | |
| | **b** Other tax-exempt income | | | | |
| | **c** Nondeductible expenses | | | | |
| **Distributions** | **19 a** Distributions of money (cash and marketable securities) | | | ⊙ | |
| | **b** Distributions of property other than money | | | ⊙ | |
| **Other Information** | **20 a** Investment income | | | | |
| | **b** Investment expenses | | | | |
| | **c** Other information. See instructions | | | | |

6Q0578 1.000
1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857        47

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                          46-5289857

**Member's name**                                                    **Member's identifying number**

| PARTNER #   1  SYCAMORE HOUSE, LLC | 46-4809756 |

**Other Member Information**

**Table 1 -** Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

| | | | | | |
|---|---|---|---|---|---|
| Interest $ | | Sec. 1231 Gains/Losses $ | | Capital Gains/Losses $ | |
| Dividends $ | | Royalties $ | | Other $ | |

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2 -** Member's share of distributive items.

A.  Member's share of the LLC's business income. See instructions. $

B.  Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

| | | | |
|---|---|---|---|
| Capital Gains/Losses $ | | Rents/Royalties $ | |
| Sec. 1231 Gains/Losses $ | | Other $ | |

C.  Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property:  Beginning . . . . . . . $ | | $ |
| Property:  Ending . . . . . . . . $ | | $ |
| Property:  Annual rent expense . . $ | | $ |
| Payroll . . . . . . . . . . . $ | | $ |
| Sales . . . . . . . . . . . . $ | | $ |

6Q0579 1.000
1355ID    M405    01/09/2018   11:18:00  V16-7.1F  46-5289857        48

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                               46-5289857
027

# CALIFORNIA PARTNER'S SCHEDULE OF ACTIVITIES

PARTNER #     1   SYCAMORE HOUSE, LLC

**Activity Name(s) and Type of Income:**

| | |
|---|---|
| A | LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC, TRADE OR BUSINESS |
| B | |
| C | |
| D | |
| E | |

| | Activity A | Activity B | Activity C | Activity D | Activity E |
|---|---|---|---|---|---|
| Activity disposed of during year | NO | | | | |
| Qualified low - income housing | NO | | | | |
| Publicly traded partnership | NO | | | | |
| Pass - through activity | NO | | | | |

**Schedule K - Line References**

| | | Activity A | Activity B | Activity C | Activity D | Activity E |
|---|---|---|---|---|---|---|
| 1 | Ordinary Income | -109,449. | | | | |
| 2 | Rental Real Estate | | | | | |
| 3 | Other Rental | | | | | |
| 5 | Interest Income | | | | | |
| 6 | Dividend Income | | | | | |
| 7 | Royalty Income | | | | | |
| 8 | Short-term Net Capital G/L | | | | | |
| 11 a | Other Portfolio Income | | | | | |
| 4 | Guaranteed Payments | | | | | |
| 10 ab | Net 1231 G/L | | | | | |
| 11 bc | Other Income | | | | | |
| 13 a | Charitable Contributions | | | | | |
| 12 | Section 179 | | | | | |
| 13 d | Deductions Portfolio Income | | | | | |
| 13 e | Other Deductions | | | | | |
| 13 b | Investment Interest Expense | | | | | |
| 20 a | Investment Income | | | | | |
| 20 b | Investment Expenses | | | | | |
| 15 a | Credit Income Tax Withheld | | | | | |
| 15 b | Low Income House Credit | | | | | |
| 15 c | Credit Rental Real Estate | | | | | |
| 15 d | Credit Other Rental | | | | | |
| 15 f | Other Credits | | | | | |
| 17 a | Depr. Adj. Prop. 12/31/86 | | | | | |
| 17 b | Adjusted Gain or Loss | | | | | |
| 17 c | Depletion | | | | | |
| 17 d | Gross Inc Oil/Gas/Geoth. | | | | | |
| 17 e | Deducts Alloc. to Oil/Gas | | | | | |
| 17 f | Other Tax Preference | | | | | |
| 13 c | Section 59(e) Expense | | | | | |
| 18 a | Tax - exempt int. Income | | | | | |
| 18 b | Other tax exempt Income | | | | | |
| 18 c | Nonded. expense | | | | | |
| 20 | Other Items | | | | | |
| 9 | Long-term Net Capital G/L | | | | | |

6Q0528 1.000

# Member's Share of Income, Deductions, Credits, etc.

```
TYB  01-01-2016   TYE  12-31-2016
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

FRASER            THOMPSON
767 HAVERFORD AVENUE

PACIFIC PALISADES   CA  90272


46-5289857        201314910047
LIFEHOUSE TONICS AND HEALTH LOS ANGELES LLC

7515 SUNSET BLVD
LOS ANGELES        CA  90046
```

**A**  What type of entity is this member? ●

(1) [X] Individual          (4) [ ] C Corporation          (7) [ ] LLP          (10) [ ] Exempt Organization
(2) [ ] S Corporation       (5) [ ] General Partnership     (8) [ ] LLC          (11) [ ] Disregarded Entity
(3) [ ] Estate/Trust        (6) [ ] Limited Partnership     (9) [ ] IRA/Keogh/SEP

**B**  Is this member a foreign member? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● [ ] Yes [X] No

**C**  Enter member's percentage (without regard to special allocations) of:

|  | (i) Before decrease or termination | | (ii) End of year | |
|---|---|---|---|---|
| Profit sharing . . . . . . . . . . . . . . . . . | 32.0000 | % ● | 32.0000 | % |
| Loss sharing . . . . . . . . . . . . . . . . . . | 32.0000 | % ● | 32.0000 | % |
| Ownership of capital . . . . . . . . . . . . . . | | % ● | 32.0000 | % |

**D**  Member's share of liabilities:

Nonrecourse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● $ [            ].00

Qualified nonrecourse financing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● $ [            ].00

Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ● $ [            ].00

**E**  Reportable transaction or tax shelter registration number(s) [                                    ]

**F**  (1)  Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) . . . . . . . . . . . . . . . . . ⊙ [ ]

(2)  Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) . . . . . . . . . . . . . . . . . ⊙ [ ]

**G**  Check here if this is: ●  (1) [ ] A final Schedule K-1 (568)   (2) [ ] An amended Schedule K-1 (568)

**H**  Is this member a resident of California? . . . . . . . . . . . . . . . . . . . . . . . . . ● [X] Yes ▶ [ ] No

**LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC**                    46-5289857

| Member's name | Member's identifying number |
|---|---|
| PARTNER #   2   FRASER THOMPSON | 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 |

**I** Analysis of member's capital account: Check the box  (1) [X] Tax Basis   (2) ☐ GAAP  (3) ☐ Section 704(b) Book  (4) ☐ Other (explain)

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| NONE | 50,000. | -51,761. | ( ) | -1,761. |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|
| **Income (Loss)** | | | | |
| 1 Ordinary income (loss) from trade or business activities | -51,761. | 256. | -51505. | -51505. |
| 2 Net income (loss) from rental real estate activities | | | | |
| 3 Net income (loss) from other rental activities | | | ⊙ | ⊙ |
| 4 Guaranteed payments to members | | | | |
| 5 Interest income | | | | |
| 6 Dividends | | | | |
| 7 Royalties | | | | |
| 8 Net short-term capital gain (loss) | | | | |
| 9 Net long-term capital gain (loss) | | | | |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | | |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | | |
| 11 a Other portfolio income (loss). Attach schedule | | | | |
| b Total other income. Attach schedule | | | | |
| c Total other loss. Attach schedule | | | | |
| **Deductions** | | | | |
| 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| 13 a Charitable contributions | | | | |
| b Investment interest expense | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply. | | | | |
| 2 Type of expenditures | | | | |
| d Deductions related to portfolio income Attach schedule | | | | |
| e Other deductions. Attach schedule | | | | |

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    46-5289857

**Member's name**                                              **Member's identifying number**

PARTNER #    2   FRASER THOMPSON                                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

| | | (a)<br>Distributive share items | (b)<br>Amounts from federal<br>Schedule K-1 (1065) | (c)<br>California adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|---|
| **Credits** | 15 a | Total withholding (equals amount on Form 592-B if calendar year LLC) . . . . | | | ● | ▶ |
| | b | Low-income housing credit . . . . . . | | | | |
| | c | Credits other than line 15b related to rental real estate activities. Attach schedule . . . . | | | | |
| | d | Credits related to other rental activities. Attach schedule . . . . . . . . . . . . | | | | |
| | e | Nonconsenting nonresident member's tax paid by LLC . . . . . . . . . . . . | | | | |
| | f | Other credits - Attach required schedules or statements . . . . . . . . . . . . | | | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a | Depreciation adjustment on property placed in service after 1986 . . . . . | | | ⊙ | ⊙ |
| | b | Adjusted gain or loss . . . . . . . . | | | | |
| | c | Depletion (other than oil & gas) . . . . | | | | |
| | d | Gross income from oil, gas, and geothermal properties . . . . . . . | | | | |
| | e | Deductions allocable to oil, gas, and geothermal properties . . . . . . . . | | | | |
| | f | Other alternative minimum tax items. Attach schedule . . . . . . . . . . . | | | | |
| **Tax-Exempt Income and Nondeductible Expenses** | 18 a | Tax-exempt interest income . . . . . | | | | |
| | b | Other tax-exempt income . . . . . . | | | | |
| | c | Nondeductible expenses . . . . . . . | | | | |
| **Distributions** | 19 a | Distributions of money (cash and marketable securities) . . . . . . . . | | | ⊙ | |
| | b | Distributions of property other than money . | | | ⊙ | |
| **Other Information** | 20 a | Investment income . . . . . . . . . | | | | |
| | b | Investment expenses . . . . . . . . | | | | |
| | c | Other information. See instructions . . . | | | | |

6Q0578 1.000
1355ID   M405   01/09/2018   11:18:00  V16-7.1F  46-5289857          52

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC          46-5289857

**Member's name**

| PARTNER #    2   FRASER THOMPSON |
|---|

**Member's identifying number**

| 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 |
|---|

---

**Other Member Information**

**Table 1 -** Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

| Interest | $ _____ | Sec. 1231 Gains/Losses | $ _____ | Capital Gains/Losses | $ _____ |
|---|---|---|---|---|---|
| Dividends | $ _____ | Royalties | $ _____ | Other | $ _____ |

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2 -** Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions. $ _____

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

| Capital Gains/Losses | $ _____ | Rents/Royalties | $ _____ |
|---|---|---|---|
| Sec. 1231 Gains/Losses | $ _____ | Other | $ _____ |

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property:  Beginning . . . . . . . . | $ _____ | $ _____ |
| Property:  Ending . . . . . . . . . | $ _____ | $ _____ |
| Property:  Annual rent expense . . . | $ _____ | $ _____ |
| Payroll . . . . . . . . . . . . . | $ _____ | $ _____ |
| Sales . . . . . . . . . . . . . | $ _____ | $ _____ |

---

6Q0579 1.000
1355ID    M405    01/09/2018   11:18:00  V16-7.1F  46-5289857        53

LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC                    46-5289857

027

# CALIFORNIA PARTNER'S SCHEDULE OF ACTIVITIES

PARTNER #    2   FRASER THOMPSON

**Activity Name(s) and Type of Income:**

| | |
|---|---|
| A | LIFEHOUSE TONICS AND HEALTH LOS ANGELES, LLC, TRADE OR BUSINESS |
| B | |
| C | |
| D | |
| E | |

| | Activity A | Activity B | Activity C | Activity D | Activity E |
|---|---|---|---|---|---|
| Activity disposed of during year | NO | | | | |
| Qualified low - income housing | NO | | | | |
| Publicly traded partnership | NO | | | | |
| Pass - through activity | NO | | | | |
| **Schedule K - Line References** | | | | | |
| 1 Ordinary Income | -51,505. | | | | |
| 2 Rental Real Estate | | | | | |
| 3 Other Rental | | | | | |
| 5 Interest Income | | | | | |
| 6 Dividend Income | | | | | |
| 7 Royalty Income | | | | | |
| 8 Short-term Net Capital G/L | | | | | |
| 11 a Other Portfolio Income | | | | | |
| 4 Guaranteed Payments | | | | | |
| 10 ab Net 1231 G/L | | | | | |
| 11 bc Other Income | | | | | |
| 13 a Charitable Contributions | | | | | |
| 12 Section 179 | | | | | |
| 13 d Deductions Portfolio Income | | | | | |
| 13 e Other Deductions | | | | | |
| 13 b Investment Interest Expense | | | | | |
| 20 a Investment Income | | | | | |
| 20 b Investment Expenses | | | | | |
| 15 a Credit Income Tax Withheld | | | | | |
| 15 b Low Income House Credit | | | | | |
| 15 c Credit Rental Real Estate | | | | | |
| 15 d Credit Other Rental | | | | | |
| 15 f Other Credits | | | | | |
| 17 a Depr. Adj. Prop. 12/31/86 | | | | | |
| 17 b Adjusted Gain or Loss | | | | | |
| 17 c Depletion | | | | | |
| 17 d Gross Inc Oil/Gas/Geoth. | | | | | |
| 17 e Deducts Alloc. to Oil/Gas | | | | | |
| 17 f Other Tax Preference | | | | | |
| 13 c Section 59(e) Expense | | | | | |
| 18 a Tax - exempt int. Income | | | | | |
| 18 b Other tax exempt Income | | | | | |
| 18 c Nonded. expense | | | | | |
| 20 Other Items | | | | | |
| 9 Long-term Net Capital G/L | | | | | |

6Q0528 1.000

1355ID   M405   01/09/2018   11:18:00   V16-7.1F   46-5289857              54

# EXHIBIT G

810469

| Box Number | Branch Number | Date Rented | Employee Name (Please Print) | ☑ Current ☐ Previous ☐ N/A |
|---|---|---|---|---|
| 769 | 741158 | 06 / 09 / 2014 | Montasir | |

**SAFE DEPOSIT BOX CONTRACT CARD**

**AUTHORIZED SIGNATURES** By signing this contract I/We acknowledge receipt of two keys, the JPMorgan Chase Bank, N.A. (the "Bank") Safe Deposit Box Lease Agreement and all applicable inserts, and agree to be bound by the agreements and terms contained therein, as they may be amended.

(Check One)

☑ Individual / Joint     Name of Lessee/Tenant  FRASER  R. THOMPSON

Signature _____     Signature _____
Signature _____     Signature _____

☐ Fiduciary

☐ Business / Unincorporated Association
(Must Include SDB Resolution)

☐ Two signatures required (Check box if resolution requires 2 or more signatures)
Name of Business / Unincorporated Association _____
By: _____

Printed Name _____     Title _____

**AUTO DEBIT AUTHORIZATION** I hereby authorize the Bank to initiate an annual debit to pay the annual rental fee. This authority is to remain in effect until the Bank has received written notice to terminate from any Lessee/Tenant at least 30 days before the payment of the rent is due.     Account Type: ☒ Checking ☐ Savings

Routing No. 322271627     Account No. 151005000

Signature _____     Date 6/9/2014

**APPOINTMENT DEPUTY** Lessee/Tenant(s) hereby appoint(s)   1. _____   2. _____
whose signature(s) appear below as my/our Deputy(ies), each individually and separately to have full control of and access to the box; to remove and add to the contents, and to surrender or exchange the box and release the Bank of all liability. Deputy(ies)agree(s) to abide by terms of the Bank's Safe Deposit Box Lease Agreement.

Lessee/Tenant _____ Date _____ Lessee/Tenant _____ Date _____
Deputy _____ Date _____ Deputy _____ Date _____

**DEPUTY REVOCATION** The appointment of the following deputy(ies) is hereby revoked.

Deputy _____ Deputy _____
Lessee/Tenant _____ Lessee/Tenant _____

**CHASE PRIVATE CLIENT** 

**Todd Gharibian**
Private Client Banker
NMLS ID: 743469

15200 W. Sunset Blvd
Ste. 100
Pacific Palisades, CA 90272

Telephone:   310 230 0418
Facsimile:   855 645 8614
24/7 Service: 888 994 5626
toodik.gharibian@chase.com
JPMorgan Chase Bank, N.A.

769

Box Number

| Date (MM/DD/YY) | I hereby certify that to the best of my knowledge all lessees/tenants and deputies are now living and that I am entitled to and desire access to this Safe Deposit Box. Signature | For Bank Use Employee Initials |
|---|---|---|
| 6/9/14 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Lessee/Tenant

FRAZER THOMPSON

SAFE DEPOSIT BOX ACCESS RECORD

Box Number  769

**BOX SURRENDERER** -- I certify that all property placed in the box has been removed by Lessee(s)/Tenant(s) or authorized deputy, the box is surrendered and the Bank is released from all liability.

Number of keys surrendered _____ The box was found to be empty by: _____

_____              _____
Lessee/Tenant/Deputy Signature                                      Date

_____              _____
Employee Signature                                                  Date

Catalog #41720     Rev. 06/15/08

# EXHIBIT H

